**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION, | |
| Plaintiff, | |
| v. | CASE NO. 1:08-cv-2224 |
| JASON R. HYATT, JAY JOHNSON, and HYATT JOHNSON CAPITAL, LLC | Hon. George W. Lindberg |
| Defendants. | Magistrate Judge Michael T. Mason |

**SEC'S BRIEF IN SUPPORT OF ITS MOTION FOR RULE TO SHOW CAUSE**

Plaintiff, the United States Securities and Exchange Commission ("the SEC"), submits this brief in support of its Motion for Rule to Show Cause requesting that this Court enter an order requiring Defendant Jason R. Hyatt and Heidi Hyatt to show cause why they should not be held in contempt for failing to comply with the Court's April 18, 2008 Order .

**I.    FACTS**

On the morning of April 18, 2008, the Court entered an emergency ex parte order that, among other things, froze all assets under the control of Defendants Jason R. Hyatt and Hyatt Johnson Capital, LLC ("the Order").  Docket No. 8.  Starting at around 11:15 a.m., the SEC began faxing copies of the Order to all financial institutions at which the SEC is aware that Defendants Hyatt or Hyatt Johnson Capital, LLC hold accounts.  Specifically, at 11:37 a.m., the SEC faxed a copy of the Order to The Private Bank, at which Defendant Hyatt has a bank account held jointly with his wife, Heidi Hyatt[1].  See Exhibit 1.  At 11:56 a.m., the SEC emailed a copy of the Court's Order to Robert Michels, counsel to Mr. Hyatt, Brett Nolan, counsel to

---

[1]   Mrs. Hyatt was previously known as Heidi E. Herold.  She and Jason R. Hyatt were recently married.

Hyatt Johnson Capital, LLC, and Mark L. Rotert, counsel to Jay D. Johnson. See Exhibit 2 at 1-3. The SEC also faxed copies to counsel between 11:59 and 12:07 pm. See Exhibit 2 at 4-6.

At 1:30 p.m., $22,000 was withdrawn from Defendant Hyatt's account at The Private Bank at the St. Charles, Illinois branch of the Bank. See Exhibit 3 at 1. At 2:24 p.m., $20,000 was withdrawn from Defendant Hyatt's account at The Private Bank at the Geneva, Illinois branch of the Bank. See Exhibit 3 at 2. At 2:34 p.m., $15,000 was withdrawn from Defendant Hyatt's account at The Private Bank at the St. Charles, Illinois branch of the Bank. See Exhibit 3 at 3. Thus, between 1:30 p.m. and 2:34 p.m., a total of $57,000 was withdrawn from Defendant Hyatt's account at The Private Bank. At approximately 3:30 p.m., Chris Bagnall from The Private Bank called the SEC stating that Heidi Hyatt, Defendant Hyatt's wife, had withdrawn $57,000 in three separate transactions from Defendant Hyatt's account. At approximately 4:00 p.m., Mr. Bagnall called the SEC again stating that Heidi Hyatt had cashed three checks made out to herself, the first at the St. Charles branch, the second at the Geneva branch, and the third again at the St. Charles Branch, where Ms. Hyatt purportedly told the bank that she had not withdrawn enough during her first visit.

At 4:25 p.m., the SEC emailed Robert Michels, counsel to Defendant Hyatt, informing him of what had occurred, requesting the immediate return of the funds, and informing him that the SEC intended to file this motion. See Exhibit 4. The SEC also unsuccessfully attempted to reach him by phone at his office just prior to the 4:25 p.m. email. As of the filing of this motion, the SEC has not received any response from counsel and the funds have not been returned. At approximately 4:45 p.m., the SEC called the Court's clerk to inform the Court of what had occurred. As a result, the Court ordered that a hearing take place at 9:30 a.m on Monday, April 21, 2008, and instructed the SEC to provide notice to The Private Bank that a representative of

