<div align="center">

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

</div>

_____

|  |  |  |
|---|---|---|
| **UNITED STATES SECURITIES** | : | |
| **AND EXCHANGE COMMISSION,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **CASE NO.  1:08-cv-2224** |
| | : | |
| **JASON R. HYATT,** | : | |
| **JAY JOHNSON, and** | : | **Hon. George W. Lindberg** |
| **HYATT JOHNSON CAPITAL, LLC** | : | |
| | : | **Magistrate Judge Michael T. Mason** |
| **Defendants.** | : | |

_____

<div align="center">

**SEC'S PREHEARING STATUS REPORT REGARDING ITS**
**APRIL 19, 2008 MOTION FOR RULE TO SHOW CAUSE AGAINST**
**JASON R. HYATT AND HEIDI E. HYATT**

</div>

Plaintiff, the United States Securities and Exchange Commission ("the SEC"), submits

this Prehearing Status Report regarding its April 19, 2008 Motion for Rule to Show Cause

Against Jason R. Hyatt ("Defendant Hyatt") and Heidi E. Hyatt why they should not be held in

contempt for failing to comply with the Court's April 18, 2008 Order freezing all assets of

Defendant Hyatt.

I.      **FACTS**[1]

1.      On the morning of April 18, 2008, the Emergency Judge, Judge Hibbler, entered

an emergency *ex parte* order that, among other things, froze all assets under the control of

Defendants Hyatt and Hyatt Johnson Capital, LLC ("the Order").  Docket No. 8.  At 11:56 a.m.,

the SEC emailed a copy of the Court's Order to Robert Michels, who had been counsel to Mr.

Hyatt before the Commission on previous occasions.  Hlavacek Decl. at ¶ 5.  The body of this

_____

[1]      The facts set forth in this Status Report are primarily supported by Exhibit 1, a Declaration from
Scott J. Hlavacek, an Assistant Regional Director with the SEC's Division of Enforcement, executed July
1, 2008, and exhibits ("Hlavacek Decl.").

email stated: "Attached please find an Emergency Ex Parte Order issued by Judge Hibbler this morning which, among other things, *orders an asset freeze of all assets under the control of Jason R. Hyatt* and Hyatt Johnson Capital, LLC." (emphasis added). Id. at ¶ 6. Email records produced by Mr. Michels at the direction of the Court show that Mr. Michels forwarded this email to Defendant Hyatt on his Blackberry at approximately 12:12 p.m. Id. at ¶ 7. On April 21, 2008, during an emergency hearing before Judge Hibbler, Defendant Hyatt stated that on April 18, 2008, he was "in a meeting in Northbrook [that] ended at about 12:30 [p.m.] And I looked at my BlackBerry. And I saw that I had a – that I had an email from – I'm sorry, excuse me – saw that I had a call from Mr. Michels to call him back." Exhibit 2, Transcript from April 21, 2008 emergency hearing before Judge Hibbler, 14:25-15:4. Based on Defendant Hyatt's telephone records, Hyatt had numerous telephone calls with Mr. Michels: a one minute call at 12:26 p.m., a four minute call at 12:41 p.m., a two minute call at 12:47 p.m., a three minute call at 1:01 p.m., a seven minute call at 1:02 p.m. and a twelve minute call at 1:09 p.m. Hlavacek Decl. at ¶ 8.

After Defendant Hyatt and Heidi Hyatt had numerous phone calls, Heidi began withdrawing funds from Defendant Hyatt's account. According to the Hyatts' telephone records, Heidi Hyatt had six telephone calls with Defendant Hyatt between 12:39 p.m. and 1:11 p.m. Hlavacek Decl. at ¶ 9. At 1:30 p.m., Heidi Hyatt withdrew $22,000 in cash from Defendant Hyatt's account at St. Charles, Illinois branch of The Private Bank. Id. at ¶ 10. At 2:24 p.m., Heidi Hyatt withdrew $20,000 in cash from Defendant Hyatt's account at the Geneva, Illinois branch of The Private Bank. Id. At 2:34 p.m., Heidi Hyatt returned to the St. Charles, Illinois branch of The Private Bank and withdrew $15,000 in cash from Defendant Hyatt's account. Id. Thus, between 1:30 p.m. and 2:34 p.m., Heidi Hyatt withdrew a total of $57,000 in cash from Defendant Hyatt's account at The Private Bank. According to the Hyatts' telephone records,

Heidi Hyatt had seven telephone calls with Defendant Hyatt between 1: 32 p.m. and 2:45 p.m. Id. at ¶ 11. One of these telephone calls, which lasted for three minutes, occurred at 2:37 p.m., while Heidi Hyatt was at the St. Charles Illinois branch of The Private Bank, in the process of withdrawing the final $15,000 from Defendant Hyatt's account. Id. at ¶ 12. Surveillance photos produced by The Private Bank capture Heidi Hyatt answering her phone at 2:36 p.m. while in the process of withdrawing funds. Id. at ¶ 13.

