UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES SECURITIES | ) | |
| AND EXCHANGE COMMISSION, | ) | |
| | ) | Case No. 1:08-cv-2224 |
| Plaintiff, | ) | |
| v. | ) | Honorable George W. Lindberg |
| | ) | |
| JASON R. HYATT, JAY JOHNSON, and | ) | Magistrate Judge Michael T. Mason |
| HYATT JOHNSON CAPITAL, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

<u>RECEIVER'S INITIAL REPORT</u>

Robert P. Handler, not individually, but as court-appointed Receiver ("Handler" or the "Receiver") of Defendants Hyatt Johnson Capital, LLC ("HJ Capital") and Jason R. Hyatt ("Hyatt") files this Initial Report which covers the period of May 5, 2008 through July 31, 2008 (the "Reporting Period").

The purpose of the Initial Report is to provide the Court and all interested parties with a description of the nature of the Receiver's activities, investigations, analysis, conclusions, recommendations to date, and the revenues generated and/or collected by him, and the Receivership Estate expenses incurred during the Reporting Period.[1]

<u>Introduction</u>

On May 5, 2008, at the request of plaintiff, the U.S. Securities Exchange Commission (the "SEC"), this Court entered an Agreed Order Appointing Receiver Over Defendant Hyatt Johnson Capital LLC in which the Receiver, inter alia, was appointed as receiver for defendant HJ Capital. On June 11, 2008, at the request of the Receiver, this Court entered an Order, inter

---

[1] The Receiver and his counsel will submit their requests for reimbursement of fees and expenses in a separate pleading.

alia, expanding the Receiver's authority so as to become receiver of HJC Asset Holdings

Manager, Inc. ("HJC Manager"), the manager of HJC Asset Holdings, LLC ("HJC Holdings"),

and authorizing him to pursue sale of the various aircraft indirectly owned by HJC Holdings.  A

copy of the Court's June 12, 2008 order (the "HJC Receiver Order") is attached to this report as

Exhibit A.  Also on June 12, 2008, at the request of the SEC, this Court entered an Order (the

"Hyatt Receiver Order) Appointing Handler as Receiver over all of Hyatt's assets.  A copy of the

Hyatt Receiver Order is attached hereto as Exhibit B.  The HJC Receiver Order and the Hyatt

Receiver Order are sometimes collectively referred to as the "Orders".

The investors solicited by HJ Capital and its principals (the "Investors") generally

obtained membership interests in various limited liability companies formed by HJ Capital or its

principals (the "HJ LLCs").  The purpose of the receivership intended by the SEC was to protect

the Investors.  Presently, the known assets of the HJ LLCs are solely their membership interests

in HJC Holdings.  However, HJC Holdings holds indirect title to six (6) commercial aircraft[2]

subject to existing financing and leases.   These aircraft and leases are the principal assets of HJC

Holdings that have meaningful value and, in turn, are what will provide value to HJ LLCs in

which certain Investors have ownership interests.  The business affairs of HJC Manager, HJC

Holdings and HJ Capital are sometimes collectively referred to as "the Business".

Pursuant to the Orders, the Receiver is authorized to maintain and to realized value from

the  assets of HJC Holdings and Hyatt.

With respect to HJC Holdings and Hyatt, this Report provides the Court and all interested

parties with a description of the (i) significant activities of the Receiver during Reporting Period,

(ii) the investigations and analysis of the Receiver, (iii) a preliminary accounting of their

---

[2] As explained further in this report, one of the aircraft was sold during the Reporting Period.

respective assets and financial conditions, (iv) conclusions and current recommendations of the Receiver, (v) the revenues the Receiver has generated and/or collected to date, (vi) the expenses incurred/advanced during the Reporting Period, and (vii) the results the Receiver has achieved to date.

To assist in its work, the Receiver retained counsel and non-legal professionals who met with many people and reviewed countless documents over the past several weeks. The volume of material and the need for additional information, verification and analysis requires this Receiver's Initial Report and accounting to be considered preliminary. Future reports will supplement this report.

