UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES SECURITIES | ) | |
| AND EXCHANGE COMMISSION, | ) | |
| | ) | Case No. 1:08-cv-2224 |
| Plaintiff, | ) | |
| v. | ) | Honorable George W. Lindberg |
| | ) | |
| JASON R. HYATT, JAY JOHNSON, and | ) | Magistrate Judge Michael T. Mason |
| HYATT JOHNSON CAPITAL, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

RECEIVER'S INITIAL REPORT

Robert P. Handler, not individually, but as court-appointed Receiver ("Handler" or the "Receiver") of Defendants Hyatt Johnson Capital, LLC ("HJ Capital") and Jason R. Hyatt ("Hyatt") files this Initial Report which covers the period of May 5, 2008 through July 31, 2008 (the "Reporting Period").

The purpose of the Initial Report is to provide the Court and all interested parties with a description of the nature of the Receiver's activities, investigations, analysis, conclusions, recommendations to date, and the revenues generated and/or collected by him, and the Receivership Estate expenses incurred during the Reporting Period.[1]

Introduction

On May 5, 2008, at the request of plaintiff, the U.S. Securities Exchange Commission (the "SEC"), this Court entered an Agreed Order Appointing Receiver Over Defendant Hyatt Johnson Capital LLC in which the Receiver, inter alia, was appointed as receiver for defendant HJ Capital. On June 11, 2008, at the request of the Receiver, this Court entered an Order, inter

---

[1] The Receiver and his counsel will submit their requests for reimbursement of fees and expenses in a separate pleading.

alia, expanding the Receiver's authority so as to become receiver of HJC Asset Holdings

Manager, Inc. ("HJC Manager"), the manager of HJC Asset Holdings, LLC ("HJC Holdings"),

and authorizing him to pursue sale of the various aircraft indirectly owned by HJC Holdings. A

copy of the Court's June 12, 2008 order (the "HJC Receiver Order") is attached to this report as

Exhibit A. Also on June 12, 2008, at the request of the SEC, this Court entered an Order (the

"Hyatt Receiver Order) Appointing Handler as Receiver over all of Hyatt's assets. A copy of the

Hyatt Receiver Order is attached hereto as Exhibit B. The HJC Receiver Order and the Hyatt

Receiver Order are sometimes collectively referred to as the "Orders".

The investors solicited by HJ Capital and its principals (the "Investors") generally

obtained membership interests in various limited liability companies formed by HJ Capital or its

principals (the "HJ LLCs"). The purpose of the receivership intended by the SEC was to protect

the Investors. Presently, the known assets of the HJ LLCs are solely their membership interests

in HJC Holdings. However, HJC Holdings holds indirect title to six (6) commercial aircraft[2]

subject to existing financing and leases. These aircraft and leases are the principal assets of HJC

Holdings that have meaningful value and, in turn, are what will provide value to HJ LLCs in

which certain Investors have ownership interests. The business affairs of HJC Manager, HJC

Holdings and HJ Capital are sometimes collectively referred to as "the Business".

Pursuant to the Orders, the Receiver is authorized to maintain and to realize value from

the assets of HJC Holdings and Hyatt.

With respect to HJC Holdings and Hyatt, this Report provides the Court and all interested

parties with a description of the (i) significant activities of the Receiver during Reporting Period,

(ii) the investigations and analysis of the Receiver, (iii) a preliminary accounting of their

---

[2] As explained further in this report, one of the aircraft was sold during the Reporting Period.

respective assets and financial conditions, (iv) conclusions and current recommendations of the Receiver, (v) the revenues the Receiver has generated and/or collected to date, (vi) the expenses incurred/advanced during the Reporting Period, and (vii) the results the Receiver has achieved to date.

To assist in its work, the Receiver retained counsel and non-legal professionals who met with many people and reviewed countless documents over the past several weeks. The volume of material and the need for additional information, verification and analysis requires this Receiver's Initial Report and accounting to be considered preliminary.  Future reports will supplement this report.

The Receiver's duties, responsibilities and activities generally fall into five categories: (i) identifying, securing, protecting and recovering assets, including tangible and intangible assets and choses in action; (ii) preparing an accounting and investigating the basis for the receivership proceeding; (iii) managing the Receiverships' assets in order to preserve or enhance their value for the benefit of their respective estates; (iv) analyzing and developing an equitable approach to distribution of assets; and (v) developing and implementing plans for liquidation of assets and review and adjudication of claims against the receivership estates.  This report addresses these general categories in varying degree of detail in relation to the progress made on each during the Reporting Period.

<u>Background</u>

The Receiver undertook, and in many instances continues to take, a number of actions as Receiver, some of which are explained in greater detail in this report. Receiver has undertaken and continues to assess each estate's financial condition; locate and preserve each estate's assets until value can be realized thereon; market and offer for sale HJC Holdings' assets, which consist

primarily of commercial jet aircraft; retain counsel for assisting the Receiver in all court proceedings, litigation and negotiating and closing sales of commercial jet aircraft; assessing the scope of claims that may be made by the Receiver against related and unrelated third parties; and meeting with the SEC to discuss the management of the receivership.  Among other things, the Receiver did or began the following during the Reporting Period:

1.    Prepared a budget to continue the Business on a reduced operating level in order to maintain the minimum basic level of services sufficient to maintain the Business and its critical licenses and charters under state, federal and international laws;

2.    Rejected and/or stopped payment on all of the Business' financial obligations which, in the Receiver's judgment, provided little or no benefit to this estate;

3.    Undertook an inventory of all HJC Holdings and Hyatt's assets and began to identify, locate and recover those assets which were not in the Receiver's immediate control or possession;

4.    Changed the authorized signatures on all of the Business' bank accounts known to the Receiver to the control of the Receiver, blocked all funds in such accounts so that subsequent deposits in the accounts would be promptly transferred to the Receiver's account for this estate, and opened new bank accounts in the Receiver's name and under his control;

5.    Verified commercial liability insurance coverage for the Business and obtained insurance coverage where necessary for Hyatt's assets;

6.    Started its forensic investigation by issuing document requests to the Business's former law firms and other third parties who had prior financial or personal transactions with the Business and Hyatt;

7.    Met with potential purchasers of assets of the Business;

8.    Developed and implemented a policy for responding to inquiries from investors seeking information concerning the status of their investments and the progress of this case;

9.    Retained aircraft management and marketing firms to assist the Receiver in maintaining the estate's equity in the aircraft and marketing the aircraft for sale;

10.      Denied a prospective purchaser's request for return of a security deposit for a failed aircraft sale (prior to the creation of the HJC receivership) pending the receiver's investigation of the circumstances leading to the failed sale;

11.      Negotiated with and retained special counsel to document the sale of one of the estate's aircraft, a Boeing 737 under lease with British Airways;

12.      Engaged and met with Receiver's counsel, Paula Jacobi, to develop and implement legal strategies to execute the mission of this receivership;

13.      Met with the defendants Jason Hyatt and Jay Johnson to obtain further information concerning the operational and financial structure of each of the HJ LLCs;

14.      Met regularly with the SEC and its counsel to coordinate each party's respective areas of investigation and enforcement in order to efficiently deploy estate resources towards recovery of Investor funds;

15.      Marshaled the Business records; and

16.      Undertook management of the Business' administrative matters, including maintenance of the Business' corporate affairs.