the bank must attend the hearing, and to provide notice to Defendant Hyatt's counsel that Mr. Hyatt must attend as well. At 5:19 p.m., the SEC emailed Robert Michels, counsel to Defendant Hyatt, informing him of the Court's directive and informing him that the SEC believed that it would be appropriate for Heidi Hyatt to be present for the hearing as well. See Exhibit 5. The SEC also sent a letter to Chris Bagnall at The Private Bank, and spoke via telephone with two members of the General Counsel's office at The Private Bank, informing them of the Court's directive. See Exhibit 6. The SEC also attempted to again reach Mr. Michels by phone on Saturday April 19, 2008 and left a message informing of the hearing and the Court's directive that Mr. Hyatt be present for the hearing. The SEC has not received any response.

## II.     CIVIL CONTEMPT PROCEEDINGS

The facts outlined above present a clear violation of the Court's Order of April 18, 2008. Counsel for Jason Hyatt was notified at 11:59 am of the Court's Order. At 1:30 pm the first of three large withdrawals was made from Mr. Hyatt's account. Two more withdrawls were made at 2:24 pm and 2:34 pm. The three withdrawals totaling $57,000. The timing of these events show what is little more than a flagrant violation of the Court's Order. As previously indicated the SEC was concerned the Mr. Hyatt may attempt to dissipate investor assets unless ordered by the Court. Apparently, not even an Order of this Court was enough to stop Mr. Hyatt.

A.     **Civil Contempt Proceedings:** Civil contempt proceedings are authorized by 18 U.S.C. § 401(3) which states, in pertinent part, that "[a] court of the United States shall have power to punish by fine or imprisonment, or both, at its discretion, such contempt of its authority, and none other, as … [d]isobedience or resistance to its lawful writ, process, order, rule, decree, or command." A court thus has the inherent authority to enforce compliance with its lawful orders through civil contempt. Coilcraft, Inc. v. Inductor Warehouse, Inc., 2007 U.S.

Dist. LEXIS 52350 at *7-8 (N.D. Ill. 2007) *citing* Spallone v. United States, 493 U.S. 265 (1990); United States v. Dowell, 257 F.3d 694, 699 (7th Cir. 2001). The purpose of a civil contempt proceeding is wholly remedial and is intended to either coerce compliance with a prior court order or compensate for losses suffered as a result of non-compliance with that order. *See* McComb v. Jacksonville Paper Co., 336 U.S. 187, 191 (1949); Dowell, 257 F.3d at 699.

In a civil contempt proceeding, the moving party must prove, by clear and convincing evidence, that the respondent has violated the court's order. *See* McComb, 336 U.S. at 191; Autotech v. Integral Research, 499 F.3d 737, 751 (7th Cir. 2007). To support a federal civil contempt conviction, it must be proved: "(1) that the court entered a lawful order of reasonable specificity; (2) the order was violated." Matter of Betts, 927 F.2d 983, 986 (7th Cir.1991); CFTC v. Nickolaou, 2000 WL 1029622 at 8 (N.D.Ill. 2000). To make a *prima facie* showing of contempt, the movant need only prove that a defendant has failed to comply with a valid court order. *See* Heinold Hog Market, Inc. v. McCoy, 700 F.2d 611, 615 (10th Cir. 1983). A district court does not have to find that the violation was "willful" or intentional. *See* McComb, 336 U.S. at 191; Coilcraft, 2007 U.S. Dist. LEXIS 52350 at *8 *citing* Goluba v. School Dist. of Ripon, 45 F.3d 1035, 1037 (7th Cir. 1995). In civil contempt proceedings, intent is not an issue. Indeed, the court may find a party in contempt if, as here, it has not been "reasonably diligent and energetic in attempting to accomplish what was ordered." Id. Rather, the question is whether the individual or entity subject to the Court's Order has complied with that Order. *See* McComb, 336 U.S. at 191; SEC v. McNamee, 481 F.3d 451, 456 (7th Cir. 2007); In re General Motors Corp., 61 F.3d 256, 258 (4th Cir. 1995); Donovan v. Mazzola, 716 F.2d 1226, 1240 (9th Cir. 1983), *cert. denied*, 464 U.S. 1040 (1984).