On April 21, 2008, during the emergency hearing before Judge Hibbler, Defendant Hyatt stated, "[Heidi] had written checks [that] week that had not yet cleared. And by Friday, the first – you know, the first thing I hear of the lawsuit, I didn't – you know, the $57,000, we took it out in cash . . . . So I could, you know, reimburse checks that we had already written. I mean, my heat, phone bill, my health insurance, and just a number of – number of bills that we had written." Exhibit 2 at 9:7-16. On April 18, 2008, Defendant Hyatt submitted a check for $13,700 to the St. Charles Country Club. Hlavacek Decl. at ¶ 14. On May 14, 2008 Defendant Hyatt submitted a cashiers check, remitted by Heidi Hyatt, for $14,630 to the St. Charles Country Club to apply to his country club membership and other fees. Id. at ¶ 15.

The SEC believes that based on the evidence set forth above and that in the SEC's initial motion on April 19, 2008, this Court could make a finding of contempt.

## II.    <u>CONTEMPT HEARING</u>

The SEC has attempted to resolve this matter without a hearing with counsel for Defendant Hyatt, but to no avail. See Exhibit 3. Consequently, at the July 2, 2008 status hearing before the Court, the SEC will be asking for a hearing date of July 16, 2008 at which time the SEC will conduct an evidentiary hearing to resolve this matter. The SEC also continues to investigate other possible actions by the Hyatts that appear to have likely violated the Court's

April 18, 2008 asset freeze order, including encumbrance of Defendant Hyatt's assets. An express finding of contempt against Defendant Hyatt and Heidi Hyatt for their actions on April 18, 2008 is thus necessary to complete the record in this litigation.

The SEC expects that this evidentiary hearing will last approximately three hours. The SEC anticipates calling four witnesses: Scott Hlavacek, summary witness for the SEC; Robert Michels, former counsel to Defendant Hyatt; Jason Hyatt; and Heidi Hyatt. In addition, in order to authenticate bank records received from The Private Bank, the SEC intends to present a Declaration of Business Records from the bank. If the Court prefers, the SEC can instead arrange to have an employee of The Private Bank present to testify as to the authenticity of these bank records. Consequently, the SEC will ask that this Court issue subpoenas to Robert Michels and Heidi Hyatt, who are not parties to this litigation, to ensure their presence at the evidentiary hearing so that they can provide testimony. In addition, if the Court requires such testimony, the SEC will ask for a subpoena for an employee of The Private Bank to authenticate the Hyatts' bank records.

In addition, Judge Hibbler's April 21, 2008 order required that Jason Hyatt and Heidi Hyatt immediately produce all emails from April 18, 2008 through April 21, 2008. None of these emails have been produced, despite repeated requests to Defendant Hyatt's counsel, and repeated promises that these emails would be produced. The SEC asks that these emails be produced immediately, so that the SEC can fully prepare for the evidentiary hearing.

## III.    **CONCLUSION**

Accordingly, the SEC acts that the Court issue subpoenas for the above witnesses to ensure their presence at an evidentiary hearing for their testimony. As outlined above, and as will be presented at the hearing, the SEC believes that this Court will find that Jason Hyatt and

Heidi Hyatt acted in violation of the Court's April 18, 2008 order and thus should be held in contempt.

<div style="margin-left: 40%;">

Respectfully submitted,

<u>s/Robin Andrews</u>
Gregory von Schaumburg, IL Bar No. 3127782
Robin Andrews, IL Bar No. 6285644
Sally Hewitt, IL Bar No. 6193997
Attorneys for Plaintiff
U.S. SECURITIES AND
EXCHANGE COMMISSION
175 W. Jackson Blvd., Suite 900
Chicago, IL 60604
Telephone: (312) 353-7390
Facsimile: (312) 353-7398

</div>

Dated: July 1, 2008

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |  |
|---|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION, | : : : | |
| | : | CASE NO.  08C-2224 |
| Plaintiff, | : : | Judge Lindberg |
| v. | : : | Magistrate Judge Mason |
| JASON R. HYATT, JAY JOHNSON, and HYATT JOHNSON CAPITAL, LLC | : : : : | |
| Defendants. | : : | |

### DECLARATION OF SCOTT J. HLAVACEK IN SUPPORT OF SEC'S PREHEARING STATUS REPORT REGARDING ITS APRIL 19, 2008 MOTION FOR RULE TO SHOW CAUSE AGAINST JASON R. HYATT AND HEIDI E. HYATT

I, Scott J. Hlavacek, do hereby declare under the penalty of perjury, in accordance with 28 U.S.C § 1746, that the following is true and correct:

1.    I am an Accountant with the United States Securities and Exchange Commission ("Commission") in the Chicago Regional Office, located at 175 West Jackson Blvd., Suite 900, Chicago, Illinois, 60604. I have been employed with the Commission since 1993. My official duties with the Commission include participating in fact-finding inquiries and investigations to determine whether the federal securities laws have been, are currently, or are about to be violated, and assisting in the Commission's litigation of securities laws violations.