The Receiver's duties, responsibilities and activities generally fall into five categories: (i) identifying, securing, protecting and recovering assets, including tangible and intangible assets and chose in action; (ii) preparing an accounting and investigating the basis for the receivership proceeding; (iii) managing the Receiverships' assets in order to preserve or enhance their value for the benefit of their respective estates; (iv) analyzing and developing an equitable approach to distribution of assets; and (v) developing and implementing plans for liquidation of assets and review and adjudication of claims against the receivership estates. This report addresses these general categories in varying degree of detail in relation to the progress made on each during the Reporting Period.

<u>Background</u>

The Receiver undertook, and in many instances continues to take, a number of actions as Receiver, some of which are explained in greater detail in this report. Receiver has undertaken and continues to assess each estate's financial condition; locate and preserve each estate's assets until value can be realized thereon; market and offer for sale HJC Holdings' assets, which consist

primarily of commercial jet aircraft; retain counsel for assisting the Receiver in all court

proceedings, litigation and negotiating and closing sales of commercial jet aircraft; assessing the

scope of claims that may be made by the Receiver against related and unrelated third parties; and

meeting with the SEC to discuss the management of the receivership.  Among other things, the

Receiver did or began the following during the Reporting Period:

1.   Prepared a budget to continue the Business on a reduced operating level in order to maintain the minimum basic level of services sufficient to maintain the Business and its critical licenses and charters under state, federal and international laws;

2.   Rejected and/or stopped payment on all of the Business' financial obligations which, in the Receiver's judgment, provided little or no benefit to this estate;

3.   Undertook an inventory of all HJC Holdings and Hyatt's assets and began to identify, locate and recover those assets which were not in the Receiver's immediate control or possession;

4.   Changed the authorized signatures on all of the Business' bank accounts known to the Receiver to the control of the Receiver, blocked all funds in such accounts so that subsequent deposits in the accounts would be promptly transferred to the Receiver's account for this estate, and opened new bank accounts in the Receiver's name and under his control;

5.   Verified commercial liability insurance coverage for the Business and obtained insurance coverage where necessary for Hyatt's assets;

6.   Started its forensic investigation by issuing document requests to the Business's former law firms and other third parties who had prior financial or personal transactions with the Business and Hyatt;

7.   Met with potential purchasers of assets of the Business;

8.   Developed and implemented a policy for responding to inquiries from investors seeking information concerning the status of their investments and the progress of this case;

9.   Retained aircraft management and marketing firms to assist the Receiver in maintaining the estate's equity in the aircraft and marketing the aircraft for sale;

10.   Denied a prospective purchaser's request for return of a security deposit for a failed aircraft sale (prior to the creation of the HJC receivership) pending the receiver's investigation of the circumstances leading to the failed sale;

11.   Negotiated with and retained special counsel to document the sale of one of the estate's aircraft, a Boeing 737 under lease with British Airways;

12.   Engaged and met with Receiver's counsel, Paula Jacobi, to develop and implement legal strategies to execute the mission of this receivership;

13.   Met with the defendants Jason Hyatt and Jay Johnson to obtain further information concerning the operational and financial structure of each of the HJ LLCs;

14.   Met regularly with the SEC and its counsel to coordinate each party's respective areas of investigation and enforcement in order to efficiently deploy estate resources towards recovery of Investor funds;

15.   Marshaled the Business records; and

16.   Undertook management of the Business' administrative matters, including maintenance of the Business' corporate affairs.

<u>Preliminary Inventory and Accounting</u>

Attached hereto as Exhibit C is the Business's consolidated balance sheet as of September 30, 2007. This statement has not been prepared, audited or reviewed by the Receiver or any of its professionals in accordance with generally accepted accounting principles. Instead, this is a copy from the Business' records as developed by the Business after it acquired certain companies from BCI Aircraft Leasing, LLC (the "BCI Entities") on or about September 10, 2007. The BCI Entities indirectly own the aircraft, and are the principal assets of HJC Holdings. As of June 30, 2008, all of the aircraft are leased to commercial airlines and are subject to senior debt financing arrangements. The lease stream payments, after satisfaction of senior debt service and interest payments, generate some net cash flow to the HJC Receivership. The Receiver's preliminary cash flow analysis respecting the BCI Entities aircraft is attached hereto as Exhibit D. This exhibit does not account for the administrative expenses of this estate.