Preliminary Inventory and Accounting

Attached hereto as Exhibit C is the Business's consolidated balance sheet as of September 30, 2007. This statement has not been prepared, audited or reviewed by the Receiver or any of its professionals in accordance with generally accepted accounting principles. Instead, this is a copy from the Business' records as developed by the Business after it acquired certain companies from BCI Aircraft Leasing, LLC (the "BCI Entities") on or about September 10, 2007. The BCI Entities indirectly own the aircraft, and are the principal assets of HJC Holdings. As of July 31, 2008, all of the remaining aircraft are leased to commercial airlines and are subject to senior debt financing arrangements. The lease stream payments, after satisfaction of senior debt service and interest payments, generate some net cash flow to the HJC Receivership. The Receiver's preliminary cash flow analysis respecting the BCI Entities aircraft is attached hereto as Exhibit D. This exhibit does not account for the administrative expenses of this estate.

As of May 7, 2008, the Business had the sum of $49,640.15 on hand in bank accounts under the signature control of the Companies' personnel (Exhibit E). This and all other Business proceeds have been transferred to accounts controlled by the Receiver. Since May 5, 2008, the Receiver has collected additional net proceeds of the Business's lease receivables and has made disbursements in connection with his duties. As of July 31, 2008, this estate retains $3,742,619.53 in the Receiver's account, plus an additional $250,000.00 in a special escrow account for the sale of the BA 737 (described below). Exhibits F, G, H, I, J and K summarize the HJC Receivership's banking activities for the Reporting Period.

As of September 30, 2007, the Business listed approximately $669,000 in cash, aircraft assets of approximately $114 million, and total liabilities of approximately $101 million (Exhibit C). It should be noted that the Business bank accounts (Exhibit E) reflected a far lower amount of cash on hand as of May 7, 2008. It should also be noted that the Receiver cannot determine at this time whether this estate will be able to recover the asset values reflected in Exhibit C. As the Receiver previously stated to this Court (i) on June 12, 2008 in connection with the SEC's motion to include Hyatt's assets in this receivership and (ii) on July 9, 2008 in connection with the Receiver's motion to approve the sale of the British Airways Boeing 737, worldwide commercial aircraft values have significantly deteriorated since the beginning of this year, and continued to deteriorate after Handler's appointment as Receiver. There may be further negative impact resulting from the publicity surrounding the recent indictment of Hyatt. A more detailed analysis of the realizable value of the HJC Holdings' assets will be provided in the Receiver's next report.

The Receiver is preparing his preliminary inventory in order to identify, locate and/or marshaled numerous pieces of personal property related to the estates. The Receiver has not

assigned any value to the Business or Hyatt's property connected with this receivership.  In

addition, the Receiver has not made any determination regarding any challenges as to title to

property or whether any of the assets are subject to a valid lien or claim of any creditor.  The

Receiver advises that not all of these assets have been located or marshaled. It should also be

noted that some Business and/or Hyatt assets may be in the hands of Hyatt or Hyatt's family

members (such as his wife, Heidi and his mother). The Receiver continues to investigate the

location and whereabouts of all of the Business and Hyatt's tangible and intangible assets and

will report his findings to the Court as his investigation continues.

To protect the Receivership estate's interest in real property owned by Hyatt, counsel for

the Receiver has recorded the Order of Receivership against three homes titled to Hyatt with the

recorder of deeds in the counties wherein the real property is located.

<u>Status of Sale of Commercial Jet Aircraft</u>

Since his appointment in this proceeding, the Receiver has been actively engaged in

marketing and selling all of the estate's aircraft.  With respect to the estate's Boeing 737 plane on

lease to British Airway (the "BA 737") , the Receiver retained two brokers that specialize in sale

of aircraft, both of whom had been engaged in marketing the sale of the BA 737 prior to the

commencement of this proceeding.  As anticipated in the Receiver's motion to approve the sale

of the BA 737, closing of the sale of the BA 737 took place on July 21, 2008, which resulted in

the estate receiving approximately $3.2 million.[3]  A detailed summary of the sale is attached

hereto as Exhibit L.  In connection with this sale, it should be noted that the Receiver and

---

[3] This is prior to payment of brokerage commissions and costs, plus the fees and costs of the Receiver's special
counsel retained for this transaction.  In addition, pursuant to the asset purchase agreement, the Receiver placed
$250,000 of the sale proceeds in a special escrow account.  The funds in this account will be returned to the Estate
six months following closing provided no claims are made against the purchaser related to HJC Holdings'
acquisition of the aircraft from BCI Aircraft Leasing, LLC.

counsel also successfully negotiated (i) the elimination of the $220,000 prepayment fee demanded by Deutsche Bank and (ii) a $147,000 reduction of the brokers' commission due in connection with this sale. Prior to the Receiver's appointment on May 5, 2008, HJC Holdings had entered into two (2) separate "exclusive" marketing agreements respecting the BA 737: One with Mercury-ALPS Aviation Management LLC ("Mercury") requiring a commission of 1.5% of the gross sale proceeds plus costs and the other with ComAirTrading, LLC requiring a commission of 2.5% without costs. The Receiver negotiated a settlement with two brokers so that the brokers jointly market the BA 737 on a shared commission basis splitting a single 2.5% commission. Upon the sale of the BA 737, the resulting commission savings to this estate totaled $147,000.

The Receiver's request for authority to pay the brokers and special counsel engaged solely for the sale of the BA 737 will be set forth in a separate pleading.

Upon the sale of the BA 737, this Receivership estate has remaining five (5) commercial jet aircraft -- one Airbus A319 which is on lease to US Airways and four Airbus A321s which are on lease to Alitalia. Prior to the filing of this proceeding, HJC Holdings entered into an aircraft management and remarketing agreement with Mercury which provided for, among other things, Mercury's exclusive rights to market all of the estate's aircraft. The Receiver continues to work with Mercury to manage, market and offer for sale the estate's remaining aircraft.