Once a *prima facie* case has been shown, the burden shifts to the respondents to come forward with evidence showing explicitly why they were unable to comply with the Court's Orders. *See* United States v. Rylander, 460 U.S. 752, 755, 757 (1983) *reh. denied*, 462 U.S. 1112 (1983); Chicago Truck Drivers v. Brotherhood Labor Leasing, 207 F.3d 500, 505 (8th Cir. 2000). However, if the respondents are responsible for their inability to comply, such a defense is unavailable. United States v. Bryan, 339 U.S. 323, 330-32 (1950); U.S. v. Seetapun, 750 F.2d 601, 605 (7th Cir. Ill. 1984). Even the presence of good faith on the part of a respondent does not constitute a defense. Donovan, 716 F.2d at 1240. If the meaning of the order is clear, the issue is whether it has been violated. Abbott Laboratories v. Apotex, Inc., 455 F.Supp. 831, 833 (N.D.Ill. 2006) *citing* McComb, 336 U.S. at 191; Additive Controls & Measurement Systems, Inc. v. Flowdata, Inc., 154 F.3d 1345, 1353 (Fed.Cir.1998). "If it has been [violated], even if in good faith, that is a civil contempt." Id.

In this case, the Court is presented with a clear violation of its Order. Indeed, it is hard to imagine a more flagrant example of pure disregard for the Court. Clearly, the SEC has done far more than meet its *prima facie* burden. Despite the SEC's attempts to reach counsel – no explanation for this conduct has been offered. Accordingly, the Court should grant relief to the SEC.

### III. REMEDIES

If this Court were to find Jason Hyatt and Heidi Hyatt in contempt, the SEC requests that this Court order Jason Hyatt and Heidi Hyatt to return the $57,000 to the frozen accounts at the Private Bank by 3:00 p.m. on Monday, April 21, 2008. If this does not occur, the SEC respectfully requests that the Court issue a warrant for the arrest and immediate incarceration of Defendant Jason R. Hyatt until the funds are returned. In addition, the SEC suggests that the

5

Court leaves open the possibility of additional coercive remedies against Heidi E. Hyatt if the funds are not returned by that time.

In addition the SEC would request that all phone records of Jason Hyatt and/or Heidi Hyatt for the time period April 18, 2008 to April 21, 2008 be immediately produced to the SEC. Furthermore, the SEC would request that the phone records of defense counsel Robert Michels be immediately produced only to the extent that they show the time of phone calls made to either Jason Hyatt and/or Heidi Hyatt. In addition, the SEC would request that Mr. Michels immediately identify the time of all emails sent by him or at his direction to either Jason Hyatt and/or Heidi Hyatt on Friday, April 18, 2008.

The SEC would also request that the Court order the Private Bank to immediately produce to the SEC all videotapes that record the transactions discussed above that violated the Court's Order. The SEC would also ask that the Private Bank immediately identify the bank tellers who processed the withdrawals and produce them for deposition within 48 hours.

Finally, as Mr. Hyatt has already shown his contempt for this Court by violating its April 18, 2008 Order – the SEC would also ask that this Court continue the existing asset freeze for the remainder of this litigation.

This relief is remedial and will assist the SEC in further examining the facts surrounding the violation of this Court's Order.

### IV. CONCLUSION

For the reasons stated above, the SEC moves this Court for an Order to Show Cause why Jason R. Hyatt and Heidi Hyatt should not be held in contempt of the Court's Order of April 18, 2008.

Respectfully submitted,

s/Robin Andrews
Gregory von Schaumburg, IL Bar No. 3127782
Robin Andrews, IL Bar No. 6285644
Sally Hewitt, IL Bar No. 6193997
Attorneys for Plaintiff
U.S. SECURITIES AND
EXCHANGE COMMISSION
175 W. Jackson Blvd., Suite 900
Chicago, IL 60604
Telephone: (312) 353-7390
Facsimile: (312) 353-7398

Dated: April 19, 2008