2.     I received a BA degree from Illinois Wesleyan University and an MBA degree from DePaul University. I am a Certified Public Accountant. I worked in the banking industry for six years and have worked as an investigator of financial fraud for the Federal Government for the past eighteen years.

3.     I was assigned to investigate and analyze certain records regarding Jason R. Hyatt, Heidi E. Hyatt, and Robert Michels. I have reviewed bank, email, and telephone records produced by Jason R. Hyatt and Heidi E. Hyatt, Robert Michels, and The Private Bank. I have also attended various court hearings in this case. Based on my review of these records and the Commission's files, as well as conversations with Commission personnel, I am informed and believe and, therefore, state the information set forth below in this Declaration.

4.     On the morning of April 18, 2008, the Emergency Judge, Judge Hibbler, entered an emergency *ex parte* order that, among other things, froze all assets under the control of Defendants Hyatt and Hyatt Johnson Capital, LLC.

5.     At 11:56 a.m. on April 18, 2008, the SEC emailed a copy of the Court's April 18, 2008 Order to Robert Michels, who had been counsel to Mr. Hyatt before the Commission on previous occasions.

6.     The body of this email included the statement: "Attached please find an Emergency Ex Parte Order issued by Judge Hibbler this morning which, among other things, orders an asset freeze of all assets under the control of Jason R. Hyatt and Hyatt Johnson Capital, LLC."

7.    Email records obtained from Mr. Michels – pursuant to Judge Hibbler's April 21, 2008 order to produce them – show that Mr. Michels forwarded this email to Defendant Hyatt on his Blackberry at approximately 12:12pm.

8.    Based on Defendant Hyatt's telephone records, Hyatt had numerous telephone calls with Mr. Michels: a one minute call at 12:26 p.m., a four minute call at 12:41 p.m., a two minute call at 12:47 p.m., a three minute call at 1:01 p.m., a seven minute call at 1:02 p.m. and a twelve minute call at 1:09 p.m.

9.    According to the Hyatts' telephone records, Heidi Hyatt had six telephone calls with Defendant Hyatt between 12:39 p.m. and 1:11 p.m.

10.    At 1:30 p.m., Heidi Hyatt withdrew $22,000 in cash from Defendant Hyatt's account at the St. Charles, Illinois branch of The Private Bank.  At 2:24 p.m., Heidi Hyatt withdrew $20,000 in cash from Defendant Hyatt's account at the Geneva, Illinois branch of The Private Bank.  At 2:34 p.m., Heidi Hyatt withdrew $15,000 in cash from Defendant Hyatt's account at the St. Charles, Illinois branch of The Private Bank. Thus, between 1:30 p.m. and 2:34 p.m., Heidi Hyatt withdrew a total of $57,000 in cash from Defendant Hyatt's account at The Private Bank.

11.    According to the Hyatts' telephone records, Heidi Hyatt had seven telephone calls with Defendant Hyatt between 1: 32 p.m. and 2:45 p.m.

12.    One of these telephone calls, which lasted for three minutes, occurred at 2:37 p.m., while Heidi Hyatt was at the St. Charles Illinois branch of The Private Bank, in the process of withdrawing the final $15,000 from Defendant Hyatt's account.

13.    Surveillance photos produced by The Private Bank capture Heidi Hyatt answering her phone at 2:36 p.m. while in the process of withdrawing funds.

14.    On April 18, 2008, Defendant Hyatt submitted a check for $13,700 to the St. Charles Country Club.

15.    On May 14, 2008 Defendant Hyatt submitted a cashier's check, remitted by Heidi Hyatt, for $14,630 to the St. Charles Country Club to apply to his country club membership and other club fees.


I, Scott J. Hlavacek, declare under penalty of perjury that the foregoing is true and correct.  Executed on the 1st day of July, 2008.

SCOTT J. HLAVACEK
Securities and Exchange Commission
175 West Jackson Blvd., Suite 900
Chicago, Illinois  60604
Telephone:  312/353-7390

1

```
 1                 IN THE UNITED STATES DISTRICT COURT
                    NORTHERN DISTRICT OF ILLINOIS
 2                        EASTERN DIVISION

 3    UNITED STATES SECURITIES AND    )  Docket No. 08 C 2224
      EXCHANGE COMMISSION,            )
 4                                    )
                        Plaintiff,    )
 5                                    )
                 v.                   )  Chicago, Illinois
 6                                    )  April 21, 2008
      JASON R. HYATT, et al.,         )  9:30 o'clock a.m.
 7                                    )
                       Defendants.    )
 8
              TRANSCRIPT OF PROCEEDINGS - EMERGENCY MOTION
 9              BEFORE THE HONORABLE WILLIAM J. HIBBLER

10    APPEARANCES:

11    For the Plaintiff:          UNITED STATES SECURITIES AND
                                  EXCHANGE COMMISSION, by
12                                MR. ROBIN ANDREWS
                                  MR. CHARLES J. KERSTETTER
13                                175 West Jackson Boulevard
                                  Suite 900
14                                Chicago, Illinois 60604

15    For the Defendants:         MR. JASON R. HYATT

16

17    ALSO PRESENT:               MR. ROBERT MICHELS

18                                MR. MICHAEL MULCAHY

19

20

21

22                       ALEXANDRA ROTH, CSR, RPR.
                          Official Court Reporter
23                       219 South Dearborn Street
                                Room 1224
24                       Chicago, Illinois 60604
                             (312) 294-0134
25
```