As of May 7, 2008, the Business had the sum of $49,640.15 on hand in bank accounts under the signature control of the Companies' personnel (Exhibit E).  This and all other Business proceeds have been transferred to accounts controlled by the Receiver.  Since May 5, 2008, the Receiver has collected additional net proceeds of the Business's lease receivables and has made disbursements in connection with his duties.  Exhibits F, G, H, I, J and K summarize the HJC Receivership's banking activities for the Reporting Period.

As of September 30, 2007, the Business listed approximately $669,000 in cash, aircraft assets of approximately $114 million, and total liabilities of approximately $101 million (Exhibit C).  It should be noted that the Business bank accounts (Exhibit E) reflected a far lower amount of cash on hand as of May 7, 2008. It should also be noted that the Receiver cannot determine at this time whether this estate will be able to recover the asset values reflected in Exhibit C.  As the Receiver previously stated to this Court (i) on June 12, 2008 in connection with the SEC's motion to include Hyatt's assets in this receivership and (ii) on July 9, 2008 in connection with the Receiver's motion to approve the sale of the British Airways Boeing 737, worldwide commercial aircraft values have significantly deteriorated since the beginning of this year, and continued to deteriorate after Handler's appointment as Receiver.  There may be further negative impact resulting from the publicity surrounding the recent indictment of Hyatt.  A more detailed analysis of the realizable value of the HJC Holdings' assets will be provided in the Receiver's next report.

The Receiver is preparing his preliminary inventory in order to identify, locate and/or marshaled numerous pieces of personal property related to the estates.  The Receiver has not assigned any value to the Business or Hyatt's property connected with this receivership.  In addition, the Receiver has not made any determination regarding any challenges as to title to

property or whether any of the assets are subject to a valid lien or claim of any creditor.  The Receiver advises that not all of these assets have been located or marshaled. It should also be noted that some Business and/or Hyatt assets may be in the hands of Hyatt or Hyatt's family members (such as his wife, Heidi and his mother). The Receiver continues to investigate the location and whereabouts of all of the Business and Hyatt's tangible and intangible assets and will report his findings to the Court as his investigation continues.

To protect the Receivership estate's interest in real property owned by Hyatt, counsel for the Receiver has recorded the Order of Receivership against three homes titled to Hyatt with the recorder of deeds in the counties wherein the real property is located.

<u>Status of Sale of Commercial Jet Aircraft</u>

Since his appointment in this proceeding, the Receiver has been actively engaged in marketing and selling all of the estate's aircraft.  With respect to the estate's Boeing 737 plane on lease to British Airway (the "BA 737") , the Receiver retained two brokers that specialize in sale of aircraft, both of whom had been engaged in marketing the sale of the BA 737 prior to the commencement of this proceeding.  As anticipated in the Receiver's motion to approve the sale of the BA 737, closing of the sale of the BA 737 took place on July 21, 2008, which resulted in the estate receiving approximately $3.2 million.  A detailed summary of the sale is attached hereto as Exhibit L.  In connection with this sale, it should be noted that the Receiver and counsel also successfully negotiated (i) the elimination of the $220,000 prepayment fee demanded by Deutsche Bank and (ii) a $147,000 reduction of the brokers' commission due in connection with this sale.  Prior to the Receiver's appointment on May 5, 2008, HJC Holdings had entered into two (2) separate "exclusive" marketing agreements respecting the BA 737: One with Mercury-ALPS Aviation Management LLC ("Mercury") requiring a commission of 1.5%

of the gross sale proceeds plus costs and the other with ComAirTrading, LLC requiring a commission of 2.5% without costs.  The Receiver negotiated a settlement with two brokers so that the brokers jointly market the BA 737 on a shared commission basis splitting a single 2.5% commission. Upon the sale of the BA 737, the resulting commission savings to this estate totaled $147,000.

The Receiver's request for authority to pay the brokers and special counsel engaged solely for the sale of the BA 747 will be set forth in a separate pleading.