<u>Jason Hyatt and Panacea Partners, LLC</u>

Upon his appointment in the Hyatt Receivership, Handler began to investigate, locate and inspect Jason Hyatt's assets. The Receiver has verified and/or inspected a number of Hyatt's assets as alleged by the SEC in prior pleadings, and continues to investigate the location, title and the extent of Hyatt's interests in other assets. In general, Hyatt owns three (3) homes: one in St.

Charles, IL; one in Geneva, IL; and one in Michigan City, IN.  Each of the homes is subject to first and second mortgages and is in foreclosure proceedings.  At this time the Receiver cannot determine if this estate has any equity in any of the residences. In addition, Hyatt owns a number of automobiles, antique pianos and music players, and art work.  He may also own other assets, such as jewelry.

The Hyatt Receivership arose in part due to Hyatt's interests in Panacea Partners, LLC, an Illinois limited liability company ("Panacea").  In the Complaint filed by the SEC in this case, the SEC alleged that assets of the Investor LLC assets were diverted by Hyatt who, in turn, loaned the funds to Panacea.  Panacea owns and operates the restaurant known as DeLaCosta in Chicago, Illinois.  Panacea is also a defendant in a separate investor lawsuit pending in the Circuit Court of Cook County, Illinois.  The Receiver has learned that Bridgeview Bank, one of Panacea's senior secured creditors, has also obtained second mortgage liens on the St. Charles and Geneva residences of Hyatt to secure his loans to Panacea.

Since commencement of this case, Panacea filed a petition under Chapter 11 of the Bankruptcy Code in the Bankruptcy Court for this District as Case No. 08-17391.  Panacea is currently operating as debtor in possession.  Because Hyatt may have both ownership (80%) and creditor interests ($2 million claim) in Panacea, the Receiver is participating in the Panacea Bankruptcy to protect the Receivership Estate interests.

The Receiver has attempted to obtain a more detailed inventory of all of Hyatt's assets, including all of the documentation respecting Hyatt's interests in Panacea, but Hyatt has not cooperated to the Receiver's satisfaction.  Among other things, the Receiver requires Hyatt's documents respecting Panacea, including all of Bridgeview Bank's loan agreements with Panacea,  Hyatt's guaranty and mortgages securing the guaranty to Bridgeview, Hyatt's loan

documents with Panacea, and Panacea's operating agreement and all other documents reflecting Hyatt's equity interest in and /or loan advances to Panacea. The Receiver has obtained some of these documents, but requires full disclosure in order to determine the scope and validity of Hyatt's ownership and creditor interests in Panacea, and the Bridgeview Bank's priority claims (if any) in Panacea, and the enforceability of Bridgeview's liens in Hyatt's homes in Geneva and St. Charles. To that end, the Receiver's counsel will be taking the depositions of both Hyatt, his wife and other family members and others involved in Hyatt's business. The Receiver anticipates he will present a more detailed summary of Hyatt's holdings in his next report.

<u>Forensic Investigation</u>

The Receiver has initiated a forensic review of HJ Capital's records. The Receiver anticipates that such a review will include (i) a reconstruction of the estate's records; (ii) complete forensic analysis of the Business' financial activities; (iii) investigation of alleged fraudulent activity; (iv) transaction and asset tracing; (v) analysis of the Business' financial position and results; (vi) preparation of information for further reports; and (vii) other accounting and financial support to the Receiver. The Receiver may need to retain additional professionals in this task.

<u>Miscellaneous</u>

In connection with his duties, the Receiver has made disbursements from his own account for the benefit of the estate. The Receiver will seek reimbursement of these expenses as well as its Receiver's Fees in a separate pleading.

Respectfully Submitted

ROBERT P. HANDLER, Receiver

__//Robert P. Handler_____

Paula K. Jacobi
Deborah L. Thorne
Barnes & Thornburg LLP
One North Wacker Drive
Suite 4400
Chicago, Illinois  60606
(312) 357-1313
Counsel to the Receiver



# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 1:08-cv-2224 |
| v. | ) ) | Honorable George W. Lindberg |
| JASON R. HYATT, JAY JOHNSON, and HYATT JOHNSON CAPITAL, LLC, | ) ) ) | Magistrate Judge Michael T. Mason |
| Defendants. | ) ) | |

## ORDER

THIS MATTER COMING TO BE HEARD pursuant to The Receiver's Motion to

Supplement Receiver Order (the "Motion")[1]; due notice having been given to all entitled thereto;

and this Court being fully advised in the premises;

IT IS HEREBY ORDERED:

(1)    The Motion is granted.

(2)    The Receiver Order (Exhibit 1 hereto) is supplemented as follows:

    a.  The Receiver is hereby authorized and empowered (i) to take control of HJC Manager's operations, funds, bank accounts, assets and property, wherever situated, with the powers set forth in the Receiver Order, including powers over all funds, assets, premises (whether owned, leased occupied, or otherwise controlled), choses in action, books, records, bank accounts and other property belong to or in the possession of or control of HJC Manager, (ii) to exercise the rights and powers of HJC Manager as manager of HJC Holdings and the Subsidiaries of which HJC Manager is the manager and (iii) to commence the sale of the aircraft indirectly owned by HJC Holdings.

    b.  Parts II and III of the Receiver Order shall apply to HJC Manager, excluding Paragraph II.F, with "HJ Capital" now meaning "HJ Capital and HJC Manager" for purposes of Parts II and III of the Receiver Order.

    c.  The Receiver is hereby authorized and empowered to have control of, and to be added as the sole authorized signatory for all accounts of HJ Capital and

---

[1] Unless otherwise defined herein, all capitalized terms shall have the meanings set forth in the Motion.