1      (Proceedings had in open court:)

2           MR. ANDREWS:  Good morning, your Honor.  Robert

3      Andrews for the Commission.

4           MR. KERSTETTER:  Charles Kerstetter, your Honor.

5           MR. MICHELS:  Good morning, your Honor.  Robert

6      Michels at Winston & Strawn.

7           THE COURT:  Good morning.

8           Okay.  I've got a motion for rule to show cause

9      against Mr. and Mrs. Hyatt.

10          MR. MICHELS:  Judge, if I could make a couple

11     preliminary points.

12          THE COURT:  Yes, sir.

13          MR. MICHELS:  First of all, I do not represent Mr.

14     Hyatt or Mrs. Hyatt in this proceeding.  The SEC falsely

15     presumed that because I represented Mr. Hyatt in a different

16     proceeding, where he was simply a witness in a case against

17     others that the SEC had brought, that I would be representing

18     Mr. Hyatt in this case, and I do not.  So I think that should

19     be on the record right from the start.

20          Secondly, it's my understanding, although I haven't --

21     because I don't represent Mr. Hyatt in this matter, and I

22     haven't -- I just got notice of this on Friday afternoon.  And

23     the SEC sent me a flurry of e-mails Friday afternoon, and I was

24     out of the office as of mid-afternoon on Friday and otherwise

25     tied up.  So I could not even attend to this matter if I had

1    wanted to.

2         But I should point out that I have subsequently

3    learned that it's my understanding that the SEC's information

4    it provided to the Court in connection with not only the

5    application for the ex parte orders freezing all of the assets

6    of HJC as well as Mr. Hyatt, as well as -- and this rule to

7    show cause is substantially incomplete in that, for example, it

8    does not --

9         THE COURT:  Let me stop you for a minute.  Are you

10   representing Mr. Hyatt or not?

11        MR. MICHELS:  I am not.  But I simply wanted to point

12   one fact out for the Court, Judge, which is that --

13        THE COURT:  Okay.  Counsel, you have no standing to

14   point out anything to the Court if you are not going to

15   represent the client.

16        MR. MICHELS:  That's fair.  And my point here today

17   was simply to believe -- I believe the Court should grant an

18   extension to Mr. Hyatt, put this matter over until he gets

19   counsel, because I think there are some -- there is some

20   information the Court is going to want to hear about these

21   banks that is not contained in the SEC filings that I think is

22   important to the Court's determination of this matter.  And I

23   think Mr. Hyatt is entitled to counsel to represent him to make

24   those points, including the fact that just days before that

25   this order was entered, Mr. Hyatt received a personal loan from

1   someone that was deposited into this bank account, which is

2   money that is personal to him and has nothing to do with

3   anything that the SEC is complaining about in their SEC

4   filings.  And --

5        MR. KERSTETTER:  Your Honor, I believe as you pointed

6   out, if Mr. Michels is not representing Mr. Hyatt, there is

7   another appropriate mechanism for this.

8        THE COURT:  I think that is the bottom line, counsel.

9   I appreciate your attempting to inform the Court as to matters

10  that might affect this litigation.  But at this point, not

11  filing an appearance, the information you provide is really not

12  at all relevant to the issue.

13       If Mr. Hyatt or other counsel wishes to assert those

14  potential elements that should be considered by the Court, the

15  Court will be happy to listen.

16       MR. MICHELS:  Very well, Judge.  I would simply ask on

17  behalf -- I do represent Mr. Hyatt, as I mentioned, in this

18  other proceeding and in another capacity.  And, you know, I

19  simply wanted to show up here to ask the Court for the

20  indulgence of putting this over to allow Mr. Hyatt to get

21  counsel in connection with this matter so that an important

22  additional fact can be raised to the Court's attention before

23  the Court rules.

24       So I would ask the Court to put this over for a week.

25  I'm not sure what the SEC's position is on that, but I think

1    that would be a fair thing to do to allow Mr. Hyatt to have

2    counsel here.

3         MR. KERSTETTER:  Well, two points, your Honor.  First

4    I would hope that you would -- I am sure that you would

5    recognize that it was entirely appropriate for us to contact

6    Mr. Michels on Friday about this.  We --

7         THE COURT:  Sure.

8         MR. KERSTETTER:  -- had to deal with Mr. Michels

9    vis-a-vis Mr. Hyatt.  And in fact it may have been

10   inappropriate for us to contact Mr. Hyatt personally.  That's

11   why we went through Mr. Michels.  That was appropriate conduct

12   for us.

13        Secondly, there is conduct -- or there is relief that

14   we need today, your Honor.  That money was taken out in

15   violation of your order on Friday.  And we need relief in

16   regards to that.