Upon the sale of the BA 737, this Receivership estate has remaining five (5) commercial jet aircraft -- one Airbus A319 which is on lease to US Airways and four Airbus A321s which are on lease to Alitalia.  Prior to the filing of this proceeding, HJC Holdings entered into an aircraft management and remarketing agreement with Mercury which provided for, among other things, Mercury's exclusive rights to market all of the estate's aircraft.  The Receiver continues to work with Mercury to manage, market and offer for sale the estate's remaining aircraft.

<u>Jason Hyatt and Panacea Partners, LLC</u>

Upon his appointment in the Hyatt Receivership, Handler began to investigate, locate and inspect Jason Hyatt's assets.  The Receiver has verified and/or inspected a number of Hyatt's assets as alleged by the SEC in prior pleadings, and continues to investigate the location, title and the extent of Hyatt's interests in other assets. In general, Hyatt owns three (3) homes: one in St. Charles, IL; one in Geneva, IL; and one in Michigan City, IN.  Each of the homes is subject to first and second mortgages and is in foreclosure proceedings.  At this time the Receiver cannot determine if this estate has any equity in any of the residences. In addition, Hyatt owns a number of automobiles, antique pianos and music players, and art work.  He may also own other assets, such as jewelry.

The Hyatt Receivership arose in part due to Hyatt's interests in Panacea Partners, LLC, an Illinois limited liability company ("Panacea").  In the Complaint filed by the SEC in this case, the SEC alleged that assets of the Investor LLC assets were diverted by Hyatt who, in turn, loaned the funds to Panacea.  Panacea owns and operates the restaurant known as DeLaCosta in Chicago, Illinois.  Panacea is also a defendant in a separate investor lawsuit pending in the Circuit Court of Cook County, Illinois.  The Receiver has learned that Bridgeview Bank, one of Panacea's senior secured creditors, has also obtained second mortgage liens on the St. Charles and Geneva residences of Hyatt to secure his loans to Panacea.

Since commencement of this case, Panacea filed a petition under Chapter 11 of the Bankruptcy Code in the Bankruptcy Court for this District as Case No. 08-17391.  Panacea is currently operating as debtor in possession.  Because Hyatt may have both ownership (80%) and creditor interests ($2 million claim) in Panacea, the Receiver is participating in the Panacea Bankruptcy to protect the Receivership Estate interests.

The Receiver has attempted to obtain a more detailed inventory of all of Hyatt's assets, including all of the documentation respecting Hyatt's interests in Panacea, but Hyatt has not cooperated to the Receiver's satisfaction.  Among other things, the Receiver requires Hyatt' s documents respecting Panacea, including all of Bridgeview Bank's loan agreements with Panacea,  Hyatt's guaranty and mortgages securing the guaranty to Bridgeview, Hyatt's loan documents with Panacea, and Panacea's operating agreement and all other documents reflecting Hyatt's equity interest in and /or loan advances to Panacea.  The Receiver requires these documents in order to determine the scope and validity of  Hyatt's ownership and creditor interests in Panacea, and the Bridgeview Bank's priority claims (if any) in Panacea, and the enforceability of Bridgeview's liens in Hyatt's homes in Geneva and St. Charles.  To that end,

the Receiver's counsel will be taking the depositions of both Hyatt, his wife and other family members and others involved in Hyatt's business.   The Receiver anticipates he will present a more detailed summary of Hyatt's holdings in his next report.

### Forensic Investigation

The Receiver has initiated a forensic review of HJ Capital's records.  The Receiver anticipates that such a review will include (i) a reconstruction of the estate's records; (ii) complete forensic analysis of the Business' financial activities; (iii) investigation of alleged fraudulent activity; (iv) transaction and asset tracing; (v) analysis of the Business' financial position and results; (vi) preparation of information for further reports; and (vii) other accounting and financial support to the Receiver.  The Receiver may need to retain additional professionals in this task.

### Miscellaneous

In connection with his duties, the Receiver has made disbursements from his own account for the benefit of the estate.  The Receiver will seek reimbursement of these expenses as well as its Receiver's Fees in a separate pleading.

Respectfully Submitted


ROBERT P. HANDLER, Receiver


   //Robert P. Handler                                    

Paula K. Jacobi
Deborah L. Thorne
Barnes & Thornburg LLP
One North Wacker Drive
Suite 4400
Chicago, Illinois  60606
(312) 357-1313
Counsel to the Receiver