129387v5

HJC Manager and of any entity of which HJ Capital or HJC Manager is the manager, at any bank, brokerage firm or other financial institution which has possession, control or custody of the assets or funds of any of HJ Capital, HJC Manager, or any entity of which HJ Capital or HJ Manager is the manager, wherever situated, including without limitation of the foregoing, the accounts located at Citibank, N.A. set forth on Exhibit 2 hereto;

d.  The Receiver is hereby authorized and empowered to release the funds in the Pineapple Escrow Agreement, and if the Receiver deems it appropriate, the escrow deposit of the Esperanza Fund, LLC, to the respective depositors of such funds, with interest.

e.  Subject to the Receiver receiving a court order, HJC Manager and HJ Capital (jointly and severally) shall pay the costs, fees and expenses of the Receiver incurred in connection with the performance of his duties described in the Receiver Order as such order may be amended herein and from time to time, including, without limitation, the costs and expenses of those persons who may be engaged or employed by the Receiver to assist him in carrying out his duties and obligations under the Receiver Order as it may be amended from time to time. The principal source of funds to pay the fees and expenses of the Receiver and the parties employed by him will be (i) management fees and expenses received by HJC Manager from HJC Holdings pursuant to inter alia Section 7.7 of the Operating Agreement of HJC and from the Subsidiaries as manager of such Subsidiaries Holdings, (ii) management fees and expenses received by HJ Capital from the various HJ LLs for which HJ Capital acts as manager and (iii) funds held now held or hereafter acquired by HJ Capital or HJC Manager. All applications for costs, fees and expenses for services rendered in connection with the Receiver under such order shall be made by application setting forth in reasonable detail the nature of the services and shall be heard by the Court. The Receiver shall be entitled to apply to the Court every thirty (30) days for reimbursement of costs and expenses and for award of fees incurred by him and by those retained by him to assist him in his discharging his duties as Receiver and to have the applications heard so that fees and reimbursement for cost and expenses are not outstanding more than 60 days.

Dated **JUN 12 2008** _____, 2008

ENTER;

_George W. Lindberg_

Hon. George W. Lindberg
Senior U.S. District Judge

# EXHIBIT 1

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION, | : : : |
| Plaintiff, | : : |
| v. | : CASE NO. 1:08-cv-2224 |
| JASON R. HYATT, JAY JOHNSON, and HYATT JOHNSON CAPITAL, LLC | : : Honorable George W. Lindberg : : Magistrate Judge Michael T. Mason |
| Defendants. | : : |

## AGREED ORDER APPOINTING RECEIVER OVER
## DEFENDANT HYATT JOHNSON CAPITAL LLC

This Cause coming to be heard upon the Agreed Order Appointing Receiver over

Defendant Hyatt Johnson Capital LLC ("Order") agreed to by Plaintiff U.S. Securities

and Exchange Commission, Defendant Jason R. Hyatt, and Defendant Jay D. Johnson: [1]

### I.

IT IS HEREBY ORDERED, ADJUDGED AND DECREED that as of one

business day from the date of this Order and pending the determination of the SEC's

action on the merits, or such other time as the Court may order, Robert Handler, Esq. be

appointed Receiver over HJ Capital.

### II.

---

[1]  At this time, Defendant Hyatt Johnson Capital, LLC is not represented by counsel. However, Defendants Hyatt and Johnson, who are agreeing to this Order, represent that (i) Hyatt Johnson Capital, LLC is wholly owned and controlled by Defendants Hyatt and Johnson, (ii) HJC Asset Holdings Manager, Inc., is wholly owned and controlled by Defendants Hyatt and Johnson, and (iii) HJC Asset Holdings Manager, Inc. is the sole manager of HJC Asset Holdings LLC.

**IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that the Receiver shall take control of HJ Capital's operations, funds, assets and property wherever situated, with the powers set forth herein, including powers over all funds, assets, premises (whether owned, leased, occupied, or otherwise controlled), choses in action, books, records, and other property belonging to or in the possession of or control of HJ Capital, and the Receiver is hereby authorized, empowered, and directed:

A. to have access to and take control of all funds, assets, business premises owned, leased, or otherwise controlled by HJ Capital, choses in action, books, records, papers, and other property of HJ Capital, with full power to monitor and approve each transaction, disbursement or receipt of funds, or any other disposition relating to such funds, assets or property, and with full power to take such steps as he deems necessary to secure such premises, funds and property;

B. to have control of, and to be added as an authorized signatory for, all accounts of HJ Capital at any bank, brokerage firm or financial institution which has possession, custody or control of any HJ Capital assets or funds, wherever situated;

C. to take such action as is necessary and appropriate to marshal, recover, preserve and take control of, and to prevent the dissipation, concealment, or disposition of any assets of, and pursue claims on behalf of, HJ Capital;

D. to make or authorize such payments and disbursements from the funds and assets taken into control, or thereafter received by him, and to incur, or authorize the incurrence of, such expenses and make, or authorize the making of, such agreements as may be reasonable, necessary and advisable in discharging his duties as Receiver;

E. to engage and employ persons in his discretion to assist him in carrying out his duties and responsibilities hereunder, including, but not limited to, counsel and accountants; and

F. to serve as manager of HJC Asset Holdings Manager, Inc., as well as all entities previously managed or controlled by HJ Capital, including, but not limited to: Hyatt Johnson A3 2003 LLC, Hyatt Johnson SAS 2003 LLC, Hyatt Johnson BA 2005 LLC, Hyatt Johnson Continental

2

2005 LLC, Hyatt Johnson T2 LLC, Hyatt Johnson United 2005 LLC, Hyatt Johnson USA 2004 LLC, Hyatt Johnson USA 2005 LLC, Hyatt Johnson Brown D26 LLC, Hyatt Johnson 26 LLC, Hyatt Johnson Finance I – Series A, Hyatt Johnson Finance I – Series B, Hyatt Johnson Finance I – Series C, Hyatt Johnson Park Avenue LLC, Hyatt Johnson Ventures I LLC, Hyatt Johnson Ventures II LLC, Hyatt Johnson Ventures III LLC, Strategic Aircraft Investors LLC, and Hyatt Johnson A3D 2003 II LLC.

## III.

**IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that, in

connection with the appointment of the Receiver provided for above:

A. HJ Capital and their officers, agents, servants, employees, attorneys-in-fact, shareholders, and other persons who are in custody, possession, or control of any assets, books, records, or other property of HJ Capital shall forthwith give access to and control of such property to the Receiver, and shall forthwith grant to the Receiver authorization to be a signatory as to all accounts at banks, brokerage firms or financial institutions which have possession, custody or control of any assets or funds in the name of or for the benefit of HJ Capital;

B. All banks, brokerage firms, financial institutions, and other business entities which have possession, custody or control of any assets, funds or accounts in the name of or for the benefit of HJ Capital shall cooperate expeditiously in the granting of control and authorization as a necessary signatory as to said assets and accounts to the Receiver;

C. Unless and as authorized by the Receiver, HJ Capital shall not take any action, or purport to take any action, in the name of or on behalf of HJ Capital;