17        THE COURT:  Okay.  Let me ask, is Mr. Hyatt present?

18        MR. MICHELS:  Mr. Hyatt and his wife are present,

19   Judge.  She is due any day now.  She is due in the next couple

20   days.  And by freezing every cent that they own, they basically

21   have no money to live on, including the money that this

22   friend --

23        MR. KERSTETTER:  Your Honor, once again --

24        MR. MICHELS:  -- two days ago --

25        THE COURT:  Counsel, here is what I am going to do.

1          If Mr. Hyatt wishes to approach the Court, approach

2    the bench and respond to the allegations in the complaint, he

3    may.  If he wishes to ask for time to have a lawyer, he can ask

4    for that.

5          But at this point, counsel has no standing to speak

6    for Mr. Hyatt.  You haven't even told me that there is a

7    possibility you may represent him in this matter.

8          MR. MICHELS:  I don't believe that I will be

9    representing him in this matter, Judge.

10          THE COURT:  Then the Court will excuse you, despite

11   the notice that you received from the SEC.

12          MR. MICHELS:  Thank you, Judge.

13          THE COURT:  Mr. Hyatt?  Your wife may remain seated

14   there for a moment.

15          Would you please state your name, sir?

16          MR. HYATT:  Jason Hyatt.

17          THE COURT:  Mr. Hyatt, you received a copy of the

18   motion that the SEC has filed asking for a rule to show cause

19   why you should not be held in contempt?

20          MR. HYATT:  I have received a copy of it, yes.

21          THE COURT:  Have you had an opportunity to or do you

22   intend to secure counsel to represent you on this matter?

23          MR. HYATT:  I didn't receive it until about 4:00

24   o'clock on Friday.  And I have not had an opportunity.

25          MR. MICHELS:  Actually, Judge, if he has -- the rule

1   to show cause wasn't even filed until Saturday.  So he is

2   mistaken.  He didn't receive that on 4:00 o'clock on Friday.

3   He --

4            THE COURT:  Counsel, let's stop this.

5            MR. MICHELS:  I just had to correct --

6            THE COURT:  Counsel, you can't correct what he tells

7   me.  If he is wrong, somebody else will tell me that.  But you

8   have no standing to stand up and put words in the mouth of an

9   individual that you don't represent.

10            MR. MICHELS:  Well, I do represent him in another

11   case.

12            THE COURT:  Well, the other case, fine.  But here you

13   have no standing to correct him or anyone else about the

14   litigation that's going on here.

15            MR. MICHELS:  I understand, Judge.  I just want --

16   thought the Court would want to have accurate information.

17            THE COURT:  Okay.  Mr. Hyatt, you indicate that you

18   have not had an opportunity to seek counsel?

19            MR. HYATT:  I have not.

20            THE COURT:  And reading the rule, you understand that

21   there is some indication or allegation that monies were taken

22   out of certain accounts after the Court signed an order that

23   money should not be removed from those accounts.

24            MR. HYATT:  I understand that, sir, yes.

25            THE COURT:  Now, you indicate that -- well, you

1  haven't indicated but I assume, based upon information that I

2  have now heard, that there is some need for some monies while

3  you wait to get this matter resolved or --

4         MR. HYATT:  Yes, your Honor.

5         THE COURT:  -- settled.

6         MR. HYATT:  I received a personal loan from a family

7  friend of ours on Tuesday last week.  And I deposited it

8  Tuesday afternoon.  And essentially that's the money that they

9  are -- that they're freezing.  I mean, I have three kids, one

10 on the way this week.  I have -- I mean, other than, you know,

11 walking out with $8 in my pocket, and on a Friday afternoon

12 when, you know, when -- you know, when I hear about the lawsuit

13 filed against me that I don't know -- I don't know what to do.

14        THE COURT:  Okay.  I do appreciate the fact that you

15 need time to secure counsel, and I am going to give you some

16 time.  But I also understand that I signed a valid order based

17 upon information that I had, which might ultimately be

18 reserved.  I don't know what the facts are.

19        But even though there may be some need for some

20 seeking of some finances for a period of time, $57,000 is not

21 reasonable.

22        MR. HYATT:  It was --

23        THE COURT:  I know people who live for years on

24 $57,000.

25        MR. HYATT:  I understand that, your Honor.  And it

1   was -- it was to discover checks that we had written, my wife

2   had written.  It was for, you know, a number of -- it was a

3   number of things.

4            THE COURT:  So that money was deposited in some other

5   account?

6            MR. HYATT:  No, no, I'm sorry.  I received a loan from

7   someone.  And I deposited that in my private bank account.  My

8   wife had written checks last week that had not yet cleared.

9   And by Friday, the first -- you know, the first thing I hear of

10  the lawsuit, I didn't -- you know, I mean, the $57,000, we took

11  it out in cash.  It wasn't taken out in checks.

12           THE COURT:  I realize that.

13           MR. HYATT:  So I could, you know, reimburse checks

14  that we had already written.  I mean, my heat, phone bill, my

15  health insurance, and just a number of -- number of bills that

16  we had written.