D. HJ Capital, and their respective officers, agents, servants, employees, and attorneys-in-fact, shall cooperate with and assist the Receiver, including, if deemed necessary by the Receiver, by appearing for deposition testimony and producing documents, upon four days' faxed notice (however, nothing in this order shall affect the Fifth Amendment Privileges against self incrimination of Jason R. Hyatt or Jay D. Johnson), and shall take no action, directly or indirectly, to hinder, obstruct, or otherwise interfere with the Receiver in the conduct of his or her duties or to interfere in any manner, directly or indirectly, with the custody, possession,

3

management, or control by the Receiver of the funds, assets, premises, and choses in action described above;

E.    HJ Capital shall pay the costs, fees and expenses of the Receiver incurred in connection with the performance of his duties described herein, including the costs and expenses of those persons who may be engaged or employed by the Receiver to assist him in carrying out his duties and obligations hereunder. All applications for costs, fees and expenses for services rendered in connection with the Receiver shall be made by application setting forth in reasonable detail the nature of the services and shall be heard by the Court;

F.    No bond shall be required in connection with the appointment of the Receiver. Except for an act of gross negligence, the Receiver shall not be liable for any loss or damage incurred by HJ Capital or its officers, agents or employees, or any other person, by reason of any act performed or omitted to be performed by the Receiver in connection with the discharge of his or her duties and responsibilities hereunder.

## IV.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that, pending the determination of the Commission's action on the merits, representatives of the Receiver are authorized to have continuing access to inspect or copy any or all of the corporate books and records and other documents of HJ Capital, and continuing access to inspect HJ Capital's funds, property and assets, wherever they may be located.

## V.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Defendants HJ Capital, Jason Hyatt and Jay Johnson shall transfer to the Receiver, as and when directed by him, any and all funds, property, documents or records of HJ Capital that are in their possession, custody or control; and that Defendants Jason Hyatt and Jay Johnson shall forthwith take all steps necessary to relinquish their signatory authority as to all accounts at banks, brokerage firms or financial institutions which have possession,

4

custody or control of any assets or funds in their name or in the name of or for the benefit
of HJ Capital.

## VI.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the Court

shall retain jurisdiction of this matter for all purposes.

SO ORDERED:

HON. GEORGE W. LINDBERG
SENIOR U. S. DISTRICT JUDGE

Dated: May 5, 2008

5

# EXHIBIT 2

# EXHIBIT 2

## LIST OF BANK ACCOUNTS *

| | Account Number | FEIN |
|---|---|---|
| Hyatt Johnson Capital, LLC | xxxxxxx886 | xxxxxxx949 |
| Hyatt Johnson Ventures I, LLC | xxxxxxx738 | xxxxxxx143 |
| Hyatt Johnson Ventures II, LLC | No known bank account | xxxxxxx173 |
| Hyatt Johnson Ventures III, LLC | xxxxxxx750 | xxxxxxx225 |
| Hyatt Johnson Stonegate, LLC | xxxxxxx155 | xxxxxxx659 |
| Hyatt Johnson K13, LLC | xxxxxxx078 | xxxxxxx502 |
| Hyatt Johnson Park Avenue, LLC | xxxxxxx354 | xxxxxxx502 |
| Hyatt Johnson SAS 2003, LLC | xxxxxxx894 | xxxxxxx536 |
| Hyatt Johnson A3 2003, LLC | xxxxxxx584 | xxxxxxx447 |
| Hyatt Johnson A3D 2003 II, LLC | xxxxxxx770 | xxxxxxx883 |
| Hyatt Johnson Continental 2005, LLC | xxxxxxx644 | xxxxxxx875 |
| Hyatt Johnson USA 2004, LLC | xxxxxxx147 | xxxxxxx784 |
| Hyatt Johnson USA 2005, LLC | xxxxxxx174 | xxxxxxx842 |
| Hyatt Johnson BA 2005, LLC | xxxxxxx977 | xxxxxxx187 |
| Hyatt Johnson T2 2005, LLC | xxxxxxx572 | xxxxxxx052 |
| Hyatt Johnson United 2005, LLC | xxxxxxx528 | xxxxxxx341 |
| Hyatt Johnson 26, LLC | xxxxxxx035 | xxxxxxx173 |
| Brown HJ D26, LLC | xxxxxxx072 | xxxxxxx748 |
| Strategic Aircraft Investors, LLC | xxxxxxx629 | xxxxxxx335 |
| Hyatt Johnson AF 2004, LLC | xxxxxxx568 | xxxxxxx335 |
| HJ Finance I, LLC-Series A | xxxxxxx062 | xxxxxxx660 |
| HJ Finance I, LLC-Series B | xxxxxxx089 | xxxxxxx229 |
| HJ Finance I, LLC-Series C | xxxxxxx054 | xxxxxxx268 |
| HJC Asset Holdings, LLC | xxxxxxx261 | xxxxxxx673 |

*Account numbers and FEINs partially redacted

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>JASON R. HYATT,<br>JAY JOHNSON, and<br>HYATT JOHNSON CAPITAL, LLC<br><br>Defendants. | :<br>:<br>:<br>:<br>:<br>:<br>:  CASE NO.  1:08-cv-2224<br>:<br>:<br>:  Honorable George W. Lindberg<br>:<br>:  Magistrate Judge Michael T. Mason<br>:<br>: |

## ORDER APPOINTING RECEIVER OVER
## ALL ASSETS OF DEFENDANT JASON R. HYATT

This Cause coming to be heard upon the SEC's Motion Appointing Receiver over all assets of Defendant Jason R. Hyatt ("Order"):

### I.

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED** that as of one business day from the date of this Order and pending the determination of the SEC's action on the merits, or such other time as the Court may order, Robert Handler, Esq. be appointed Receiver over all assets of Defendant Jason R. Hyatt.

### II.

**IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that the Receiver shall take control of all assets of Defendant Hyatt, including any operations, funds, assets and property wherever situated, with the powers set forth herein, including powers over all funds, assets, premises (whether owned, leased, occupied, or otherwise controlled), choses in action, books, records, and other property belonging to or in the

possession of or control of all assets of Defendant Hyatt, and the Receiver is hereby

authorized, empowered, and directed:

A.      to have access to and take control of all funds, assets, business premises owned, leased, or otherwise controlled by Defendant Hyatt, choses in action, books, records, papers, and other property of Defendant Hyatt, with full power to monitor and approve each transaction, disbursement or receipt of funds, or any other disposition relating to such funds, assets or property, and with full power to take such steps as he deems necessary to secure such premises, funds and property;

B.      to have control of, and to be added as an authorized signatory for, all accounts of Defendant Hyatt at any bank, brokerage firm or financial institution which has possession, custody or control of any assets or funds of Defendant Hyatt, wherever situated;