17           THE COURT:  Okay.  Here is what I am going to do.  How

18  much time do you need to retain counsel for yourself in this

19  matter?

20           MR. HYATT:  I -- a week?  I'm not sure.

21           THE COURT:  Do you have an idea as to -- is someone

22  here from the bank?

23           MR. KERSTETTER:  Yes, your Honor.

24           MR. MULCAHY:  Judge, good morning.  Mike Mulcahy on

25  behalf of The Private Bank.

1       THE COURT:  Okay.  I do realize that, as has been

2  indicated, that there was a need for some cash.  And perhaps

3  without going into further detail, I note that Mr. Hyatt's wife

4  is with child.  And, therefore, certainly some monies are

5  necessary.

6       The amount in those accounts, did that close the

7  accounts, or did that leave substantial money still within the

8  accounts?

9       MR. MULCAHY:  Give me a moment, Judge.  I believe

10 there is currently -- as of close of business Friday, Judge,

11 $6,105.25 remaining in The Private Bank account.  It's a joint

12 account between Mr. and Mrs. Hyatt.

13      THE COURT:  Okay.  Mr. Hyatt, here is what I am going

14 to do:  The money was removed in violation of an order that I

15 signed.  I am going to require that -- I will give you time for

16 the Court to resolve the issues, but I am going to require that

17 the majority of that money be returned pending the Court's

18 resolution of this matter.  I would order that $50,000 of the

19 $57,000 removed be returned by 3:00 o'clock this afternoon.

20      As soon as you are able to retain counsel and come

21 back before the Court, we will be able to resolve the issue as

22 to whether or not the assets should be frozen or whatever

23 issues your counsel determines to raise on this issue.  But the

24 Court, based upon the information the Court had, feels that the

25 freeze order was appropriate.

1          I do find, based upon the situation as you have

2     referred to having a lack of funds and having a pregnant wife

3     and having obligations outstanding, that there was some reason

4     to seek funds.  I'm not going to ask the question now, which I

5     think is a very valid question:  Despite the fact that you

6     might have needed funds, if after receiving the order freezing

7     the funds you intentionally sent your wife or you yourself or

8     anyone went to the bank and removed funds, that's not proper.

9     That could result in a finding of contempt of Court, because

10    your remedy was to either seek counsel, attempt to vacate the

11    court order, but not to say, well, I will get to the bank or I

12    will removed the funds before anybody knows because that's

13    contemptuous.

14          Do you understand that?

15          MR. HYATT:  Yes.

16          THE COURT:  So you now have the order.  You are aware

17    of the order.  The Court has determined that as far as I can

18    determine at this point that whatever actions you took were not

19    intended to violate the court order.  I'm going to allow you to

20    keep the $7,000 of the $57,000 removed but require that you

21    return the $50,000 by 3:00 p.m. this afternoon.

22          Do you understand that?

23          MR. HYATT:  Yes.  Your Honor, can I ask a question?

24          THE COURT:  Sure.

25          MR. HYATT:  I don't know how long it will take to

1    secure counsel.  My wife is due to deliver Thursday.  It may

2    take me longer than a couple weeks.

3              Is there a way that I can have more than $7,000?

4              THE COURT:  Well, I think that's reasonable.  I would

5    hope that you are not in a situation where it impacts your life

6    to a great extent.  But based upon the information the Court

7    had --

8              MR. HYATT:  I understand.

9              THE COURT:  -- the Court was freezing everything.  So

10   the $7,000 is like monies that you wouldn't have had had the

11   court order been complied with 100 percent.  So I think that's

12   as far as I can go.

13             MR. HYATT:  Yes.

14             THE COURT:  Anything from the SEC?

15             MR. KERSTETTER:  Well, I think just two points, your

16   Honor.  And obviously we understand the Court's position on

17   this.  But the SEC would object to any funds to that extent

18   that unless they are proved to be non-investor funds.  Now,

19   we've had Mr. Hyatt's representation that that was a personal

20   loan.  We haven't seen any documentation or any proof of that.

21             To the extent that it's Mr. Hyatt's assertion, we ask

22   for some immediate proof that that is in fact the case.

23             MR. MULCAHY:  Judge, if I may, on behalf of Private

24   Bank -- and I don't have any documentation.  I spoke with my

25   bankers this morning.

 1          THE COURT:  Sure.

 2          MR. MULCAHY:  And on the 16th of April in the

 3  afternoon, there was a deposit of $115,000 into Mr. and Mrs.

 4  Hyatt's joint account.  The check itself -- they read it to me.

 5  I don't have it.  They are sending it to my office, which I

 6  will provide the SEC as soon as I get it.  It indicates it's

 7  from a gentleman by the name of Michael Demnicki, Michael R.

 8  Demnicki, D-e-m-n-i-c-k-i.  And in the loan -- or, I'm sorry,

 9  on the memo line of the check the word "loan" is written there

10  by Mr. Demnicki.  Mr. Demnicki has a Schaumburg address.