C.      to take such action as is necessary and appropriate to marshal, recover, preserve and take control of, and to prevent the dissipation, concealment, or disposition of any assets of, and pursue claims on behalf of, Defendant Hyatt;

D.      to make or authorize such payments and disbursements from the funds and assets taken into control, or thereafter received by him, and to incur, or authorize the incurrence of, such expenses and make, or authorize the making of, such agreements as may be reasonable, necessary and advisable in discharging his duties as Receiver;

E.   to engage and employ persons in his discretion to assist him in carrying out his duties and responsibilities hereunder, including, but not limited to, counsel and accountants; and

### III.

**IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that, in

connection with the appointment of the Receiver provided for above:

A.      Defendant Hyatt and his officers, agents, servants, employees, attorneys-in-fact, shareholders, and other persons who are in custody, possession, or control of any assets, books, records, or other property of Defendant Hyatt shall forthwith give access to and control of such property to the Receiver, and shall forthwith grant to the Receiver authorization to be a signatory as to all

2

accounts at banks, brokerage firms or financial institutions which have possession, custody or control of any assets or funds in the name of or for the benefit of Defendant Hyatt;

B.      All banks, brokerage firms, financial institutions, and other business entities which have possession, custody or control of any assets, funds or accounts in the name of or for the benefit of Defendant Hyatt shall cooperate expeditiously in the granting of control and authorization as a necessary signatory as to said assets and accounts to the Receiver;

C.      Defendant Hyatt, and his respective officers, agents, servants, employees, and attorneys-in-fact, shall cooperate with and assist the Receiver, including, if deemed necessary by the Receiver, by appearing for deposition testimony and producing documents, upon four days' faxed notice (however, nothing in this order shall affect the Fifth Amendment Privileges against self incrimination of Defendant Hyatt), and shall take no action, directly or indirectly, to hinder, obstruct, or otherwise interfere with the Receiver in the conduct of his or her duties or to interfere in any manner, directly or indirectly, with the custody, possession, management, or control by the Receiver of the funds, assets, premises, and choses in action described above;

D.      Defendant Hyatt shall pay the costs, fees and expenses of the Receiver incurred in connection with the performance of his duties described herein, including the costs and expenses of those persons who may be engaged or employed by the Receiver to assist him in carrying out his duties and obligations hereunder.  All applications for costs, fees and expenses for services rendered in connection with the Receiver shall be made by application setting forth in reasonable detail the nature of the services and shall be heard by the Court;

E.      No bond shall be required in connection with the appointment of the Receiver.  Except for an act of gross negligence, the Receiver shall not be liable for any loss or damage incurred by Defendant Hyatt or its officers, agents or employees, or any other person, by reason of any act performed or omitted to be performed by the Receiver in connection with the discharge of his or her duties and responsibilities hereunder.

**IV.**

**IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that, pending the determination of the Commission's action on the merits, representatives of the Receiver are authorized to have continuing access to inspect or copy any or all of the financial records and other documents of Defendant Hyatt, and continuing access to inspect Defendant Hyatt's funds, property and assets, wherever they may be located.

**V.**

**IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that Defendant Hyatt shall transfer to the Receiver, as and when directed by him, any and all funds, property, documents or records of Defendant Hyatt that are in his possession, custody or control; and that Defendant Hyatt shall forthwith take all steps necessary to relinquish his signatory authority as to all accounts at banks, brokerage firms or financial institutions which have possession, custody or control of any assets or funds in his name or in the name of or for the benefit of Defendant Hyatt.

**VI.**

**IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that the Court shall retain jurisdiction of this matter for all purposes.

SO ORDERED:

**George W. Lindberg**
**Senior United States District Judge**

Dated:  June 11, 2008

4

| Hyatt Combined Portfoilo Sept. 30,2007 | Totals | 2004-8 US Air | 2005-1 British | 477-488 2006 Alitalia |
|---|---|---|---|---|
| Cash | 668,836 | | | 668,836 |
| Restricted Cash | 1,563,167 | | | 1,563,167 |
| Accounts Receivable | 3,750,934 | 2,115,504 | | 1,635,430 |
| Flight Equipment, Net | 109,815,277 | 18,860,479 | 9,053,544 | 81,901,254 |
| Deferred Financing, Net | 1,036,184 | | 31,756 | 1,004,428 |
| Deferred Leasing Costs, Net | 103,978 | 9,497 | | 94,481 |
| Total Assets | 116,938,376 | 20,985,480 | 9,085,300 | 86,867,596 |
| Debt | 95,542,006 | 18,148,780 | 7,051,062 | 70,342,164 |
| Accounts Payable & Accrued Expenses | 1,115,306 | 877,857 | | 237,449 |
| Security Deposits | 1,510,000 | | | 1,510,000 |
| Lease Discounts upon acquisition, net | (455,309) | (455,309) | | |
| Deferred Revenue | 3,498,721 | 492,915 | 65,806 | 2,940,000 |
| Total Liabilites | 101,210,724 | 19,064,243 | 7,116,868 | 75,029,613 |
| Equity Contribution | 13,030,000 | 200,000 | 850,000 | 11,980,000 |
| Retained Earnings | 1,936,712 | 1,649,599 | 1,077,598 | (790,485) |
| Current Earnings | 760,940 | 71,638 | 40,834 | 648,468 |
| Total Equity | 15,727,652 | 1,921,237 | 1,968,432 | 11,837,983 |
| Total Liabilities & Equity | 116,938,376 | 20,985,480 | 9,085,300 | 86,867,596 |
| Rental of Flight Equipment | 1,353,171 | 231,551 | 120,000 | 1,001,620 |
| Maintenance Reserve revenue | 433,093 | 0 | 0 | 433,093 |
| Interest Expense | 649,970 | 109,732 | 51,609 | 488,629 |
| Depreciation | 374,125 | 50,111 | 27,557 | 296,457 |
| Amortization | 1,141 | 70 | 0 | 1,071 |
| Operations | 88 | 0 | 0 | 88 |
| Net Income | 760,940 | 71,638 | 40,834 | 648,468 |