11          So if that assists the Court in any way.  And I will

12  get a copy of the check that was deposited from the bank, get

13  it to the SEC as soon as I can.

14          THE COURT:  Let me just say off the cuff that every

15  bit of information probably raises more questions than solves

16  them.  I hear $57,000 is borrowed.  Now I am hearing $115,000

17  deposit is made.

18          So I am going to remain where I was before.  $7,000

19  you may keep.  $50,000 must be returned.  I do understand the

20  objection of the plaintiff in the case, but the Court finds

21  that based upon Mr. Hyatt's representation that to deprive him

22  of any funds would be inappropriate and could be dangerous to

23  his wife and the newborn child, the unborn child.

24          MR. KERSTETTER:  We understand, your Honor.  Obviously

25  we do want to be sympathetic to those types of concerns, but

1   also be sympathetic to investor concerns.

2          Secondly, I think we would like to raise, in our

3   proposed order we did ask for various types of discovery type

4   relief.  And I believe we once again ask for that type of

5   relief to prove up the extent of the contempt of the Court's

6   order on Friday.

7          THE COURT:  Okay.  Let's see.  You asked for phone

8   records from April 18 to the 21st, that those records be

9   produced.

10          MR. KERSTETTER:  Yes, your Honor.

11          THE COURT:  I don't know that the records of Mr.

12   Michels would be at all probative as to the issues in this

13   case.  As Mr. Michels has indicated, he doesn't represent Mr.

14   Hyatt on this matter.

15          MR. KERSTETTER:  We are trying to establish the exact

16   time that Mr. Hyatt or Mrs. Hyatt may have become aware of the

17   Court's order, your Honor, since Mr. Michels was the person

18   served with the order.

19          THE COURT:  Mr. Hyatt, you don't have to answer this

20   question if you don't want to, but it might benefit the Court

21   in deciding what issues of discovery are appropriate.  How did

22   you receive notice of the freezing of your assets by --

23          MR. HYATT:  Right.

24          THE COURT:  -- the SEC?

25          MR. HYATT:  I got it by e-mail.  I was in a meeting in

1    Northbrook.  And I think the meeting ended about 12:30.  And I

2    looked at my BlackBerry.  And I saw that I had a -- that I had

3    an e-mail from -- I'm sorry, excuse me -- saw that I had a call

4    from Mr. Michels to call him back.  And I did, and he wasn't

5    available, out to lunch or something.  I don't remember.

6              THE COURT:  Okay.

7              MR. HYATT:  I don't think I connected with him until

8    1:30 or 2:00 o'clock.  I don't remember.

9              MR. KERSTETTER:  That obviously begs the question

10   then --

11             THE COURT:  Pardon?

12             MR. KERSTETTER:  That possible begs the question

13   exactly when that communication occurred.

14             THE COURT:  Okay.  So I am going to grant the SEC's

15   request for phone records of Mr. Hyatt or Mrs. Hyatt from April

16   18 to the 21st.  Also the phone records of any communications

17   between the Hyatts and Mr. Michels during that same period.

18   And also any e-mails from or to Mr. Michels, between Mr.

19   Michels and Mr. and Mrs. Hyatt, on the 18th of April.

20             The information you request regarding the identity of

21   tellers, the purpose of that information?

22             MR. KERSTETTER:  We had received secondhand

23   information through the bank, your Honor, that Ms. Hyatt may

24   have made certain remarks to those bank tellers about what

25   these funds were for or why she was returning to the same

1    location again.  We would like to talk to those tellers and get

2    a quick deposition as to exactly what happened.

3              And also to see exactly who was present there, your

4    Honor.

5              THE COURT:  Okay.  I will grant the request for the

6    identity of the tellers, who actually processed the

7    withdrawals.

8              MR. MULCAHY:  Judge, I apologize for interrupting.

9    Prior to entering an order regarding discovery of Private Bank,

10   if I could have an opportunity to speak with my client a little

11   bit more this morning.  I just got involved over the weekend.

12   Then I can speak with counsel.  Maybe we can come to some

13   agreement on me describing the events and maybe setting up

14   another way rather than deposition.

15             THE COURT:  Well, I was about to refer to that.

16             MR. MULCAHY:  Okay, Judge.

17             THE COURT:  Once you identify those individuals, then

18   if there can be some method by which you can get the

19   information you need short of a deposition, that should be

20   done, either by affidavit or -- because it might impact the

21   bank's ability to carry on their business, or individuals just

22   may not be available within 48 hours.  So we will identify the

23   tellers, and the parties will agree upon a method by which to

24   secure from them the information which you seek.

25             MR. KERSTETTER:  Thank you, your Honor.  We'll be

1    happy to talk to counsel, try to work something out.

2            THE COURT:  And finally, the SEC has asked that the

3    Court continue the existing asset freeze for the remainder of

4    the litigation.  I will continue it for the period which I

5    initially set.  And Judge Lindberg, who will have this case

6    ultimately, will decide how long and to what extent that freeze

7    should last.  It will last, however, until the Court resolves

8    the issue as to whether or not it is proper in its present

9    form.