HJC Asset Holdings
Net Cash Flow

| | Alitalia 477 | Alitalia 488 | Alitalia 586 | Alitalia 593 | US Air | Rent Rebate | Total | Cumulative |
|---|---|---|---|---|---|---|---|---|
| May-08 | 24,500 | 24,500 | 95,929 | 96,427 | | | 241,356 | 241,356 |
| Jun-08 | 24,500 | 24,500 | | | | | 49,000 | 290,356 |
| Jul-08 | 24,500 | 24,500 | | | 134,755 | | 183,755 | 474,111 |
| Aug-08 | 24,500 | 24,500 | 95,929 | 96,427 | | | 241,356 | 715,467 |
| Sep-08 | 24,500 | 24,500 | | | | | 49,000 | 764,467 |
| Oct-08 | 24,500 | 24,500 | | | | | 49,000 | 813,467 |
| Nov-08 | 24,500 | 24,500 | 95,929 | 96,427 | | | 241,356 | 1,054,823 |
| Dec-08 | 24,500 | 24,500 | | | | | 49,000 | 1,103,823 |
| Jan-09 | 24,500 | 24,500 | | | 249,878 | (490,000) | (191,122) | 912,701 |
| Feb-09 | 24,500 | 24,500 | 95,929 | 96,427 | | | 241,356 | 1,154,057 |
| Mar-09 | 24,500 | 24,500 | | | | | 49,000 | 1,203,057 |
| Apr-09 | 24,500 | 24,500 | | | | | 49,000 | 1,252,057 |
| May-09 | 24,500 | 24,500 | 95,929 | 96,427 | | | 241,356 | 1,493,413 |
| Jun-09 | 24,500 | 24,500 | | | | | 49,000 | 1,542,413 |
| Jul-09 | 24,500 | 24,500 | | | 227,879 | | 276,879 | 1,819,292 |
| Aug-09 | 24,500 | 24,500 | 95,929 | 96,427 | | | 241,356 | 2,060,648 |
| Sep-09 | 24,500 | 24,500 | | | | | 49,000 | 2,109,648 |
| Oct-09 | 24,500 | 24,500 | | | | | 49,000 | 2,158,648 |
| Nov-09 | 24,500 | 24,500 | 95,929 | 96,427 | | | 241,356 | 2,400,004 |
| Dec-09 | 24,500 | 24,500 | | | | | 49,000 | 2,449,004 |
| | | | | | | | | |
| Total | 490,000 | 490,000 | 671,503 | 674,989 | 612,512 | (490,000) | 2,449,004 | - |

HJC Assest Holdings
Transfer - Balance to Receiver's Account
May 20, 2008

|  |  | Amount | Balance |
|---|---|---|---|
| Beginning balance | 5/7/2008 | 49,640.15 | 49,640.15 |
| WIRE FROM BCI IR MSN 477 40513088 2006 LTD | 5/13/2008 | 56,215.21 | 105,855.36 |
| WIRE FROM PK AIRINANCE LUX051908MBOURG DISBURSE | 5/19/2008 | 95,896.75 | 201,752.11 |
| FUNDING TRANSFER TO 140000000000800761832 | 5/20/2008 | (201,752.11) | - |
| FUNDING TRANSFER TO 140000000000800761832 | 5/22/2008 | (48,950.00) | (48,950.00) |
| WIRE FROM PK AIRINANCE LUX052208MBOURG DISBURSE | 5/22/2008 | 48,950.00 | - |
| FUNDING TRANSFER TO 140000000000800761832 | 5/28/2008 | (96,124.56) | (96,124.56) |
| WIRE FROM PK AIRINANCE LUX052808MBOURG DISBURSE | 5/28/2008 | 96,124.56 |  |

| Credits |  | 346,826.67 |  |
| Debits and Charges |  | (346,826.67) |  |

Recap:

| Beginning balances |  | 105,855.36 |
| Net cash - Alitalia Lease Payments |  | 240,971.31 |

| Total |  | 346,826.67 |

HJCAH Receiver's Account
Activity
May 19, 2008 - May 31, 2008

| Account | Date | Description | Amount | Balance | Additional Description |
|---|---|---|---|---|---|
| 800761832 | 5/19/2008 | Deposit TLR Br#: 00523 TID:76 | 56,587.30 | 56,587.30 | Transfer beginning balances from other accou |
| 800761832 | 5/20/2008 | TRANSFER TO 800521629 | (5.00) | 56,582.30 | Bank service charge (Strategic Aircraft) |
| 800761832 | 5/20/2008 | FUNDING TRANSFER FROM 140000000000800715261 | 201,752.11 | 258,334.41 | Transfer from HJC Asset Holdings (see next t |
| 800761832 | 5/20/2008 | FUNDING TRANSFER FROM 140000000000800563054 | 419.25 | 258,753.66 | Transfer from ? |
| 800761832 | 5/20/2008 | FUNDING TRANSFER FROM 140000000000800551072 | 346.04 | 259,099.70 | Transfer fromn Brown HJ D26 |
| 800761832 | 5/22/2008 | FUNDING TRANSFER FROM 140000000000800715261 | 48,950.00 | 308,049.70 | Trsfr from HJC Asset Holdings - PK Airfinance |
| 800761832 | 5/28/2008 | FUNDING TRANSFER FROM 140000000000800715261 | 96,124.56 | 404,174.26 | Trsfr from HJC Asset Holdings - PK Airfinance |

| | | |
|---|---|---|
| Deposits | 404,179.26 | |
| Checks and charges | (5.00) | |
| Net change | 404,174.26 | |

ints

ab)

e - Alitalia net payment
e - Alitalia net payment

HJAHC Receiver's Bank Account
Activity Recap for the Month of May 2008

Cash Receipts

| | |
|---|---|
| Transfer of closing balances in various accounts | 163,207.95 |
| Net cash from lease payments - Alitalia | 240,971.31 |
| Total Cash Receipts | 404,179.26 |

Cash Disbursements

| | |
|---|---|
| Bank service charges | (5.00) |
| Net increase in cash | 404,174.26 |
| Cash at beginning of period | - |
| Cash at end of period | 404,174.26 |

| Date | Description | Amount |
|---|---|---|
| 6/9/2008 | WIRE TO Mercury-ALPS Aviaton Management | (30,639.15) |
| 6/16/2008 | Check #1001 | (250.00) |
| 6/18/2008 | SERVICE CHARGE | (676.84) |
| 6/20/2008 | Swift Code SNTRUS3A | (23,000.00) |
| 6/24/2008 | FUNDING TRANSFER FROM 1400000000000800715261 | 48,702.00 |
| 6/26/2008 | Withdrawal Br#: 00072 TID: 1 500 W MADISON,CHICAGO,IL | (1,825.00) |

HJAHC Receiver's Bank Account
Activity Recap for the Month of June 2008

Cash Receipts

Net cash from lease payments - Alitalia                48,702.00

Total Cash Receipts                                    48,702.00

Cash Disbursements

Mercury ALPS Aviation - Management fee                (30,639.15)
Secretary of State - LLC Fees                          (2,075.00)
Avitas - Retainer for inspection of Alitalia aircraft (23,000.00)
Bank service charges                                     (676.84)