10           When Mr. Hyatt gets counsel, the issue can be

11   reconsidered.

12           MR. KERSTETTER:  I guess -- thank you, your Honor.  I

13   guess the only issue I raise is that Mr. Hyatt is saying it may

14   be weeks until he is able to retain counsel.  We currently have

15   a hearing set for April 30 to continue that asset freeze.

16           THE COURT:  Correct.  Let me suggest this, Mr. Hyatt:

17   April 30 is a little bit more than a week.  I am going to

18   extend all the present conditions until that date.  And by that

19   date I would anticipate that hopefully you will be able to

20   secure counsel and appear before Judge Lindberg.

21           MR. HYATT:  Okay.

22           THE COURT:  Okay?

23           MR. KERSTETTER:  Thank you, your Honor.

24           MR. MULCAHY:  Judge, one other thing.  Will the Court

25   require me to file my appearance in this matter?

1          THE COURT:  No, sir, you do not have to file your

2     appearance.

3          MR. MULCAHY:  Thank you.

4          THE COURT:  Okay.  Thank you.

5          MR. KERSTETTER:  Thank you.

6          MR. ANDREWS:  Thank you, your Honor.

7          THE COURT:  Do you gentlemen want me to sign a draft

8     order with those conditions?  If so, you can present one to the

9     Court.

10         MR. KERSTETTER:  I think we may have to tailor the

11    order we presented over the weekend, your Honor.  If you'd

12    like, we'll be happy to e-mail it to you shortly after --

13         THE COURT:  If you want to.  I don't care because I

14    have a record of what I did.  So --

15         MR. KERSTETTER:  We will get something to your Honor.

16    Thank you very much, your Honor.

17      (Which were all the proceedings had at the hearing of the

18        within cause on the day and date hereof.)

19

20

21

22

23

24

25

1                            CERTIFICATE

2          I HEREBY CERTIFY that the foregoing is a true, correct

3   and complete transcript of the proceedings had at the hearing

4   of the aforementioned cause on the day and date hereof.

5

6   _____          _____
         Official Court Reporter                      Date
7        U.S. District Court
         Northern District of Illinois
8        Eastern Division

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25



**UNITED STATES
SECURITIES AND EXCHANGE COMMISSION**
CHICAGO REGIONAL OFFICE
NINTH FLOOR
175 WEST JACKSON STREET
CHICAGO, ILLINOIS 60604

ROBIN ANDREWS                                              TELEPHONE:  (312) 353-4304
STAFF ATTORNEY, DIVISION OF ENFORCEMENT                          FAX:  (312) 353-7398

June 19, 2008

**<u>Via Email</u>**

Thomas M. Leinenweber, Esq.
Leinenweber & Baroni LLC
321 S. Plymouth Ct. Ste. 1515
Chicago, IL 60604

      **Re:**    **<u>SEC v. Hyatt et al. (1:08-cv-2224)</u>**

Dear Mr. Leinenweber:

      In connection with the SEC's April 19, 2008 contempt motion against Jason Hyatt and Heidi Hyatt, there are a number of issues that we wish to address.  Our understanding from earlier conversations with you is that you do not represent Heidi Hyatt, but that, for the purposes of the contempt proceedings, you will pass along relevant information and requests to Heidi, as she is married to your client and currently without counsel.  If, however, Heidi Hyatt has obtained separate counsel or if you now represent her, please inform us immediately.  The SEC intends to pursue its contempt claims against Jason Hyatt and Heidi Hyatt in an evidentiary hearing, after which the SEC will ask the Court for appropriate sanctions.

      At the contempt hearing, the SEC intends to introduce certain records the SEC has received from The Private Bank, including bank records and pictures of Heidi Hyatt's visits to the bank.  Please inform us whether you will you stipulate to the authenticity of these records, in lieu of a certificate from the custodian of records of The Private Bank.  The SEC intends to call as witnesses Jason Hyatt and Heidi Hyatt.  In addition, in light of your comments today during Mr. Hyatt's arraignment hearing during which you stated that Robert Michels was not Mr. Hyatt's counsel on April 18, 2008, the SEC intends to call Mr. Michels as a witness as well.

      As we have previously reminded you, Judge Hibbler's April 21, 2008 order required the immediate production of all telephone and email records of Jason Hyatt and Heidi Hyatt from April 18, 2008 through April 21, 2008.  We have received from Jim Kopecky what are purportedly the required telephone records, but we have not received any of the required email records.  You have informed us that in addition to representing Panacea Partners, Jim Kopecky now represents Mr. Hyatt personally.  Please inform us in writing if this is incorrect.

If your client wishes to resolve the contempt motion prior to a hearing, the SEC would be willing to accept Jason Hyatt's consent to the entry of a finding that he acted in contempt of Judge Hibbler's April 18, 2008 order. If we do not receive any such notification, the SEC will proceed in its preparation for an evidentiary hearing, which we hope to schedule at the July 2, 2008 status conference.

Sincerely,

s/ Robin Andrews
Robin Andrews

**cc: Jim Kopecky, Esq.**