Total Cash Disbursements                              (56,390.99)

Net increase in cash                                   (7,688.99)

Cash at beginning of period                           404,174.26

Cash at end of period                                 396,485.27

HJAHC Receiver's Bank Account
Activity Detail for the Month of July 2008

| Date | Ref | Payee/Payor | Amount |
|------|-----|-------------|--------|
| 7/1/2008 | WIRE OUT | WIRE TO Mercury-ALPS Aviaton Management | (35,178.28) |
| 7/1/2008 | INT TSFR | INT'L FUNDS TRANSFER - JP Europe | (1,482.16) |
| 7/1/2008 | INT TSFR | INT'L FUNDS TRANSFER - JP Europe | (8,892.40) |
| 6/11/2008 | Check #1002 | Secretary of State | (25.00) |
| 6/24/2008 | Check #1003 | Secretary of State | (250.00) |
| 6/24/2008 | Check #1004 | Secretary of State | (25.00) |
| 6/24/2008 | Check #1005 | Secretary of State | (250.00) |
| 6/24/2008 | Check #1006 | Secretary of State | (25.00) |
| 7/2/2008 | Check #1008 | Secretary of State | (25.00) |
| 7/2/2008 | Check #1009 | Secretary of State | (25.00) |
| 7/2/2008 | Check #1010 | Secretary of State | (25.00) |
| 7/2/2008 | Check #1011 | Secretary of State | (250.00) |
| 7/2/2008 | Check #1012 | Secretary of State | (25.00) |
| 7/2/2008 | Check #1013 | Secretary of State | (250.00) |
| 7/2/2008 | Check #1014 | Secretary of State | (250.00) |
| 7/2/2008 | Check #1016 | Secretary of State | (25.00) |
| 7/2/2008 | Check #1017 | Secretary of State | (25.00) |
| 7/2/2008 | Check #1018 | Secretary of State | (250.00) |
| 7/2/2008 | Check #1019 | Secretary of State | (25.00) |
| 7/2/2008 | Check #1021 | Secretary of State | (250.00) |
| 7/2/2008 | Check #1022 | Secretary of State | (25.00) |
| 7/2/2008 | Check #1023 | Secretary of State | (250.00) |
| 7/2/2008 | Check #1024 | Secretary of State | (25.00) |
| 7/2/2008 | Check #1025 | Secretary of State | (25.00) |
| 7/2/2008 | Check #1026 | Secretary of State | (25.00) |
| 7/2/2008 | Check #1027 | Secretary of State | (25.00) |
| 7/2/2008 | Check #1028 | Secretary of State | (25.00) |
| 7/2/2008 | Check #1029 | Secretary of State | (550.00) |
| 7/2/2008 | Check #1030 | Secretary of State | (550.00) |
| 7/21/2008 | WIRE IN | WIRE FROM INSURE AIRCRAFT 072108ITLE SERVICE | 3,211,634.26 |
| 7/22/2008 | TSFR IN | WIRE IN - PK AirFiance | 48,798.49 |
| 7/30/2008 | TSFT IN | WIRE IN - US Airways | 134,754.35 |
| | | Total | 3,346,134.26 |

Description
Management fee
Consulting fee
Consulting fee
HJ United 2005, LLC - change of registered agent
HJ SAS 2003, LLC - annual report
HJ SAS 2003, LLC - change of registered agent
HJ A3 2003, LLC - annual report
HJ A3 2003, LLC - change of registered agent
HJ Continental 2003, LLC - change of registered agent
HJ USA 2005, LLC -change of registered agent
HJ 26, LLC - change of registered agent
HJ 26, LLC - annual report
HJ Capital, LLC - change of registered agent
HJ Capital, LLC - annual report
HJ BA 2005, LLC - annual report
HJ BA 2003, LLC - change of registered agent
HJ Park Avenue, LLC - change of registered agent
HJ Park Avenue, LLC - annual report
HJ T2 2005, LLC - change of registered agent
HJ T2 2005, LLC - annual report
Strategic Aircraft Investors, LLC - change of registered agent
Strategic Aircraft Investors, LLC - annual report
HJ Ventures I, LLC - change of registered agent
HJ Ventures III, LLC - change of registered agent
Broiwn HJ D26, LLC - change of registered agent
HJ A3D 2003 II, LLC - change of registered agent.
HJ Stonegate, LLC - change of registered agen
HJ Continental 2003, LLC
HJ USA 2005, LLC
Net proceeds of sale of British Airway B737-500 aircraft
Net cash - Alitalia Lease
Net cash - US Airways Lease

HJAHC Receiver's Bank Account
Activity Recap for the Month of July 2008

Cash Receipts

| | |
|---|---|
| Net cash from lease payments - Alitalia | 48,798.49 |
| Net cash from lease payments - US Airways | 134,754.35 |
| Net cash from sale of BA 737-500 | 3,211,634.26 |
| Total Cash Receipts | 3,395,187.10 |

Cash Disbursements

| | |
|---|---|
| Mercury ALPS Aviation - Management fee | (35,178.28) |
| Secretary of State - LLC Fees | (3,500.00) |
| JP Europe S.r.l. - Consulting fee | (10,374.56) |
| Total Cash Disbursements | (49,052.84) |
| Net increase in cash | 3,346,134.26 |
| Cash at beginning of period | 396,485.27 |
| Cash at end of period | 3,742,619.53 |

Net Proceeds from Sale of
Boeing 737-500
Leased to British Airways

| | | |
|---|---|---|
| Gross Sales Price | | $ 9,800,000.00 |
| Plus:  Interest earned on security deposit (see note 1) | | $      1,282.32 |
| Sub-total | | $ 9,801,282.32 |
| Less: | | |
| Rent received not earned ($135,000 - 4 days @ $4,500/day) | $     117,000.00 | |
| Payoff to Deutsche Bank | $ 6,218,029.86 | |
| One-half of escrow fees (1/2 X $2,500) | $      1,250.00 | |
| Corporate Services Company (LLC fees) | $         868.20 | |
| One half of British Airways legal fees (1/2/ X $5,000) | $      2,500.00 | |
| Escrow funds per purchase agreement | $    250,000.00 | $ 6,589,648.06 |
| Net cash received | | $ 3,211,634.26 |

Note 1:  It appears that the closing agent gave the Seller
(Receiver) credit for interest earned on the Purchaser's security
deposit whereas the Letter of Intent states that all accrued
interest earned shall be applied to the Purchase Price.  The
Receiver is researching this issue to determine if the interest
should be remitted to the Purchaser.