**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

———————————————————

:
**UNITED STATES SECURITIES**          :
**AND EXCHANGE COMMISSION,**          :
:
      **Plaintiff,**          :
:
      **v.**          :          **CASE NO.  1:08-cv-2224**
:
**JASON R. HYATT,**          :
**JAY JOHNSON, and**          :          **Hon. George W. Lindberg**
**HYATT JOHNSON CAPITAL, LLC**          :
:          **Magistrate Judge Michael T. Mason**
      **Defendants.**          :

———————————————————:

**SEC'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR RULE TO SHOW**
**CAUSE AGAINST BCI AIRCRAFT LEASING, INC. AND BRIAN HOLLNAGEL**

Plaintiff, the United States Securities and Exchange Commission ("the SEC"), for its

memorandum in support of its motion for a rule to show cause, states as follows:

**I.      INTRODUCTION**

The SEC issued subpoenas to BCI Aircraft Leasing, Inc. ("BCI") and its CEO and

principal Brian Hollnagel ("Hollnagel") on June 30, 2008, with July 14 return dates, to which the

SEC agreed to extensions to July 28.  BCI produced some limited documents in response to the

June 30 subpoena, but, as described below, this production was severely deficient.  Accordingly,

the SEC informed BCI in an August 4 letter and during conversations on August 11 and 13 that

this production was severely deficient and requested a new production.  To date, the SEC has

still not received a complete and proper response to the June 30 subpoena to BCI.

Hollnagel falsely represented to the SEC that he had no documents responsive to his June

30 subpoena which required the production of, among other things, all documents evidencing

communications with Defendant Jason R. Hyatt.  Analysis of very limited records received from

Defendant Hyatt show that numerous recent telephone calls took place between Hollnagel and

Defendant Hyatt. Since Hollnagel's phone records would also reflect these calls, Hollnagel acted in contempt when he falsely represented to the SEC that there were no documents responsive to the June 30 subpoena in his possession or under his control.

On August 6, 2008, the SEC issued two new subpoenas to BCI and Hollnagel, with return dates of August 20. The August 6 subpoena generally requires documents relating to communications with, or payments to, certain individuals or entities involved in the SEC's litigation before this Court. The August 20 subpoena requires similar documents relating to one individual, Charles Dyer. BCI asked the SEC for a two-week extension for both subpoenas. Based on BCI's inadequate response to the previous subpoena, and the narrow scope of the August 6 subpoenas, the SEC declined to agree to an extension. BCI has also not fully or completely produced documents pursuant to this subpoena.

As discussed below, the information the SEC seeks from BCI and Hollnagel is both relevant and material to this litigation.[1] The SEC has conferred and corresponded repeatedly with counsel to BCI, to request a complete, proper, and timely production, but these efforts have failed. The SEC accordingly asks this Court to enter an order (1) requiring BCI and Hollnagel to fully and completely respond to the SEC's subpoenas, and (2) requiring BCI and Hollnagel to show cause as to why they should not be held in contempt of court for failing to fully and completely respond to the SEC's subpoenas.

---

[1]    Complicating the SEC's discovery efforts in this case is the fact that Defendant Hyatt was recently indicted and continues to refuse to provide any information to the SEC, asserting his Fifth Amendment Privilege against self-incrimination. In addition, documents held on Defendant Hyatt's work computers were subpoenaed in SEC v. Hollnagel et al., 1:07-cv-4538 (J. Bucklo) in August 2007. After months of efforts to obtain documents on these computers, Defendant Hyatt's counsel turned two of the computers over to HJ Capital's attorneys, but informed the SEC that a third computer was unaccounted for or otherwise missing. It appears that Hyatt installed "scrubbing" software on his computers, which may have been used to destroy relevant HJ Capital documents. Accordingly, the SEC must be able to obtain relevant documents from third parties, including BCI, who played a pivotal role in most of the HJ Capital offerings to investors. The SEC continues to evaluate its options regarding the HJC computer which Hyatt allegedly lost or otherwise misplaced.

## II.    FACTUAL BACKGROUND

In connection with the SEC's litigation in this matter against the Defendants Hyatt, Johnson, and Hyatt Johnson Capital, LLC ("HJ Capital"), on June 30, 2008, the SEC issued subpoenas to BCI and Hollnagel, with return dates of July 14, 2008.  Exhibits 1, 2.  These subpoena requested, among other things, documents reflecting communications with, or payments to, certain individuals and entities related to Defendants Hyatt, Johnson, and HJ Capital, including Defendant Hyatt.  BCI and Hollnagel requested two-week extensions of the response deadline, to July 28, which the SEC agreed to.  Hollnagel represented to the SEC that no documents responsive to his June 30 subpoena were in his possession or under his control. Exhibit 3.  However, analysis of very limited records received from Defendant Hyatt in connection with the SEC's motion for contempt for Hyatt's violation of the Court's asset freeze show that numerous recent telephone calls took place between Hollnagel and Defendant Hyatt. Exhibit 4, Declaration of Scott Hlavacek, at ¶ 9.  Since Hollnagel's phone records would also reflect these calls, Hollnagel acted in contempt when he falsely represented to the SEC that there were no documents responsive to the June 30 subpoena in his possession or control.

On July 31, the SEC received BCI's response on a CD-ROM.  This CD-ROM produced to the SEC contained numerous emails in response to the SEC's subpoenas.  However, in most instances, BCI failed to produce attachments to these emails. Furthermore, regarding the attachments that BCI actually did produce, many appear to be Microsoft Excel (*.xls) files, which, if not produced in their native format, would result in loss of usable information.  For example, one nearly 100 page span of attachments constitute what appears to be a massive Excel spreadsheet or spreadsheets which, reduced to an image file, are completely unreadable and useless.  See Exhibit 5, an excerpt of this document.  In addition, BCI produced between ten and twenty identical sequential copies of most of the produced emails.  In one case, BCI produced 23

3

sequential identical copies of the same 8-page email.  Exhibit 4 at at ¶ 4.  Such a redundant and

duplicative production is improper and significantly impedes the SEC's ability to review the

produced documents.  On August 4, the SEC submitted a letter to BCI explaining these issues

and requesting a proper production, specifically asking for all email attachments in their native

format to prevent the loss of useable information in such attachments.  Exhibit 6.  Receiving no

substantive response from BCI, the SEC sent another letter to BCI on August 7 regarding this

issue, along with discovery issues pending in another matter.[2]  Exhibit 7.

On August 6, 2008, the SEC issued new subpoenas to BCI and Hollnagel, with return

dates of August 20.  Exhibits 8, 9.  This subpoena requested, among other things, documents

reflecting communications with, or payments to, Charles Dyer, another individual related to the

SEC's complaint against Defendants Hyatt, Johnson, and HJ Capital.  Mr. Dyer, Defendant

Hyatt, and Hollnagel all participated in meetings in which they solicited at least $1.5 million

from investors.  Previously, in 2003, the SEC obtained a permanent injunction against further

securities fraud against Mr. Dyer, who was also barred from the securities industry in a related

SEC Administrative Proceeding.  Exhibit 10.  At a minimum, Mr. Dyer's injunctions and bars

were not disclosed to investors, and other material misrepresentations or omissions may have

been made as well.  In addition, over the last few years, Dyer has received numerous payments

from both Defendant Hyatt and BCI.

On August 11, and again on August 13, the SEC discussed BCI's inadequate response

with BCI's counsel.  *See* Exhibit 4 at ¶¶ 5-7.  BCI's counsel informed the SEC that they were

preparing a replacement CD-ROM, and that the SEC would receive that production "by the

middle of next week," i.e. approximately August 20.  Id. at ¶ 7.  Counsel to BCI informed the

SEC that they might need extensions to the due dates of the August 6 subpoenas, but they did not

---

[2]       BCI and Hollnagel are defendants in SEC v. Hollnagel et al., 1:07-cv-4538 (J. Bucklo).

4

indicate how much extra time would be needed.  Id.  The SEC did not agree to any extensions.

During the conversations on August 11 and August 13, the SEC specifically requested that BCI

produce all Excel email attachments in their native format, noting that the SEC is entitled to such

files in their native format so there is no loss of information.  Id. at ¶¶ 6, 7.

On August 19, and again on August 20, counsel to BCI requested that the SEC agree to

two-week extensions to the three August 6 subpoenas, which were due August 20.  The SEC

declined to agree to an extension, in light of BCI's grossly inadequate response to the June 30,

2008 subpoena (for which BCI was granted a two-week extension), and the fact that BCI has still

not made a full and proper response to that subpoena.  Exhibit 11. On August 25, BCI finally

produced a replacement CD-ROM in response to the SEC's June 30 subpoena.  Exhibit 12.

Despite repeated requests, BCI has failed to produce all Microsoft Excel email attachments in

native format so that no information is lost.  BCI provided only one such attachment on August

27, which was the document the SEC identified in its August 4 letter, Exhibit 3,[3] as an example

of a Microsoft Excel email attachment that was not produced in its native format.  Exhibit 13.

Instead, BCI has continued to produce completely unreadable and useless attachments, despite

the SEC's continued protests.  *See, e.g.*, Exhibit 14.

In addition, although BCI claimed that this replacement CD-ROM is merely "updated" to

address the issues that the SEC raised, i.e. missing email attachments, this production contained a

significant number of documents not produced the first time.  *See* Exhibit 4 at ¶ 8, Exhibit 12.

Specifically, BCI's July 31 production did not contain any documents created after December

2007, while this replacement CD-ROM contains numerous documents, mostly created in 2008,

which were missing from the original production.  *See* Exhibit 4 at ¶ 8.   In addition, although the

---

[3]     "[M]any of these attachments appear to be Microsoft Excel (*.xls) files, which, if not produced in their native format, would result in loss of usable information.  For example, bates numbers JH-BCI-001129 through JH-BCI-001227 constitute what appears to be an Excel spreadsheet or spreadsheets which, reduced to an image file, are completely unreadable and thus useless.  Consequently, please provide attachments for all emails in their native format." (emphasis added)

bates range of this production runs from 1 to 18,560 there are only 13,277 pages of actual documents. Id. BCI has not explained this 5,283 page gap in missing documents.[4]

Finally, the documents in the two productions in response to the same June 30 subpoena appear to be in completely different order. Id. at ¶ 9. Fed. R. Civ. P. 45(d)(1) requires persons to produce documents "as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand." BCI did not organize its production to correspond with the categories of the SEC's subpoena, so BCI must be producing the documents "as they are kept in the usual course of business." However, since the two productions are in completely different orders, it appears that BCI has not done this either. Thus, it appears that BCI has also acted in contempt of Fed. R. Civ. P. 45(d)(1) by its haphazard manner of production of documents.

With respect to the August 6 subpoenas to BCI and Hollnagel regarding payments and communications to Charles Dyer, the SEC has still not received any documents. BCI's August 20 response stated that "BCI and Hollnagel will provide the responsive documents within two weeks hereof in accordance with their discussions with counsel for the SEC." Exhibit 15. This misrepresents the facts: although BCI requested a two-week extension, the SEC did not agree to this, for reasons detailed above. Furthermore, BCI objected to this narrowly tailored subpoena "on the grounds it is overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence." Id. However, BCI has neither produced the required documents nor have they filed to quash, or otherwise modify, the SEC's subpoena. For his part, Hollnagel represented to the SEC that he had no documents responsive to the August 6 subpoena. Id. However, considering Hollnagel's false representation to that effect in response

---

[4]     BCI has not produced a privilege log for this production, so the SEC has no idea what portion, if any, of this range constitutes privileged materials.

to the June 30 subpoena, the SEC has its doubts about this representation as well.[5]

## III.    ARGUMENT

### A.    Civil Contempt Proceedings

Civil contempt proceedings are authorized by 18 U.S.C. § 401(3) which states, in pertinent part, that "[a] court of the United States shall have power to punish by fine or imprisonment, or both, at its discretion, such contempt of its authority, and none other, as … [d]isobedience or resistance to its lawful writ, process, order, rule, decree, or command." A court thus has the inherent authority to enforce compliance with its lawful orders through civil contempt. Coilcraft, Inc. v. Inductor Warehouse, Inc., 2007 U.S. Dist. LEXIS 52350 at *7-8 (N.D. Ill. 2007) citing Spallone v. U.S., 493 U.S. 265 (1990); U.S. v. Dowell, 257 F.3d 694, 699 (7th Cir. 2001). The purpose of a civil contempt proceeding is wholly remedial and is intended to either coerce compliance with a prior court order or compensate for losses suffered as a result of non-compliance with that order. See McComb v. Jacksonville Paper Co., 336 U.S. 187, 191 (1949); Dowell, 257 F.3d at 699.  Rule 45 of the Federal Rules of Civil Procedure expressly also provides contempt as a remedy for failure to comply with subpoenas.[6]

In a civil contempt proceeding, the moving party must prove, by clear and convincing evidence, that the respondent has violated the court's order.  McComb, 336 U.S. at 191; NLRB v. Ralph Printing & Lithography Co., 433 F.2d 1058, 1062 (8th Cir. 1970).  To make a prima facie showing of contempt the movant need only prove that a defendant has failed to comply with a valid court order.  Heinold Hog Market, Inc. v. McCoy, 700 F.2d 611, 615 (10th Cir. 1983).  A district court does not have to find that the violation was "willful" or intentional. McComb, 336 U.S. at 191; U.S. v. Ofe, 572 F.2d 656 (8th Cir. 1978); Faegre & Benson, LLP,

---

[5]    The SEC is currently in the process of obtaining documents from Mr. Dyer, including any telephone records reflecting any communications with Hollnagel.

[6]    Rule 45(e) states in pertinent part that "Failure by any person without adequate cause to obey a subpoena served upon them may be deemed a contempt of the court…."

367 F.Supp.2d 1238, 1243 (D.Minn. 2005).  In civil contempt proceedings, intent is not an issue, but rather, the question is whether a party has complied with the court's order.  In re General Motors Corp., 61 F. 3d 256, 258 (4th Cir. 1995); Donovan v. Mazzola, 716 F.2d 1226, 1240 (9th Cir. 1983), cert. denied, 464 U.S. 1040 (1984).  Indeed, the court may find a party in contempt if, as here, it has not been "reasonably diligent and energetic in attempting to accomplish what was ordered."  E.g., Goluba v. School Dist., 45 F.3d 1035, 1037 (7th Cir. 1995).

Once a prima facie case has been shown, the burden shifts to the defendant to come forward with evidence showing categorically and in detail why he was unable to comply with court orders.  U.S. v. Rylander, 460 U.S. 752, 755, 757 (1983) reh. denied, 462 U.S. 1112 (1983); Chicago Truck Drivers v. Brotherhood Labor Leasing, 207 F.3d 500, 505 (8th Cir. 2000). Further, if the defendant is responsible for an inability to comply, such a defense is unavailable. U.S. v. Bryan, 339 U.S. 323, 330-32 (1950); U.S. v. Seetapun, 750 F.2d 601, 605 (7th Cir. Ill. 1984).   Even the presence of good faith on the part of a defendant does not constitute a defense. Donovan, 716 F.2d at 1240.

The Supreme Court has recognized that no one has the right to flout or ignore a Court order.  See McComb, 336 U.S. at 192.  If there are extenuating circumstances, or if the Order is too burdensome, the Defendants are required to petition the Court for modification, clarification, or construction of the Order.  Id.

### B.  BCI and Hollnagel Have Not Complied with the SEC's Subpoenas

Over eight weeks after the first subpoenas were issued to BCI and Hollnagel, and three weeks after the second subpoena to BCI, BCI and Hollnagel have still not completely and properly responded to these subpoenas.  The documents the SEC seeks in response to these subpoenas are relevant to its case before this Court, and BCI and Hollnagel have not questioned the subpoenas' relevance nor have they moved to quash the subpoenas.

In this litigation, the SEC has alleged that the Defendants have defrauded numerous investors, and that Defendant Hyatt, in particular, misappropriated many millions of dollars from those investors. These stolen funds have not yet been fully accounted for. For example, a brand new $190,000 Bentley that Defendant Hyatt, acquired in exchange for two other automobiles (a Maserati and a Mercedes) originally acquired using stolen investor funds, is no longer in his possession. The SEC has no idea what funds Defendant Hyatt received for this automobile or where those funds were deposited.

As this Court is aware, Defendant Hyatt's known assets have long been frozen and turned over to the receiver in this case. Defendant Hyatt has still not obtained employment, and his wife is not employed. However, it appears that, among other expenses, Defendant Hyatt still employs a full-time nanny and housekeeper. This Court has already found that Defendant Hyatt and his wife violated the Court's April 18 asset freeze. <u>See</u> Docket No. 92. It is thus important that the SEC be able to identify any sources of funds flowing to Defendant Hyatt or any of the individuals or entities involved in this case who potentially could redirect funds to him, in potential violation of the asset freeze order. Particularly so if stolen investor funds are being recirculated in order to be used as defense fees for any of the individuals or entities involved. <u>SEC v. Quinn</u>, 997 F.2d 287, 289 (7th Cir. 1993). ("[A] swindler in securities markets cannot use the victims' assets to hire counsel who will help him retain the gleanings of crime.") <u>See also</u> <u>SEC v. Cherif</u>, 933 F.2d 403, 417 (7th Cir. 1991) (defendant cannot spend money allegedly obtained by fraud from another in order to defend himself against ensuing legal action). Consequently, the SEC issued valid subpoenas to BCI to obtain relevant documents to help answer these questions.

In response to the SEC's June 30, 2008 subpoena (after being granted a two-week extension), BCI produced a CD-ROM full of redundant emails, most of which were missing

attachments, while others contained completely unreadable attachments.  It appears that BCI did

not even adequately review this production before turning over this CD-ROM.  The SEC

requested that BCI remedy the situation.  On August 25, BCI finally produced a replacement

CD-ROM to the SEC's June 30 subpoena.  However, despite repeated requests that BCI produce

all Microsoft Excel email attachments in native format so that no information is lost, BCI still

failed to do so.  BCI provided only one such attachment on August 27, which was the document

the SEC identified in its August 4 letter as an <u>example</u> of a Microsoft Excel email attachment

that was not produced in its native format.  Apparently, BCI has now chosen to ignore the SEC's

repeated requests that BCI produce all Microsoft Excel email attachments in their native format.

Furthermore, BCI has still not produced any documents in response to the SEC's August

6 subpoena which requested documents regarding, among other things, communications and

payments to only one individual, Charles Dyer.  The SEC does not understand why it would be

so difficult for BCI to identify and promptly produce this limited category of documents. BCI

even went so far as to object to – but not file a motion with this Court seeking to quash or modify

– this narrowly tailored subpoena "on the grounds it is overly broad, unduly burdensome and not

reasonably calculated to lead to the discovery of admissible evidence."  Perhaps BCI's reluctance

to comply is related to the fact that Mr. Dyer, Defendant Hyatt, and Hollnagel all participated in

meetings in which they solicited at least $1.5 million from investors.  At a minimum, Mr. Dyer's

injunctions and bars may not have been disclosed to these investors, and other material

misrepresentations or omissions may have been made as well.  In any event, the SEC's subpoena

is proper, and BCI's failure to produce documents is contemptuous.

Hollnagel, for his part, has produced no documents.  He simply represented to the SEC

that he had no documents responsive to the June 30 subpoena, which required the production of,

among other things, all documents evidencing communications with Defendant Hyatt.  The SEC

has now shown that this representation was false; Defendant Hyatt and Hollnagel engaged in numerous recent telephone calls, which would be reflected in Hollnagel's telephone records. Hollnagel thus acted in contempt in falsely claiming that he had no responsive documents in his possession or control.[7]  Although Hollnagel also claims that he has no documents responsive to the SEC's August 6 subpoena, the SEC has concerns as to the veracity of this claim.

 In this case, BCI and Hollnagel received valid subpoenas which they failed to obey. Instead, they feigned ignorance, provided excuses, falsely claimed that no responsive documents exist, and made inadequate partial responses after being given repeated opportunities to properly comply.  To put it bluntly, they have "… run the string out." <u>Anthony Marano Co. v. A. Stallone, Inc. et al.</u>, 2002 U.S. Dist. LEXIS 24656 (N.D. Ill 12/24/02) (opinion by Magistrate Judge Brown).  For these reasons, BCI and Hollnagel should be required to show cause why they should not be held in contempt.

### C.    Remedies for BCI and Hollnagel's Misconduct

The SEC respectfully requests that, at a minimum, the Court issue an Order requiring BCI and Hollnagel to fully and completely comply with the SEC's subpoenas by Friday, September 5, 2008.  Second, the SEC requests that the Court award attorney's fees to the SEC for its nearly month-long efforts in attempting to bring about BCI and Hollnagel's compliance with its valid subpoenas.  Third, the SEC requests that the Court find BCI and Hollnagel in contempt for their failure to properly respond and, in order to coerce their compliance, assess a

---

[7]    The SEC notes that Hollnagel must have these telephone records in his possession, since he was ordered by Judge Bucklo to preserve all records as of August 22, 2007, <u>SEC v. Hollnagel et al.</u>, 1:07-cv-4538 (J. Bucklo) at Docket No. 34, and prior to the SEC's litigation against BCI and Hollnagel, the SEC requested that all records be preserved.  Furthermore, in accordance with Fed.R.Civ.P. 45(a)(1)(C), the Subpoenas required Hollnagel to produce documents in his "possession, custody or control."  "A party does not have to actually possess the requested documents to be in control of them." <u>Engel v. Town of Roseland</u>, 2007 U.S. Dist. LEXIS 49373 at *4-5 (N.D. Ind. 2007) *citing* <u>In re Folding Antitrust Litigation</u>, 76 F.R.D. 420, 423 (N.D. Ill. 1977), *rev'd in part on other grounds* 881 F.2d 494 (7th Cir. 1989). "The test is whether the party has a legal right to control or obtain the documents." <u>Id.</u>; *see also* 8A Charles Alan Wright & Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE § 2210 (2d ed. 1994).

daily fine no less than $1,000 against each BCI and Hollnagel until they fully and completely comply with the SEC's subpoenas. Alternatively, if this Court prefers, Mr. Hollnagel can be incarcerated until BCI and Hollnagel fully and completely comply with the SEC's subpoenas. This relief requested is remedial in nature and will ensure future compliance with these Subpoenas and Court Orders.

## IV.    CONCLUSION

For all of the foregoing reasons, the SEC respectfully requests that the Court enter an order requiring BCI and Hollnagel to show cause as to why they should not be held in contempt of court for failing to fully and completely respond to the SEC's Subpoenas Duces Tecum.

Respectfully submitted,

s/ Robin Andrews
Gregory von Schaumburg, IL Bar No. 3127782
Robin Andrews, IL Bar No. 6285644
Attorneys for Plaintiff
U.S. SECURITIES AND
EXCHANGE COMMISSION
175 W. Jackson Blvd., Suite 900 Chicago, IL 60604
Telephone: (312) 353-7390
Facsimile: (312) 353-7398

Dated: August 28, 2008

# EXHIBIT 1



**UNITED STATES**
**SECURITIES AND EXCHANGE COMMISSION**
CHICAGO REGIONAL OFFICE
NINTH FLOOR
175 WEST JACKSON STREET
CHICAGO, ILLINOIS 60604

SALLY J. HEWITT
SENIOR ATTORNEY
DIVISION OF ENFORCEMENT

TELEPHONE: (312) 886-0819
FAX: (312) 353-7398

June 30, 2008

**VIA EMAIL gkanan@rothgerber.com**

BCI Aircraft Leasing, Inc.
c/o Greg Kanan, Esq.
Rothgerber Johnson & Lyon LLP
One Tabor Center, Suite 3000
1200 Seventeenth Street
Denver, CO  80202

     Re:    **SEC v. Hyatt et al. (1:08-cv-2224)**

Dear Mr. Kanan:

    Enclosed please find a subpoena addressed to your client, BCI Aircraft Leasing, Inc., requiring the production of certain documents. Thank you for agreeing to accept service via email rather than personal service. We would appreciate it if you could number your responses, as required by the Federal Rules of Civil Procedure, consistent with the Commission's requests in the rider to the subpoena. If there are no documents responsive to a request, please also state that. Finally, if you have any questions or comments, please call me at (312) 886-0819.

                          Sincerely,

                          Sally Hewitt

                          Sally Hewitt

AO88  (Rev. 12/06) Subpoena in a Civil Case

## Issued by the
# UNITED STATES DISTRICT COURT

DISTRICT OF _____ Colorado _____

U.S. Securities and Exchange Commission

V.

Jason R. Hyatt, et al.

**SUBPOENA IN A CIVIL CASE**

Case Number:[1]  1:08-2224, J. Lindberg

TO:  BCI Aircraft Leasing, Inc.
     c/o Greg Kanan, Esq.
     1200 Seventeenth Street-Suite 3000
     Denver, CO  80202

☐  YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  | DATE AND TIME |

☐  YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|

☑  YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

See attached

| PLACE     175 W. Jackson Blvd., 9th Floor, Chicago, IL  60604 | DATE AND TIME 7/14/2008 9:30 am |
|---|---|

☐  YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify.  Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| *Sally Hewitt*  Attorney for Plaintiff | 6/30/2008 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Sally Hewitt, U.S. Securities and Exchange Commission
175 W. Jackson Boulevard, Suite 900, Chicago, IL  60604

(See Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

AO88 (Rev. 12/06) Subpoena in a Civil Case

---

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| **SERVED** | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| | |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| | |

---

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____

| DATE | SIGNATURE OF SERVER |
|---|---|
| | |
| | ADDRESS OF SERVER |
| | |

---

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2006:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.
(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.
(2) (A) A person commanded to produce and permit inspection, copying, testing, or sampling of designated electronically stored information, books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.
(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection, copying, testing, or sampling may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to producing any or all of the designated materials or inspection of the premises — or to producing electronically stored information in the form or forms requested. If objection is made, the party serving the subpoena shall not be entitled to inspect, copy, test, or sample the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production, inspection, copying, testing, or sampling. Such an order to compel shall protect any person who is not a party or an officer of a party from significant expense resulting from the production, inspection, copying, testing, or sampling commanded.
(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it
(i) fails to allow reasonable time for compliance;
(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held;
(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or
(iv) subjects a person to undue burden.
(B) If a subpoena
(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or
(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or
(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject

to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.
(1) (A) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.
(B) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.
(C) A person responding to a subpoena need not produce the same electronically stored information in more than one form.
(D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.
(2) (A) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial-preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.
(B) If information is produced in response to a subpoena that is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. A receiving party may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it. The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT. Failure of any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued. An adequate cause for failure to obey exists when a subpoena purports to require a nonparty to attend or produce at a place not within the limits provided by clause (ii) of subparagraph (c)(3)(A).

## ATTACHMENT TO SUBPOENA

### Definitions

1. Unless otherwise indicated, these document requests cover the time period of **July 1, 2007** through the present.

2. The terms "you" and "your" shall be construed to mean the entity doing business under the name of BCI Aircraft Leasing, Inc., including its parents, successors, subsidiaries, related corporations including but not limited to Limited Liability Corporations ("LLCs"), partnerships or professional associations, joint venture partners, affiliates, principals, officers, directors, general or limited partners, associates, employees, agents, independent contractors, persons acting on its behalf, and any aliases, code names, or trade or business names used by any of the foregoing.

3. This request includes items in your possession, in your custody, or under your control. Items under your control or in your custody, but not in your immediate possession, are required to be obtained and submitted by you.

4. "Document" or "Documents" refer to all written or graphic matter, however produced or reproduced, or to any other tangible record, and without limitation, shall include, among other things: accounting and financial records, including but not limited to bank and financial statements, books, journals, ledgers, vouchers, voucher registers, trial balances, invoices, correspondence, tax slips, withdrawal slips, credit memoranda, debit memoranda, statements, drafts, check stubs, wire transfers and check registers; communications, including but not limited to voicemail, recordings of conversations, telephone logs, incoming correspondence, outgoing correspondence, memoranda, contracts, telegrams, teletypes, private wire messages, telephone billing records, outgoing electronic communications (including e-mails), and incoming electronic

communications (including e-mails), text messages and instant messages (IM); sales materials, including but not limited to prospectuses, offering memoranda, projection brochures, sales training manuals, sales guidelines, review guidelines and advertisements; charts; graphs; computer records; and papers similar to any of the foregoing.

5. The term "DeLaCosta" shall be construed to mean the entity doing business under the name of DeLaCosta at 465 East Illinois Street, Chicago, Illinois 60611, including its parents, successors, subsidiaries, related corporations including but not limited to Limited Liability Corporations ("LLCs"), partnerships or professional associations, joint venture partners, affiliates, principals, officers, directors, general or limited partners, associates, employees, agents, independent contractors, persons acting on its behalf, and any aliases, code names, or trade or business names used by any of the foregoing.

6. The term "Panacea Partners" shall be construed to mean the entity doing business under the name of Panacea Partners, LLC, including its parents, successors, subsidiaries, related corporations, partnerships or professional associations, joint venture partners, affiliates, principals, officers, directors, general or limited partners, associates, employees, agents, independent contractors, persons acting on its behalf, and any aliases, code names, or trade or business names used by any of the foregoing.

7. The term "DRG Group" shall be construed to mean the entity doing business under the name of DRG Group, LLC, including its parents, successors, subsidiaries, related corporations, partnerships or professional associations, joint venture partners, affiliates, principals, officers, directors, general or limited partners, associates, employees, agents, independent contractors, persons acting on its behalf, and any aliases, code names, or trade or business names used by any of the foregoing.

8. The term "Hyatt Johnson Capital" shall be construed to mean the entity doing business under the name of Hyatt Johnson Capital, LLC, including its parents, successors, subsidiaries, related corporations, partnerships or professional associations, joint venture partners, affiliates, principals, officers, directors, general or limited partners, associates, employees, agents, independent contractors, persons acting on its behalf, and any aliases, code names, or trade or business names used by any of the foregoing.

9. The term "Arlington Aviation" shall be construed to mean the entity doing business under the name of Arlington Aviation, including its parents, successors, subsidiaries, related corporations, partnerships or professional associations, joint venture partners, affiliates, principals, officers, directors, general or limited partners, associates, employees, agents, independent contractors, persons acting on its behalf, and any aliases, code names, or trade or business names used by any of the foregoing.

10. The term "Chicago Aviation Partners" shall be construed to mean the entity doing business under the name of Chicago Aviation Partners, LLC, including its parents, successors, subsidiaries, related corporations, partnerships or professional associations, joint venture partners, affiliates, principals, officers, directors, general or limited partners, associates, employees, agents, independent contractors, persons acting on its behalf, and any aliases, code names, or trade or business names used by any of the foregoing.

11. The term "Jason Hyatt" shall be construed to mean the individual named Jason R. Hyatt and any person, agent, affiliate, representative, principal, associate, partner, independent contractor, person acting on his behalf, employee and/or entity acting on his behalf and/or at his direction.

12. The term "Heidi Hyatt" shall be construed to mean the individual named Heidi Hyatt, formerly known as Heidi Herold and/or Heidi Kotnick, and any person, agent, affiliate, representative, principal, associate, partner, independent contractor, person acting on her behalf, employee and/or entity acting on her behalf and/or at her direction.

13. The term "Michael Demnicki" shall be construed to mean the individual named Michael Demnicki and any person, agent, affiliate, representative, principal, associate, partner, independent contractor, person acting on his behalf, employee and/or entity acting on his behalf and/or at his direction.

14. The term "Jay Johnson" shall be construed to mean the individual named Jay Johnson and any person, agent, affiliate, representative, principal, associate, partner, independent contractor, person acting on his behalf, employee and/or entity acting on his behalf and/or at his direction.

15. The term "Matthew Stoen" shall be construed to mean the individual named Matthew Stoen and any person, agent, affiliate, representative, principal, associate, partner, independent contractor, person acting on his behalf, employee and/or entity acting on his behalf and/or at his direction.

16. The terms "and" and "or" shall be construed either disjunctively or conjunctively whenever appropriate in order to bring within the scope of these requests any document which might otherwise be considered beyond their scope.

17. A document that "relates to" or is "relating to" a given subject matter means and/or includes any document that constitutes, contains, embodies, comprises, identifies, states, refers to, deals with, comments upon, responds to, describes, analyzes, or is any way pertinent to that subject.

## **Documents requested**

1. All Documents reflecting Communications with:

   a.  Jason Hyatt
   b.  Heidi Hyatt (formerly known as Heidi Herold or Heidi Kotnik)
   c.  Michael Demnicki
   d.  Jay Johnson
   e.  De La Costa
   f.  Panacea Partners
   g.  Matthew Stoen
   h.  DRG Group
   i.  Hyatt Johnson Capital
   j.  Arlington Aviation
   k.  Chicago Aviation Partners

2. All Documents relating to payments of anything of value to, or from, any of the following:

   a. Jason Hyatt
   b. Heidi Hyatt (formerly known as Heidi Herold or Heidi Kotnik)
   c. Michael Demnicki
   d. Jay Johnson
   e. De La Costa
   f. Panacea Partners
   g. Matthew Stoen
   h. DRG Group
   i. Hyatt Johnson Capital
   j. Arlington Aviation
   k. Chicago Aviation Partners

3.    All Documents relating to:

   a. Jason Hyatt
   b. Heidi Hyatt (formerly known as Heidi Herold or Heidi Kotnik)
   c. Michael Demnicki
   d. Jay Johnson
   e. De La Costa
   f. Panacea Partners
   g. Matthew Stoen
   h. DRG Group
   i. Hyatt Johnson Capital
   j. Arlington Aviation
   k. Chicago Aviation Partners

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

|  |  |  |
|---|---|---|
| **UNITED STATES SECURITIES** | : | |
| **AND EXCHANGE COMMISSION,** | : | |
| | : | **CASE NO. 1:08-cv-2224** |
| **Plaintiff,** | : | |
| | : | **Hon. George W. Lindberg** |
| **v.** | : | |
| | : | **Magistrate Judge Michael T. Mason** |
| **JASON R. HYATT,** | : | |
| **JAY JOHNSON, and** | : | |
| **HYATT JOHNSON CAPITAL, LLC** | : | |
| | : | |
| **Defendants.** | : | |
| | : | |

**CERTIFICATE OF SERVICE**

I, Sally Hewitt, an Attorney for Plaintiff Securities and Exchange Commission, hereby

certify that on June 30, 2008, I caused true and correct copies of the foregoing to be served by

email upon counsel for Defendants Jason Hyatt and Jay Johnson and the registered agent for

Hyatt Johnson Capital, LLC as follows:

Thomas Leinenweber at thomas@landb.us

Mitchell Goldsmith at mgoldsmith@shefskylaw.com

Mark Rotert at mrotert@stetlerandduffy.com

s/ Sally Hewitt_____
Sally Hewitt, Illinois Bar No. 6193997
Attorney for Plaintiff
U.S. SECURITIES AND
EXCHANGE COMMISSION
175 W. Jackson Blvd., Suite 900
Chicago, IL 60604
Telephone: (312)353-7390
Facsimile: (312) 353-7398

# EXHIBIT 2



**UNITED STATES**
**SECURITIES AND EXCHANGE COMMISSION**
CHICAGO REGIONAL OFFICE
NINTH FLOOR
175 WEST JACKSON STREET
CHICAGO, ILLINOIS 60604

SALLY J. HEWITT
SENIOR ATTORNEY
DIVISION OF ENFORCEMENT

TELEPHONE: (312) 886-0819
FAX: (312) 353-7398

June 30, 2008

**VIA EMAIL gkanan@rothgerber.com**

Brian Hollnagel
c/o Greg Kanan, Esq.
Rothgerber Johnson & Lyon LLP
One Tabor Center, Suite 3000
1200 Seventeenth Street
Denver, CO  80202

   Re:   **SEC v. Hyatt et al. (1:08-cv-2224)**

Dear Mr. Kanan:

   Enclosed please find a subpoena addressed to your client, Brian Hollnagel, requiring the production of certain documents. Thank you for agreeing to accept service via email rather than personal service. We would appreciate it if you could number your responses, as required by the Federal Rules of Civil Procedure, consistent with the Commission's requests in the rider to the subpoena. If there are no documents responsive to a request, please also state that. Finally, if you have any questions or comments, please call me at (312) 886-0819.

                              Sincerely,

                              Sally Hewitt

                              Sally Hewitt

AO88  (Rev. 12/06) Subpoena in a Civil Case

## Issued by the

# UNITED STATES DISTRICT COURT

DISTRICT OF _____ Colorado

U.S. Securities and Exchange Commission

V.

Jason R.  Hyatt, et al.

**SUBPOENA IN A CIVIL CASE**

Case Number:[1] 1:08-2224, J. Lindberg

TO:  Brian Hollnagel
    c/o Greg Kanan, Esq.
    1200 Seventeenth Street-Suite 3000
    Denver, CO  80202

☐  YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  | DATE AND TIME |

☐  YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|

☑  YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

See attached

| PLACE    175 W. Jackson Blvd., 9th Floor, Chicago, IL  60604 | DATE AND TIME<br>7/14/2008 9:30 am |
|---|---|

☐  YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|

    Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify.  Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT)<br>*Sally Hewitt*    Attorney for Plaintiff | DATE<br>6/30/2008 |
|---|---|

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
**Sally Hewitt, U.S. Securities and Exchange Commission**
**175 W. Jackson Boulevard, Suite 900, Chicago, IL  60604**

(See Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

AO88 (Rev. 12/06) Subpoena in a Civil Case

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| SERVED | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|

| SERVED BY (PRINT NAME) | TITLE |
|---|---|

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
                    DATE

_____
SIGNATURE OF SERVER

_____
ADDRESS OF SERVER

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2006:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.
    (1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.
    (2) (A) A person commanded to produce and permit inspection, copying, testing, or sampling of designated electronically stored information, books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.
    (B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection, copying, testing, or sampling may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to producing any or all of the designated materials or inspection of the premises — or to producing electronically stored information in the form or forms requested. If objection is made, the party serving the subpoena shall not be entitled to inspect, copy, test, or sample the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production, inspection, copying, testing, or sampling. Such an order to compel shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection, copying, testing, or sampling commanded.
    (3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it
        (i) fails to allow reasonable time for compliance;
        (ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held;
        (iii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or
        (iv) subjects a person to undue burden.
    (B) If a subpoena
        (i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or
        (ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or
        (iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject

to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.
    (1) (A) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.
    (B) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.
    (C) A person responding to a subpoena need not produce the same electronically stored information in more than one form.
    (D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.
    (2) (A) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial-preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.
    (B) If information is produced in response to a subpoena that is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. A receiving party may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it. The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT. Failure of any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued. An adequate cause for failure to obey exists when a subpoena purports to require a nonparty to attend or produce at a place not within the limits provided by clause (ii) of subparagraph (c)(3)(A).

## ATTACHMENT TO SUBPOENA

### Definitions

1. Unless otherwise indicated, these document requests cover the time period of **July 1, 2007** through the present.

2. The terms "you" and "your" shall be construed to mean the individual named Brian Hollnagel and any person, agent, affiliate, representative, principal, associate, partner, independent contractor, employee, person and/or entity acting on his behalf and/or at his direction. The terms "you" and "your" shall also be construed to include any related corporations, partnerships or professional associations, officers, directors, general or limited partners, and any aliases, code names, or trade or business names used by any of the foregoing.

3. This request includes items in your possession, in your custody, or under your control. Items under your control or in your custody, but not in your immediate possession, are required to be obtained and submitted by you.

4. "Document" or "Documents" refer to all written or graphic matter, however produced or reproduced, or to any other tangible record, and without limitation, shall include, among other things: accounting and financial records, including but not limited to bank and financial statements, books, journals, ledgers, vouchers, voucher registers, trial balances, invoices, correspondence, tax slips, withdrawal slips, credit memoranda, debit memoranda, statements, drafts, check stubs, wire transfers and check registers; communications, including but not limited to voicemail, recordings of conversations, telephone logs, incoming correspondence, outgoing correspondence, memoranda, contracts, telegrams, teletypes, private wire messages, telephone billing records, outgoing electronic communications (including e-mails), and incoming electronic communications (including e-mails), text messages and instant messages (IM); sales materials,

including but not limited to prospectuses, offering memoranda, projection brochures, sales training manuals, sales guidelines, review guidelines and advertisements; charts; graphs; computer records; and papers similar to any of the foregoing.

5. The term "DeLaCosta" shall be construed to mean the entity doing business under the name of DeLaCosta at 465 East Illinois Street, Chicago, Illinois 60611, including its parents, successors, subsidiaries, related corporations including but not limited to Limited Liability Corporations ("LLCs"), partnerships or professional associations, joint venture partners, affiliates, principals, officers, directors, general or limited partners, associates, employees, agents, independent contractors, persons acting on its behalf, and any aliases, code names, or trade or business names used by any of the foregoing.

6. The term "Panacea Partners" shall be construed to mean the entity doing business under the name of Panacea Partners, LLC, including its parents, successors, subsidiaries, related corporations, partnerships or professional associations, joint venture partners, affiliates, principals, officers, directors, general or limited partners, associates, employees, agents, independent contractors, persons acting on its behalf, and any aliases, code names, or trade or business names used by any of the foregoing.

7. The term "DRG Group" shall be construed to mean the entity doing business under the name of DRG Group, LLC, including its parents, successors, subsidiaries, related corporations, partnerships or professional associations, joint venture partners, affiliates, principals, officers, directors, general or limited partners, associates, employees, agents, independent contractors, persons acting on its behalf, and any aliases, code names, or trade or business names used by any of the foregoing.

8. The term "Hyatt Johnson Capital" shall be construed to mean the entity doing business under the name of Hyatt Johnson Capital, LLC, including its parents, successors, subsidiaries, related corporations, partnerships or professional associations, joint venture partners, affiliates, principals, officers, directors, general or limited partners, associates, employees, agents, independent contractors, persons acting on its behalf, and any aliases, code names, or trade or business names used by any of the foregoing.

9. The term "Arlington Aviation" shall be construed to mean the entity doing business under the name of Arlington Aviation, including its parents, successors, subsidiaries, related corporations, partnerships or professional associations, joint venture partners, affiliates, principals, officers, directors, general or limited partners, associates, employees, agents, independent contractors, persons acting on its behalf, and any aliases, code names, or trade or business names used by any of the foregoing.

10. The term "Chicago Aviation Partners" shall be construed to mean the entity doing business under the name of Chicago Aviation Partners, LLC, including its parents, successors, subsidiaries, related corporations, partnerships or professional associations, joint venture partners, affiliates, principals, officers, directors, general or limited partners, associates, employees, agents, independent contractors, persons acting on its behalf, and any aliases, code names, or trade or business names used by any of the foregoing.

11. The term "Jason Hyatt" shall be construed to mean the individual named Jason R. Hyatt and any person, agent, affiliate, representative, principal, associate, partner, independent contractor, person acting on his behalf, employee and/or entity acting on his behalf and/or at his direction.

12. The term "Heidi Hyatt" shall be construed to mean the individual named Heidi Hyatt, formerly known as Heidi Herold and/or Heidi Kotnick, and any person, agent, affiliate, representative, principal, associate, partner, independent contractor, person acting on her behalf, employee and/or entity acting on her behalf and/or at her direction.

13. The term "Michael Demnicki" shall be construed to mean the individual named Michael Demnicki and any person, agent, affiliate, representative, principal, associate, partner, independent contractor, person acting on his behalf, employee and/or entity acting on his behalf and/or at his direction.

14. The term "Jay Johnson" shall be construed to mean the individual named Jay Johnson and any person, agent, affiliate, representative, principal, associate, partner, independent contractor, person acting on his behalf, employee and/or entity acting on his behalf and/or at his direction.

15. The term "Matthew Stoen" shall be construed to mean the individual named Matthew Stoen and any person, agent, affiliate, representative, principal, associate, partner, independent contractor, person acting on his behalf, employee and/or entity acting on his behalf and/or at his direction.

16. The terms "and" and "or" shall be construed either disjunctively or conjunctively whenever appropriate in order to bring within the scope of these requests any document which might otherwise be considered beyond their scope.

17. A document that "relates to" or is "relating to" a given subject matter means and/or includes any document that constitutes, contains, embodies, comprises, identifies, states, refers to, deals with, comments upon, responds to, describes, analyzes, or is any way pertinent to that subject.

## Documents requested

1. All Documents reflecting Communications with:

    a.  Jason Hyatt
    b.  Heidi Hyatt (formerly known as Heidi Herold or Heidi Kotnik)
    c.  Michael Demnicki
    d.  Jay Johnson
    e.  De La Costa
    f.  Panacea Partners
    g.  Matthew Stoen
    h.  DRG Group
    i.  Hyatt Johnson Capital
    j.  Arlington Aviation
    k.  Chicago Aviation Partners

2. All Documents relating to payments of anything of value to, or from, any of the following:

    a.  Jason Hyatt
    b.  Heidi Hyatt (formerly known as Heidi Herold or Heidi Kotnik)
    c.  Michael Demnicki
    d.  Jay Johnson
    e.  De La Costa
    f.  Panacea Partners
    g.  Matthew Stoen
    h.  DRG Group
    i.  Hyatt Johnson Capital
    j.  Arlington Aviation
    k.  Chicago Aviation Partners

3. All Documents relating to:

    a. Jason Hyatt
    b. Heidi Hyatt (formerly known as Heidi Herold or Heidi Kotnik)
    c. Michael Demnicki
    d. Jay Johnson
    e. De La Costa
    f. Panacea Partners
    g. Matthew Stoen
    h. DRG Group
    i. Hyatt Johnson Capital
    j. Arlington Aviation
    k. Chicago Aviation Partners

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION, :<br><br>Plaintiff, :<br><br>v. :<br><br>JASON R. HYATT, JAY JOHNSON, and HYATT JOHNSON CAPITAL, LLC :<br><br>Defendants. : | CASE NO. 1:08-cv-2224<br><br>Hon. George W. Lindberg<br><br>Magistrate Judge Michael T. Mason |

## CERTIFICATE OF SERVICE

I, Sally Hewitt, an Attorney for Plaintiff Securities and Exchange Commission, hereby certify that on June 30, 2008, I caused true and correct copies of the foregoing to be served by email upon counsel for Defendants Jason Hyatt and Jay Johnson and the registered agent for Hyatt Johnson Capital, LLC as follows:

Thomas Leinenweber at thomas@landb.us

Mitchell Goldsmith at mgoldsmith@shefskylaw.com

Mark Rotert at mrotert@stetlerandduffy.com

s/ Sally Hewitt_____
Sally Hewitt, Illinois Bar No. 6193997
Attorney for Plaintiff
U.S. SECURITIES AND
EXCHANGE COMMISSION
175 W. Jackson Blvd., Suite 900
Chicago, IL 60604
Telephone: (312)353-7390
Facsimile: (312) 353-7398

# EXHIBIT 3

# RJ&L

### ROTHGERBER
### JOHNSON 8
### LYONS LLP

**Stephen E. Csajaghy**
Attorney at Law
303.628.9512
scsajaghy@rothgerber.com

One Tabor Center, Suite 3000
1200 Seventeenth Street
Denver, Colorado 80202-5855
Telephone 303.623.9000
Fax 303.623.9222
www.rothgerber.com

July 28, 2008

*via Federal Express [TRK # 7960 3770 5530]*

Sally J. Hewitt, Esq.
U.S. Securities and Exchange Commission
175 West Jackson Street, Suite 900
Chicago, IL 60604

    **Re:**     **SEC v. Hyatt, *et al.* United States District Court for the Northern District of Illinois, Case No. 08 C 2224**
               Subpoenas duces tecum issued to BCI Aircraft Leasing, Inc. and Brian N. Hollnagel

Dear Counsel:

    Non-parties BCI Aircraft Leasing, Inc. ("BCI") and Brian N. Hollnagel ("Hollnagel"), pursuant to Fed. R. Civ. P. 45(c), hereby respond to the subpoenas duces tecum sent to counsel for BCI and Hollnagel via email on June 30, 2008 ("Subpoenas"). The SEC previously granted BCI and Hollnagel a two-week extension of time until July 28, 2008 to respond to the subpoenas. In accordance with our telephone conversation of today's date, BCI and Hollnagel will provide the responsive documents by August 1, 2008.

    1.     BCI and Hollnagel object to the Subpoenas to the extent that they ask for information that comes within the attorney-client privilege, the attorney work-product doctrine, or is protected from disclosure by any other recognized privilege, immunity or protection. BCI and Hollnagel hereby assert such privileges, immunities, and protections. Pursuant to Fed. R. Civ. P. 45(d), inadvertent disclosure of any information which is privileged or otherwise immune from discovery shall not constitute a waiver of any privilege or of any other ground for objecting to the discovery with respect to such information or the subject matter thereof, or of BCI and Hollnagel's right to object to the use of any such information or the subject matter thereof during subsequent proceedings.

    2.     BCI and Hollnagel reserve all objections to relevance and materiality. BCI and Hollnagel's responses to the Subpoenas shall neither waive nor prejudice any objections BCI and Hollnagel may later assert including, without limitation, objections as to the admissibility of any document or category of documents at trial.

ROTHGERBER JOHNSON & LYONS LLP

Sally J. Hewitt, Esq.
July 28, 2008
Page 2

3.      BCI and Hollnagel object to the instructions and definitions of the Subpoenas to the extent that they attempt to expand BCI and Hollnagel's discovery obligations beyond those that are required under the Federal Rules of Civil Procedure.

4.      BCI and Hollnagel object to any explicit or implicit characterization of facts, events, circumstances or issues in the Subpoenas. BCI and Hollnagel's willingness to answer the Subpoenas is not intended to constitute an agreement with any explicit or implicit characterization of facts, events, circumstances or issues set forth in the Subpoenas.

5.      BCI and Hollnagel object to the Subpoenas to the extent that they purport to impose upon BCI or Hollnagel an obligation to become aware of or convey information to which they are not privy, or which is not in their possession, custody or control.

6.      BCI and Hollnagel object to the Subpoenas to the extent that they request that BCI and Hollnagel produce documents or information in a different manner than such documents or information are kept in the ordinary course of business.

7.      BCI and Hollnagel reserve the right to supplement or amend these Responses and Objections to the Subpoenas as additional information becomes available.

Subject to and without waiver of the foregoing objections, BCI and Hollnagel respond to the Subpoenas as follows:

### Response To Subpoenas

1.      All Documents reflecting Communications with:

    a.      Jason Hyatt
    b.      Heidi Hyatt (formerly known as Heidi Herold or Heidi Kotnik)
    c.      Michael Demnicki
    d.      Jay Johnson
    e.      De La Costa
    f.      Panacea Partners
    g.      Matthew Stoen
    h.      DRG Group
    i.      Hyatt Johnson Capital
    j.      Arlington Aviation
    k.      Chicago Aviation Partners

**Response**: BCI and Hollnagel object to this request to the extent that it seeks information protected by the attorney-client privilege and/or attorney work product doctrine. BCI and Hollnagel further object to this request on the grounds that it is overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence.

{00584038 / 1}

ROTHGERBER JOHNSON & LYONS LLP

Sally J. Hewitt, Esq.
July 28, 2008
Page 3

Specifically, Plaintiff previously has received communications of Hollnagel and all other BCI employees in discovery in the action styled *SEC v. Hollnagel, et al.*, United States District Court for the Northern District of Illinois, case no. 07-cv-4538. Without waiver of the foregoing objections, and subject to the confidentiality provisions of any protective order that the Court ultimately enters, Hollnagel has no documents responsive to this request. BCI will produce all non-privileged documents responsive to this request.

2.      All Documents relating to payments of anything of value to, or from, any of the following:

a.      Jason Hyatt
b.      Heidi Hyatt (formerly known as Heidi Herold or Heidi Kotnik)
c.      Michael Demnicki
d.      Jay Johnson
e.      De La Costa
f.      Panacea Partners
g.      Matthew Stoen
h.      DRG Group
i.      Hyatt Johnson Capital
j.      Arlington Aviation
k.      Chicago Aviation Partners

**Response**: BCI and Hollnagel object to this request to the extent that it seeks information protected by the attorney-client privilege and/or attorney work product doctrine. BCI and Hollnagel further object to this request on the grounds that it is overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. Specifically, Plaintiff previously has received communications of Hollnagel and all other BCI employees in discovery in the action styled *SEC v. Hollnagel, et al.*, United States District Court for the Northern District of Illinois, case no. 07-cv-4538. Without waiver of the foregoing objections, and subject to the confidentiality provisions of any protective order that the Court ultimately enters, Hollnagel has no documents responsive to this request. BCI will produce all non-privileged documents responsive to this request.

3.      All Documents relating to:

a.      Jason Hyatt
b.      Heidi Hyatt (formerly known as Heidi Herold or Heidi Kotnik)
c.      Michael Demnicki
d.      Jay Johnson
e.      De La Costa
f.      Panacea Partners
g.      Matthew Stoen
h.      DRG Group

ROTHGERBER JOHNSON & LYONS LLP

Sally J. Hewitt, Esq.
July 28, 2008
Page 4

        i.     Hyatt Johnson Capital
        j.     Arlington Aviation
        k.    Chicago Aviation Partners

**Response**: BCI and Hollnagel object to this request to the extent that it seeks information protected by the attorney-client privilege and/or attorney work product doctrine. BCI and Hollnagel further object to this request on the grounds that it is overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. Specifically, Plaintiff previously has received communications of Hollnagel and all other BCI employees in discovery in the action styled *SEC v. Hollnagel, et al.*, United States District Court for the Northern District of Illinois, case no. 07-cv-4538. Without waiver of the foregoing objections, and subject to the confidentiality provisions of any protective order that the Court ultimately enters, Hollnagel has no documents responsive to this request. BCI will produce all non-privileged documents responsive to this request.

Very truly yours,

ROTHGERBER JOHNSON & LYONS LLP

Stephen E. Csajaghy

SEC/jsm
cc:    Greg Kanan, Esq.
       Paula Junghans, Esq.
       Stephen Wood, Esq.

{00584038 / 1}

# EXHIBIT 4

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| **UNITED STATES SECURITIES AND EXCHANGE COMMISSION,** : | |
| : | |
| **Plaintiff,** : | |
| : | |
| **v.** : | **CASE NO. 1:08-cv-2224** |
| : | |
| **JASON R. HYATT,** : | |
| **JAY JOHNSON, and** : | **Honorable George W. Lindberg** |
| **HYATT JOHNSON CAPITAL, LLC** : | |
| : | **Magistrate Judge Michael T. Mason** |
| **Defendants.** : | |
| : | |

## DECLARATION OF SCOTT J. HLAVACEK IN SUPPORT OF PLAINTIFF SECURITIES AND EXCHANGE COMMISSION'S MOTION FOR RULE TO SHOW CAUSE AGAINST BCI AIRCRAFT LEASING INC.

I, Scott J. Hlavacek, do hereby declare under the penalty of perjury, in accordance with 28 U.S.C § 1746, that the following is true and correct:

1.     I am an Accountant with the United States Securities and Exchange Commission ("Commission") in the Chicago Regional Office, located at 175 West Jackson Blvd., Suite 900, Chicago, Illinois, 60604. I have been employed with the Commission since 1993. My official duties with the Commission include participating in fact-finding inquiries and investigations to determine whether the federal securities laws have been, are currently, or are about to be violated, and assisting in the Commission's litigation of securities laws violations.

2.    I received a BA degree from Illinois Wesleyan University and an MBA degree from DePaul University. I am a Certified Public Accountant. I worked in the banking industry for six years and have worked as an investigator of financial fraud for the Federal Government for the past eighteen years.

3.    I was assigned to investigate and analyze certain financial transactions concerning the offering of investments to individuals by BCI Aircraft Leasing, Inc. ("BCI"), Hyatt Johnson Capital, LLC ("HJ Capital") and its affiliated companies, Jason R. Hyatt ("Hyatt"), and Jay Johnson ("Johnson"). In performing this assignment I have reviewed records produced by BCI, HJ Capital, Hyatt and Johnson, bank records for BCI, HJ Capital, Hyatt, and Johnson, documents produced by investors, and other accounting and financial records. I have also spoken with HJ Capital investors. Based on my review of these records and the Commission's files, as well as conversations with investors and Commission personnel, I am informed and believe and, therefore, state the information set forth below in this Declaration.

4.    On July 31, 2008 we received a production of documents in response to a subpoena issued to BCI on June 30, 2008. That production contained many deficiencies, including duplicates of several documents, the lack of production of attachments to e-mails and the production of the attachments that were included in unreadable form. For example the production included 23 copies in a row of the exact same 8 page document and numerous e-mails that indicated they included attachments but none were produced.

2

5.    On August 11, and again on August 13, I participated in discussions with BCI's counsel Greg Kanan and Steve Csajaghy regarding the responses to the subpoena issued to BCI on June 30, 2008 as well as the subpoena issued on August 6, 2008.

6.    On August 11, 2008, I participated in a phone call to Greg Kanan regarding the June 30, 2008 subpoena and BCI's production on July 31, 2008. During the call we discussed what we considered deficiencies in the production including numerous duplicates of the same document and the lack of production of attachments to the e-mails produced. We also informed Mr. Kanan that we would need the missing attachments in original format. Mr. Kanan informed us that they were reviewing the production and would let us know soon what their response would be. No discussion was had regarding the August 6th subpoenas. At the conclusion of the call we scheduled a call for August 13th to discuss the issues with Mr. Kanan and Mr. Csajaghy who was out of the office at that time.

7.    On August 13, 2008 I participated in a call between the SEC and Greg Kanan and Steve Csajaghy counsel to BCI. During the call we discussed the production on July 31st and were informed by counsel that BCI was updating the production and would eliminate the duplicates that had been produced. We again made a request for all missing attachments from the first production and that they should be produced in their original or native format. After some discussion it was agreed that BCI did not have to produce attachments that were in Word format in their original form but that any attachments that were in Excel format would be produced in Excel format. We were informed that the SEC would receive that production "by the middle of next week," or

3

approximately August 20. Counsel to BCI then informed the SEC that they might need extensions to the due dates of the August 6 subpoenas, but they did not indicate how much extra time would be needed.

8.    I have reviewed the replacement production which we received on August 25, 2008 and although in the cover letter BCI claims that the replacement CD-ROM is an update to address the issues that the SEC raised, this production contains a significant number of documents that were not produced on July 31st. Specifically, BCI's July 31 production did not contain any documents created after December 2007, while this replacement CD-ROM contains numerous documents created in 2008, all of which were missing from the original production. In addition, although the bates number range of the July 31st production runs from 86 to 5,809, there are only 3,282 pages of actual documents that were produced. No explanation has been given for the missing 2,441 pages of missing documents. Likewise the replacement production contains 13,277 pages with bates numbers from 1 to 18,560 with no explanation for the missing 5,283 pages of missing documents.

9.    A review of the documents in the two productions in response to the June 30 subpoena indicates that the two productions are in a completely different order. Also there are no phone records in either of the productions. An analysis of phone records received from Defendant Hyatt, for the period March 2008 to April 2008, in response to our contempt motion against him, indicate that numerous telephone calls took place between Hollnagel and Defendant Hyatt during this period.

4

I, Scott J. Hlavacek, declare under penalty of perjury that the foregoing is true and correct. Executed on the 28th day of August, 2008.

_Scott J. Hlavacek_

SCOTT J. HLAVACEK
Securities and Exchange Commission
175 West Jackson Blvd., Suite 900
Chicago, Illinois  60604
Telephone:  312/353-7390

# EXHIBIT 5



JH-BCI-001129

7/28/2008



JH-BCI-001130

7/28/2008



JH-BCI-001131

JH-BCI-001132



7/28/2008

JH-BCI-001133

7/28/2008

JH-BCI-001134

7/28/2008

# EXHIBIT 6



**UNITED STATES**
**SECURITIES AND EXCHANGE COMMISSION**
CHICAGO REGIONAL OFFICE
NINTH FLOOR
175 WEST JACKSON STREET
CHICAGO, ILLINOIS 60604

ROBIN ANDREWS                                        TELEPHONE: (312) 353-4304
STAFF ATTORNEY, DIVISION OF ENFORCEMENT                   FAX: (312) 353-7398

August 4, 2008

**<u>Via Email</u>**

Steven Csajaghy, Esq.
Rothgerber Johnson & Lyons LLP
One Tabor Center, Suite 3000
1200 Seventeenth Street
Denver, CO 80202-5855

Re:    **<u>SEC v. Hyatt et al. (1:08-cv-2224)</u>**

Dear Mr. Csajaghy:

I write in regards to BCI Aircraft Leasing, Inc. ("BCI") and Brian Hollnagel's July 31, 2008 response to the SEC's June 30, 2008 subpoenas to BCI and Hollnagel in the above captioned case, which was a single CD-ROM containing numerous images. Upon review of this CD-ROM, the SEC has concluded that the response is severely deficient in numerous respects and thus requests a replacement response immediately.

First, although this CD-ROM contains numerous emails in response to the SEC's subpoenas, it appears that few, if any, of the numerous attachments to these emails were actually produced. Furthermore, many of these attachments appear to be Microsoft Excel (*.xls) files, which, if not produced in their native format, would result in loss of usable information. For example, bates numbers JH-BCI-001129 through JH-BCI-001227 constitute what appears to be an Excel spreadsheet or spreadsheets which, reduced to an image file, are completely unreadable and thus useless. Consequently, please provide attachments for all emails in their native format.

Second, with respect to most of the emails produced, it appears that this CD-ROM contains multiple copies of the same emails, at times producing ten or more of the same document. Such a redundant and duplicative production is improper and significantly impedes the SEC's ability to review the produced documents. In a replacement production, do not produce multiple copies of identical documents.

If BCI and Hollnagel do not provide a replacement response in a timely manner, the SEC will be forced to seek remedy from the Court.

Finally, it appears that BCI and Hollnagel did not produce any documents (1) existing after December 2007, (2) responsive to subpoena categories 2(a) through (k) – except 2(i) – existing at any time, or (3) responsive to subpoena categories 3(e), (f), (g), and (k) existing at any time.  Please confirm that no documents in any of these categories exist.

If you have any questions or comments, please call me at (312) 353-4304.

Sincerely,

s/ Robin Andrews

Robin Andrews
Staff Attorney

cc: Greg Kanan, Esq.

# EXHIBIT 7



**UNITED STATES**
**SECURITIES AND EXCHANGE COMMISSION**
CHICAGO REGIONAL OFFICE
NINTH FLOOR
175 WEST JACKSON STREET
CHICAGO, ILLINOIS 60604

ROBIN ANDREWS                                           TELEPHONE: (312) 353-4304
STAFF ATTORNEY, DIVISION OF ENFORCEMENT                 FAX: (312) 353-7398

August 7, 2008

**Via Email**

Steven Csajaghy, Esq.
Rothgerber Johnson & Lyons LLP
One Tabor Center, Suite 3000
1200 Seventeenth Street
Denver, CO 80202-5855

> Re:    **SEC v. Hollnagel et al. (1:07-cv-4538)**
>        **SEC v. Hyatt et al. (1:08-cv-2224)**

Dear Mr. Csajaghy:

I write to follow up on the issues raised in my letters of July 31, 2008 and August 4, 2008, and other outstanding discovery matters in the above captioned cases regarding BCI and Mr. Hollnagel (collectively, "BCI"). I am in receipt of your email yesterday, in which you state that "We also are looking into the issues in your letter regarding the subpoenas issued in the Hyatt matter, and your letter of July 31. We will respond to those letters as soon as possible." However, many of the issues I raised in those letters have been outstanding for quite some time. Other issues could be easily addressed in a prompt manner. If BCI does not produce a substantive response regarding the following issues by noon on Monday, August 11, the SEC will seek remedy from the Court as expeditiously as possible.

First, as I explained in my August 4 letter, BCI's July 31 response to the SEC's June 30 subpoenas to BCI in SEC v. Hyatt et al. is severely deficient in numerous respects: (1) BCI produced few, if any, of the attachments to the produced emails, and (2) the production contained multiple copies of the same emails, at times producing ten or more of the same document. These deficiencies are easy to identify through even a cursory review of the documents. Please indicate whether BCI will produce a replacement production in response to this subpoena, and when the SEC can expect to receive it. Also, the June 30 subpoenas asked that categories for which no documents existed be identified; this request was repeated in my August 4 letter where we laid out the specific requests for BCI. This still has not been done. The SEC accordingly reiterates its request that BCI please confirm that no documents exist in the categories outlined at the end of my August 4 letter.

Second, the SEC is still not in receipt of BCI's production of all emails created from October 2007 through at least the end of 2007.  The SEC first specifically requested this discrete category of documents from BCI in early January 2008.  It is unclear why, seven months later, BCI has still not produced these emails.  The SEC also expects all emails to be produced through the end of February 2008.  As for emails starting March 1, 2008, as I detailed in my July 31 letter, the SEC believes that the requested document categories were, and continue to be, relevant, but the SEC is willing, for the time being, to limit the scope of documents required to be produced, as outlined in that letter.  Please indicate whether BCI will produce (1) all emails from October 2007 through March 1, 2008, and (2) emails from March 1, 2008 on wards responsive to the discrete categories outlined in my July 31 letter.  Please also indicate when the SEC can expect to receive these emails.

Third, as I also detailed in my July 31 letter, two weeks ago the SEC requested an updated version of BCI's accounting records (including for all related entities), including but not limited to QuickBooks.  Please indicate whether BCI will produce these documents, and when the SEC can expect to receive them.

Fourth, as I also detailed in my July 31 letter, BCI's production index does not specify in particularity the categories of documents located on each CD-ROM produced by BCI.  Moreover, the index is inaccurate in some cases.  Please indicate whether BCI will be producing a corrected and updated production index, and when the SEC can expect to receive it.

Finally, as I also detailed in my July 31 letter, the SEC has still not received any of the documents that BCI previously withheld due to a purported "accountant-client privilege," including but not limited to communications with its former auditor and tax preparer, Blackman Kallick.  As the SEC has repeatedly pointed out since the beginning of this litigation, such a privilege does not exist in this Court.  Please indicate whether BCI will be producing these improperly withheld documents and when the SEC can expect to receive them.

If you have any questions or comments, please call me at (312) 353-4304.

Sincerely,

s/ Robin Andrews

Robin Andrews
Staff Attorney

cc: Greg Kanan, Esq.

# EXHIBIT 8



**UNITED STATES**
**SECURITIES AND EXCHANGE COMMISSION**
CHICAGO REGIONAL OFFICE
NINTH FLOOR
175 WEST JACKSON STREET
CHICAGO, ILLINOIS 60604

SALLY J. HEWITT
SENIOR ATTORNEY
DIVISION OF ENFORCEMENT

TELEPHONE: (312) 886-0819
FAX: (312) 353-7398

August 6, 2008

**VIA EMAIL gkanan@rothgerber.com**

BCI Aircraft Leasing, Inc.
c/o Greg Kanan, Esq.
Rothgerber Johnson & Lyon LLP
One Tabor Center, Suite 3000
1200 Seventeenth Street
Denver, CO  80202

> Re:    **SEC v. Hyatt et al. (1:08-cv-2224)**

Dear Mr. Kanan:

  Enclosed please find a subpoena addressed to your client, BCI Aircraft Leasing, Inc., requiring the production of certain documents. Thank you for agreeing to accept service via email rather than personal service. We would appreciate it if you could number your responses, as required by the Federal Rules of Civil Procedure, consistent with the Commission's requests in the rider to the subpoena. If there are no documents responsive to a request, please also state that. Finally, if you have any questions or comments, please call me at (312) 886-0819.

     Sincerely,

     Sally Hewitt
     Sally Hewitt

AO88 (Rev. 12/06) Subpoena in a Civil Case

## Issued by the
# UNITED STATES DISTRICT COURT

DISTRICT OF _____ Colorado _____

U.S. Securities and Exchange Commission

V.

Jason R. Hyatt, et al.

**SUBPOENA IN A CIVIL CASE**

Case Number:[1]  1:08-2224, J. Lindberg

TO:  BCI Aircraft Leasing, Inc.
c/o Greg Kanan, Esq.
1200 17th Street - Suite 3000
Denver, CO  80202

☐ YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | DATE AND TIME |

☐ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|

☑ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):
See attached

| PLACE    175 W. Jackson Blvd., 9th Floor, Chicago, IL  60604 | DATE AND TIME    8/20/2008 9:30 am |
|---|---|

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT)    *Sally Hewitt    Attorney for Plaintiff* | DATE    8/6/2008 |
|---|---|

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Sally Hewitt, U.S. Securities and Exchange Commission
175 W. Jackson Boulevard, Suite 900, Chicago, IL  60604

(See Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

AO88  (Rev.  12/06) Subpoena in a Civil Case

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| SERVED | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| | |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
                    DATE

_____
SIGNATURE OF SERVER

_____
ADDRESS OF SERVER

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2006:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.
    (1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.
    (2) (A) A person commanded to produce and permit inspection, copying, testing, or sampling of designated electronically stored information, books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.
    (B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection, copying, testing, or sampling may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to producing any or all of the designated materials or inspection of the premises — or to producing electronically stored information in the form or forms requested. If objection is made, the party serving the subpoena shall not be entitled to inspect, copy, test, or sample the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production, inspection, copying, testing, or sampling. Such an order to compel shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection, copying, testing, or sampling commanded.
    (3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it
        (i) fails to allow reasonable time for compliance;
        (ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held;
        (iii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or
        (iv) subjects a person to undue burden.
    (B) If a subpoena
        (i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or
        (ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or
        (iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject

to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.
    (1) (A) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.
    (B) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.
    (C) A person responding to a subpoena need not produce the same electronically stored information in more than one form.
    (D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.
    (2) (A) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial-preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.
    (B) If information is produced in response to a subpoena that is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. A receiving party may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it. The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT. Failure of any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued. An adequate cause for failure to obey exists when a subpoena purports to require a nonparty to attend or produce at a place not within the limits provided by clause (ii) of subparagraph (c)(3)(A).

## ATTACHMENT TO SUBPOENA

### Definitions

1. Unless otherwise indicated, these document requests cover the time period of **March 1, 2007** through the present.

2. The terms "you" and "your" shall be construed to mean the entity doing business under the name of BCI Aircraft Leasing, Inc., including its parents, successors, subsidiaries, related corporations including but not limited to Limited Liability Corporations ("LLCs"), Special Purpose Entities ("SPEs"), partnerships or professional associations, joint venture partners, affiliates, principals, officers, directors, general or limited partners, associates, employees, agents, independent contractors, persons acting on its behalf, and any aliases, code names, or trade or business names used by any of the foregoing.

3. This request includes items in your possession, in your custody, or under your control. Items under your control or in your custody, but not in your immediate possession, are required to be obtained and submitted by you.

4. "Document" or "Documents" refer to all written or graphic matter, however produced or reproduced, or to any other tangible record, and without limitation, shall include, among other things: accounting and financial records, including but not limited to bank and financial statements, books, journals, ledgers, vouchers, voucher registers, trial balances, invoices, correspondence, tax slips, withdrawal slips, credit memoranda, debit memoranda, statements, drafts, check stubs, wire transfers and check registers; communications, including but not limited to voicemail, recordings of conversations, telephone logs, incoming correspondence, outgoing correspondence, memoranda, contracts, telegrams, teletypes, private wire messages, telephone billing records, outgoing electronic communications (including e-mails), and incoming electronic

communications (including e-mails), text messages and instant messages (IM); sales materials, including but not limited to prospectuses, offering memoranda, projection brochures, sales training manuals, sales guidelines, review guidelines and advertisements; charts; graphs; computer records; and papers similar to any of the foregoing.

5.   The term "Charles Dyer" shall be construed to mean the individual named Charles G. Dyer and any person, agent, affiliate, representative, principal, associate, partner, independent contractor, person acting on his behalf, employee and/or entity acting on his behalf and/or at his direction.

6.   The terms "and" and "or" shall be construed either disjunctively or conjunctively whenever appropriate in order to bring within the scope of these requests any document which might otherwise be considered beyond their scope.

7.   A document that "relates to" or is "relating to" or "reflecting" a given subject matter means and/or includes any document that constitutes, contains, embodies, comprises, identifies, states, refers to, deals with, comments upon, responds to, describes, analyzes, or is any way pertinent to that subject.

8.   "Communication" and/or "communications" should be construed in the broadest sense and encompasses any verbal, written, telephonic or electronic communication in any form.

### Documents requested

1.   All documents reflecting communications with Charles Dyer

2.   All documents relating to payments of anything of value to, or from, Charles Dyer

3.   All other documents relating to Charles Dyer

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

|  |  |  |
|---|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION, | : : : | |
| Plaintiff, | : : | CASE NO. 1:08-cv-2224 |
| v. | : : | Hon. George W. Lindberg |
| JASON R. HYATT, JAY JOHNSON, and HYATT JOHNSON CAPITAL, LLC | : : : : | Magistrate Judge Michael T. Mason |
| Defendants. | : : | |

## CERTIFICATE OF SERVICE

I, Sally Hewitt, an Attorney for Plaintiff Securities and Exchange Commission, hereby certify that on August 6, 2008, I caused true and correct copies of the foregoing to be served by email upon counsel for Defendants Jason Hyatt and Jay Johnson and the Receiver for Hyatt Johnson Capital, LLC as follows:

Thomas Leinenweber at thomas@landb.us

Mark Rotert at mrotert@stetlerandduffy.com

rhandler@com-rec.com and pjacobi@sff-law.com

s/ Sally Hewitt
Sally Hewitt, Illinois Bar No. 6193997
Attorney for Plaintiff
U.S. SECURITIES AND
EXCHANGE COMMISSION
175 W. Jackson Blvd., Suite 900
Chicago, IL 60604
Telephone: (312)353-7390
Facsimile: (312) 353-7398

# EXHIBIT 9



**UNITED STATES**
**SECURITIES AND EXCHANGE COMMISSION**
CHICAGO REGIONAL OFFICE
NINTH FLOOR
175 WEST JACKSON STREET
CHICAGO, ILLINOIS 60604

SALLY J. HEWITT
SENIOR ATTORNEY
DIVISION OF ENFORCEMENT

TELEPHONE: (312) 886-0819
FAX: (312) 353-7398

August 6, 2008

**VIA EMAIL gkanan@rothgerber.com**

Brian Hollnagel
c/o Greg Kanan, Esq.
Rothgerber Johnson & Lyon LLP
One Tabor Center, Suite 3000
1200 Seventeenth Street
Denver, CO  80202

      **Re:**    **SEC v. Hyatt et al. (1:08-cv-2224)**

Dear Mr. Kanan:

    Enclosed please find a subpoena addressed to your client, Brian Hollnagel, requiring the production of certain documents. Thank you for agreeing to accept service via email rather than personal service. We would appreciate it if you could number your responses, as required by the Federal Rules of Civil Procedure, consistent with the Commission's requests in the rider to the subpoena. If there are no documents responsive to a request, please also state that. Finally, if you have any questions or comments, please call me at (312) 886-0819.

               Sincerely,

               Sally Hewitt

               Sally Hewitt

AO88 (Rev. 12/06) Subpoena in a Civil Case

## Issued by the
# UNITED STATES DISTRICT COURT

DISTRICT OF _____ Colorado _____

U.S. Securities and Exchange Commission

V.

Jason R. Hyatt, et al.

**SUBPOENA IN A CIVIL CASE**

Case Number:[1]  1:08-2224, J. Lindberg

TO:  Brian Hollnagel
     c/o Greg Kanan, Esq.
     1200 17th Street - Suite 3000
     Denver, CO  80202

☐  YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  |  |
|  | DATE AND TIME |
|  |  |

☐  YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
|  |  |

☑  YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):
See attached

| PLACE    175 W. Jackson Blvd., 9th Floor, Chicago, IL  60604 | DATE AND TIME  8/20/2008 9:30 am |
|---|---|

☐  YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
|  |  |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify.  Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT)  *Sally Hewitt    Attorney for Plaintiff* | DATE  8/6/2008 |
|---|---|

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Sally Hewitt, U.S. Securities and Exchange Commission
175 W. Jackson Boulevard, Suite 900, Chicago, IL  60604

(See Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

AO88  (Rev.  12/06) Subpoena in a Civil Case

---

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| SERVED | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| | |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| | |

---

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____        _____
                       DATE                              SIGNATURE OF SERVER

                                                         _____
                                                         ADDRESS OF SERVER

---

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2006:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.
   (1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.
   (2) (A) A person commanded to produce and permit inspection, copying, testing, or sampling of designated electronically stored information, books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.
   (B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection, copying, testing, or sampling may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to producing any or all of the designated materials or inspection of the premises — or to producing electronically stored information in the form or forms requested. If objection is made, the party serving the subpoena shall not be entitled to inspect, copy, test, or sample the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production, inspection, copying, testing, or sampling. Such an order to compel shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection, copying, testing, or sampling commanded.
   (3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it
      (i) fails to allow reasonable time for compliance;
      (ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held;
      (iii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or
      (iv) subjects a person to undue burden.
   (B) If a subpoena
      (i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or
      (ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or
      (iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.
   (1) (A) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.
   (B) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.
   (C) A person responding to a subpoena need not produce the same electronically stored information in more than one form.
   (D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.
   (2) (A) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial-preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.
   (B) If information is produced in response to a subpoena that is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. A receiving party may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it. The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT. Failure of any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued. An adequate cause for failure to obey exists when a subpoena purports to require a nonparty to attend or produce at a place not within the limits provided by clause (ii) of subparagraph (c)(3)(A).

## ATTACHMENT TO SUBPOENA

### Definitions

1. Unless otherwise indicated, these document requests cover the time period of **March 1, 2007** through the present.

2. The terms "you" and "your" shall be construed to mean the individual named Brian Hollnagel and any person, agent, affiliate, representative, principal, associate, partner, independent contractor, employee, person and/or entity acting on his behalf and/or at his direction. The terms "you" and "your" shall also be construed to include any related corporations, partnerships or professional associations, officers, directors, general or limited partners, and any aliases, code names, or trade or business names used by any of the foregoing.

3. This request includes items in your possession, in your custody, or under your control. Items under your control or in your custody, but not in your immediate possession, are required to be obtained and submitted by you.

4. "Document" or "Documents" refer to all written or graphic matter, however produced or reproduced, or to any other tangible record, and without limitation, shall include, among other things: accounting and financial records, including but not limited to bank and financial statements, books, journals, ledgers, vouchers, voucher registers, trial balances, invoices, correspondence, tax slips, withdrawal slips, credit memoranda, debit memoranda, statements, drafts, check stubs, wire transfers and check registers; communications, including but not limited to voicemail, recordings of conversations, telephone logs, incoming correspondence, outgoing correspondence, memoranda, contracts, telegrams, teletypes, private wire messages, telephone billing records, outgoing electronic communications (including e-mails), and incoming electronic communications (including e-mails), text messages and instant messages (IM); sales materials,

including but not limited to prospectuses, offering memoranda, projection brochures, sales training manuals, sales guidelines, review guidelines and advertisements; charts; graphs; computer records; and papers similar to any of the foregoing.

    5.   The term "Charles Dyer" shall be construed to mean the individual named Charles G. Dyer and any person, agent, affiliate, representative, principal, associate, partner, independent contractor, person acting on his behalf, employee and/or entity acting on his behalf and/or at his direction.

    6.   The terms "and" and "or" shall be construed either disjunctively or conjunctively whenever appropriate in order to bring within the scope of these requests any document which might otherwise be considered beyond their scope.

    7.   A document that "relates to" or is "relating to" or "reflecting" a given subject matter means and/or includes any document that constitutes, contains, embodies, comprises, identifies, states, refers to, deals with, comments upon, responds to, describes, analyzes, or is any way pertinent to that subject.

    8.  "Communication" and/or "communications" should be construed in the broadest sense and encompasses any verbal, written, telephonic or electronic communication in any form.

### Documents requested

1.  All documents reflecting communications with Charles Dyer

2.  All documents relating to payments of anything of value to, or from, Charles Dyer

3.  All other documents relating to Charles Dyer

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

|  |  |  |
|---|---|---|
| **UNITED STATES SECURITIES AND EXCHANGE COMMISSION,** | : : : | |
| **Plaintiff,** | : : | **CASE NO. 1:08-cv-2224** |
| **v.** | : : : | **Hon. George W. Lindberg** |
| **JASON R. HYATT, JAY JOHNSON, and HYATT JOHNSON CAPITAL, LLC** | : : : : | **Magistrate Judge Michael T. Mason** |
| **Defendants.** | : : | |

### CERTIFICATE OF SERVICE

I, Sally Hewitt, an Attorney for Plaintiff Securities and Exchange Commission, hereby certify that on August 6, 2008, I caused true and correct copies of the foregoing to be served by email upon counsel for Defendants Jason Hyatt and Jay Johnson and the Receiver for Hyatt Johnson Capital, LLC as follows:

Thomas Leinenweber at thomas@landb.us

Mark Rotert at mrotert@stetlerandduffy.com

rhandler@com-rec.com and pjacobi@sff-law.com

s/ Sally Hewitt_____
Sally Hewitt, Illinois Bar No. 6193997
Attorney for Plaintiff
U.S. SECURITIES AND
EXCHANGE COMMISSION
175 W. Jackson Blvd., Suite 900
Chicago, IL 60604
Telephone: (312)353-7390
Facsimile: (312) 353-7398

# EXHIBIT 10

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

SECURITIES AND EXCHANGE COMMISSION,

Plaintiff,

v.

ERIC E. RESTEINER,
VOLDEMAR A. VONSTRASDAS,
MILES M. HARBUR,
CHARLES G. DYER,
RESOURCE F, LLC, and
BUNKER HILL AVIATION, LLC

Defendants.

C.A. No. 01-CV-10637 (PBS)

# FINAL JUDGMENT AS TO DEFENDANTS CHARLES G. DYER, RESOURCE F, LLC AND BUNKER HILL AVIATION LLC

Plaintiff Securities and Exchange Commission (the "Commission"), having filed a

Complaint, and Defendants Charles G. Dyer, Resource F, LLC, and Bunker Hill Aviation, LLC

(collectively, "Defendants") having entered a general appearance; consented to the Court's

jurisdiction over Defendants and the subject matter of this action; consented to entry of this Final

Judgment without admitting or denying the allegations of the Complaint (except as to

jurisdiction); waived findings of fact and conclusions of law; and waived any right to appeal

from this Final Judgment:

I.

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that Defendants Charles G.

Dyer, Resource F, LLC, and Bunker Hill Aviation, LLC, and their agents, servants, employees,



attorneys, assigns, and all persons in active concert or participation with them who receive actual

notice of this Final Judgment by personal service or otherwise, are permanently restrained and

enjoined from violating, directly or indirectly, Section 10(b) of the Securities Exchange Act of

1934 (the "Exchange Act") [15 U.S.C. § 78j(b)] and Rule 10b-5 promulgated thereunder

[17 C.F.R. § 240.10b-5], by using any means or instrumentality of interstate commerce, or of the

mails, or of any facility of any national securities exchange:

    (a)    to employ any device, scheme, or artifice to defraud;

    (b)    to make any untrue statement of a material fact or to omit to state a material fact

           necessary in order to make the statements made, in the light of the circumstances

           under which they were made, not misleading; or

    (c)    to engage in any act, practice, or course of business which operates or would

           operate as a fraud or deceit upon any person,

in connection with the purchase or sale of any security.

## II.

IT IS HEREBY FURTHER ORDERED, ADJUDGED, AND DECREED that Defendants

Charles G. Dyer, Resource F, LLC, and Bunker Hill Aviation, LLC, and their agents, servants,

employees, attorneys, assigns, and all persons in active concert or participation with them who

receive actual notice of this Final Judgment by personal service or otherwise, are permanently

restrained and enjoined from violating Section 17(a) of the Securities Act of 1933 (the

"Securities Act") [15 U.S.C. § 77q(a)] in the offer or sale of any security by the use of any means

or instruments of transportation or communication in interstate commerce or by use of the mails,

2

directly or indirectly:

(a)     to employ any device, scheme, or artifice to defraud;

(b)     to obtain money or property by means of any untrue statement of a material fact
or any omission of a material fact necessary in order to make the statements
made, in light of the circumstances under which they were made, not misleading;
or

(c)     to engage in any transaction, practice, or course of business which operates or
would operate as a fraud or deceit upon the purchaser.

### III.

IT IS HEREBY FURTHER ORDERED, ADJUDGED, AND DECREED that Defendants
Charles G. Dyer and Resource F, LLC, and their agents, servants, employees, attorneys, assigns,
and all persons in active concert or participation with them who receive actual notice of this Final
Judgment by personal service or otherwise, are permanently restrained and enjoined from
violating Sections 5(a) and 5(c) of the Securities Act [15 U.S.C. §§ 77e(a) and 77e(c)] by,
directly or indirectly, in the absence of any applicable exemption:

(a)     Unless a registration statement is in effect as to a security, making use of any
means or instruments of transportation or communication in interstate commerce
or of the mails to sell such security through the use or medium of any prospectus
or otherwise;

(b)     Unless a registration statement is in effect as to a security, carrying or causing to
be carried through the mails or in interstate commerce, by any means or

3

instruments of transportation, any such security for the purpose of sale or for delivery after sale; or

(c)    Making use of any means or instruments of transportation or communication in interstate commerce or of the mails to offer to sell or offer to buy through the use or medium of any prospectus or otherwise any security, unless a registration statement has been filed with the Commission as to such security, or while the registration statement is the subject of a refusal order or stop order or (prior to the effective date of the registration statement) any public proceeding of examination under Section 8 of the Securities Act [15 U.S.C. § 77h].

## IV.

IT IS HEREBY FURTHER ORDERED, ADJUDGED, AND DECREED that Defendant Charles G. Dyer, and his agents, servants, employees, attorneys, assigns, and all persons in active concert or participation with them who receive actual notice of this Final Judgment by personal service or otherwise are permanently restrained and enjoined from violating Section 15(a) of the Exchange Act [15 U.S.C. § 78o(a)], by, directly or indirectly, effecting securities transactions for the account of others or engaging in business as a dealer without being registered as a broker-dealer or being associated with a registered broker-dealer for purposes of those transactions or that business.

## V.

IT IS HEREBY FURTHER ORDERED, ADJUDGED, AND DECREED that Defendants Charles G. Dyer, Resource F, LLC, and Bunker Hill Aviation, LLC, are liable, on a joint and

4

several basis, for disgorgement in the amount of $472,590, representing their gains from the conduct alleged in the Complaint, together with prejudgment interest thereon in the amount of $99,321.75, for a total of $571,911.75.

VI.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that Defendant Charles G. Dyer shall pay a civil penalty in the amount of $110,000 pursuant to Section 20(d) of the Securities Act [15 U.S.C. sec. 77t(d)] and Section 21(d)(3) of the Exchange Act [15 U.S.C. sec. 78u(d)(3)].

VII.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that Defendants shall satisfy their disgorgement and penalty obligations by making payments according to the following schedule:

a.  Within three (3) days of entry of this Final Judgment, a payment of $100,000;

b.  Within thirty (30) days of entry of this Final Judgment or March 15, 2003, whichever is later, a payment of an additional $100,000;

c.  Within one hundred eighty (180) days of entry of this Final Judgment or September 1, 2003, whichever is later, a payment of an additional $160,000;

d.  Within two hundred seventy (270) days of entry of this Final Judgment or October 15, 2003, whichever is later, a payment of an additional $160,000;

e.  Within three hundred thirty (330) days of entry of this Final Judgment or December 31, 2003, whichever is later, a payment of an additional $161,911.75, plus post-judgment interest of $5,755.84;

And that all payments shall be made to the Clerk of this Court, together with a cover letter identifying Defendants Charles G. Dyer, Resource F, LLC, and Bunker Hill Aviation, LLC as defendants in this action; setting forth the title and civil action number of this action and the name of this Court; and specifying that each payment is made pursuant to this Final Judgment. Defendants shall simultaneously transmit photocopies of such payments and letters to the Commission's counsel in this action. By making these payments, Defendants relinquish all legal and equitable right, title, and interest in such funds, and no part of the funds shall be returned to Defendants. The Clerk shall deposit the funds into an interest bearing account with the Court Registry Investment System ("CRIS"). These funds, together with any interest and income earned thereon (collectively, the "Fund"), shall be held by the CRIS until further order of the Court. In accordance with the guidelines set by the Director of the Administrative Office of the United States Courts, the Clerk is directed, without further order of this Court, to deduct from the income earned on the money in the Fund a fee equal to ten (10) percent of the income earned on the Fund. Such fee shall not exceed that authorized by the Judicial Conference of the United States. The Commission may by motion propose a plan to distribute the Fund subject to the Court's approval. Such a plan may provide that Fund shall be distributed pursuant to the Fair Fund provisions of Section 308(a) of the Sarbanes-Oxley Act of 2002.

VIII.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that the Modified Preliminary Injunction Order and Order Freezing Assets and Other Equitable Relief dated August 15, 2001 (the "August 15, 2001 Order") is hereby dissolved, except as noted herein, but solely with respect to the Defendants Charles G. Dyer, Resource F, LLC, and Bunker Hill Aviation, LLC; that the August 15, 2001 Order shall remain in effect as to 47 acres of woodland property located in Nottingham, New Hampshire that is owned and controlled by defendant Charles G. Dyer, unless and until the defendants have timely made all of the payments specified in Section VII of this Final Judgment; that the attachment of defendant Charles G. Dyer's real estate located at 25 Smiths Point Road, Manchester, Massachusetts, approved by the Court's Order dated January 4, 2002, is dissolved; and that defendant Charles G. Dyer will prepare and submit for authorization, approval, and execution by Commission counsel, as appropriate, any documents necessary to effect the dissolution of the real estate attachment described herein.

IX.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that the annexed Consent is incorporated herein with the same force and effect as if fully set forth herein, and that Defendants shall comply with all of the undertakings and agreements set forth therein.

X.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that this Court shall retain jurisdiction over Defendants Charles G. Dyer, Resource F, LLC and Bunker Hill Aviation, LLC

7

for all purposes including the implementation and enforcement of the terms and conditions of

this Final Judgment.

DONE AND ORDERED at Boston, Massachusetts this ___1 5___ day of ___September,___ 2003.

HONORABLE PATTI B. SARIS
UNITED STATES DISTRICT JUDGE

8

Charles G. Dyer: Admin. Proc. Rel. No. 34-48642 / October 16, 2003          Page 1 of 3

Case 1:08-cv-02224     Document 118-11     Filed 08/28/2008     Page 10 of 11



Home | Previous Page

**U.S. Securities and Exchange Commission**

# UNITED STATES OF AMERICA
## before the
## SECURITIES AND EXCHANGE COMMISSION

**SECURITIES EXCHANGE ACT OF 1934**
**Release No. 48642 / October 16, 2003**

**INVESTMENT ADVISERS ACT OF 1940**
**Release No. 2182 / October 16, 2003**

**ADMINISTRATIVE PROCEEDING**
**File No. 3-11302**

| | |
|---|---|
| **In the Matter of** <br><br> **CHARLES G. DYER,** <br><br> **Respondent.** | : <br> : <br> : **ORDER INSTITUTING ADMINISTRATIVE** <br> : **PROCEEDINGS PURSUANT TO SECTION 15(b) OF** <br> : **THE SECURITIES EXCHANGE ACT OF 1934 AND** <br> : **SECTION 203(f) OF THE INVESTMENT ADVISERS** <br> : **ACT OF 1940, MAKING FINDINGS, AND** <br> : **IMPOSING REMEDIAL SANCTIONS** <br> : <br> : |

### I.

The Securities and Exchange Commission ("Commission") deems it appropriate and in the public interest that public administrative proceedings be, and hereby are, instituted pursuant to Section 15(b) of the Securities Exchange Act of 1934 ("Exchange Act") and Section 203(f) of the Investment Advisers Act of 1940 ("Advisers Act") against Charles G. Dyer ("Respondent" or "Dyer").

### II.

In anticipation of the institution of these proceedings, Respondent has submitted an Offer of Settlement (the "Offer") which the Commission has determined to accept. Solely for the purpose of these proceedings and any other proceedings brought by or on behalf of the Commission, or to which the Commission is a party, and without admitting or denying the findings herein, except as to the Commission's jurisdiction over him and the subject matter of these proceedings, and the findings contained in Section III.2 below, which are admitted, Respondent consents to the entry of this Order Instituting Administrative Proceedings Pursuant to Section 15(b) of the Securities Exchange Act of 1934 and Section 203(f) of the Investment Advisers Act of 1940, Making Findings, and Imposing Remedial Sanctions ("Order"), as set forth below.

Charles G. Dyer: Admin. Proc. Rel. No. 34-48642 / October 16, 2003          Page 2 of 3

Case 1:08-cv-02224     Document 118-11     Filed 08/28/2008     Page 11 of 11

### III.

On the basis of this Order and Respondent's Offer, the Commission finds that:

1. Dyer was affiliated with Hawthorne Investment Trust (File No. 811-5982), an investment company registered with the Commission from 1989 to 2001. In addition, Dyer was an associated person of Hawthorne Associates, Inc. (File No. 801-26536), an investment adviser registered with the Commission from 1986 to 2000, and Mustang Capital, LLC (File No. 801-51536), an investment adviser registered with the Commission from 1996 to 1999. Dyer also acted as an unregistered broker and offered and sold unregistered securities from at least in or about late 1998 through at least in or about early 2000. Dyer, 65 years old, is a resident of Manchester, Massachusetts.

2. On September 15, 2003, a final judgment was entered by consent against Dyer, permanently enjoining him from future violations of Sections 5(a), 5(c), and 17(a) of the Securities Act of 1933 ("Securities Act"), Sections 10(b) and 15(a) of the Exchange Act, and Rule 10b-5 thereunder, in the civil action entitled *Securities and Exchange Commission v. Eric E. Resteiner, et al.*, Civil Action Number 01-CV-10637 (PBS), in the United States District Court for the District of Massachusetts.

3. The Commission's complaint alleged that, from in or about late 1998 through in or about early 2000, Dyer offered and sold securities for investment in a fictitious "trading program" that, like "prime bank" schemes, promised high, risk-free returns through trading in high quality debt instruments. The complaint alleged that Dyer, acting through two companies that he formed and controlled, received "performance" fees and fees for managing and administering investments in the fictional trading program. The complaint also alleged that Dyer otherwise engaged in a variety of conduct that operated as a fraud and deceit on investors; acted as an unregistered broker; and sold unregistered securities.

### IV.

In view of the foregoing, the Commission deems it appropriate and in the public interest to impose the sanctions specified in Respondent Dyer's Offer.

ACCORDINGLY, IT IS HEREBY ORDERED:

Pursuant to Section 15(b)(6) of the Exchange Act and Section 203(f) of the Advisers Act, that Respondent Dyer be, and hereby is barred from association with any broker, dealer, or investment adviser.

By the Commission.

Jonathan G. Katz
Secretary

*http://www.sec.gov/litigation/admin/34-48642.htm*

Modified: 10/16/2003

# EXHIBIT 11

**Andrews, Robin**

---

| | |
|---|---|
| **From:** | Andrews, Robin |
| **Sent:** | Wednesday, August 20, 2008 4:36 PM |
| **To:** | 'Stephen Csajaghy' |
| **Cc:** | 'Greg Kanan'; 'Paula Junghans' |
| **Subject:** | RE: SEC v. Hyatt - Subpoenas |

Steve:

I have received your voicemails and the below email.

The SEC notes that, according to our discussion last Wednesday (August 13), we were supposed to receive the following categories of documents by now:
1. Current version of Quickbooks for BCI and all related entities 2. BCI emails through 12/31/07 3. Documents in response to SEC's June 30, 2008 subpoenas to BCI and Hollnagel (replacement production)

Please note that the June 30, 2008 subpoenas to BCI and Hollnagel were due July 14, but we granted a two-week extension to July 28. On July 31, we finally received their production, which, as I articulated in my August 4, 2008 letter to you, was severely deficient. We have not received a replacement production with, among other things, missing attachments to emails (as I noted, please produce all excel files in native format).

Additionally, you were expected to tell us by now when we can expect to receive:
4. BCI emails from 1/1/08 through 6/30/08 5. Previous productions in Concordance format (in lieu of detailed index, which BCI has declined to provide)

In light of BCI's failure to produce the above documents, the SEC will not grant BCI, Hollnagel, and Rothgerber extensions to the SEC's three August 6, 2008 subpoenas (which are due today, August 20). Further, we intend to seek remedy from the Court on these issues.

Robin Andrews
Staff Attorney
U.S. Securities and Exchange Commission
Division of Enforcement
175 W. Jackson Blvd., Suite 900
Chicago, IL 60604
T: (312) 353-4304
F: (312) 353-7398
andrewsr@sec.gov


-----Original Message-----
From: Stephen Csajaghy [mailto:scsajaghy@rothgerber.com]
Sent: Tuesday, August 19, 2008 6:14 PM
To: Andrews, Robin
Cc: Greg Kanan; Paula Junghans
Subject: SEC v. Hyatt - Subpoenas


Robin -

I am sending this email to confirm the voice message I left for you earlier this afternoon. Given the large amount of work we have been doing on the various other discovery issues in the BCI case, we need an additional two weeks to respond to the subpoenas the SEC issued to our firm, to BCI and to Mr. Hollnagel from the Hyatt case. These subpoenas were sent to Greg Kanan via email with cover letters dated August 6, 2008. Please let us know the SEC's position on this extension of time.

Thank you.
Steve Csajaghy

Stephen E. Csajaghy, Esq.
Rothgerber Johnson & Lyons LLP
1200 Seventeenth Street, Suite 3000
Denver, CO 80202
303.628.9512
303.623.9222 (fax)
scsajaghy@rothgerber.com

# EXHIBIT 12



**RH&L**

ROTHGERBER
JOHNSON &
LYONS LLP

**Stephen E. Csajaghy**
Attorney at Law
303.628.9512
scsajaghy@rothgerber.com

One Tabor Center, Suite 3000
1200 Seventeenth Street
Denver, Colorado 80202-5855
Telephone 303.623.9000
Fax 303.623.9222
www.rothgerber.com

August 25, 2008

*via Federal Express [TRK # 7970 6630 1170]*

Sally J. Hewitt, Esq.
U.S. Securities and Exchange Commission
175 West Jackson Street, Suite 900
Chicago, IL 60604

> **Re:** **SEC v. Hyatt, *et al*. United States District Court for the Northern District of Illinois, Case No. 08 C 2224**
> Subpoenas *duces tecum* issued to BCI Aircraft Leasing, Inc. and Brian N. Hollnagel dated June 30, 3008

Dear Counsel:

Non-parties BCI Aircraft Leasing, Inc. ("BCI") and Brian N. Hollnagel ("Hollnagel"), pursuant to Fed. R. Civ. P. 45(c), in accordance with my letters of July 28, 2008 and July 31, 2008, hereby provide a updated disk containing documents responsive to the subpoenas *duces tecum* sent to counsel for BCI and Hollnagel via email on June 30, 2008 ("Subpoenas"). This production has been redone to address the issues raised in the letter from Robin Andrews dated August 4, 2008. Specifically, this amended production includes all non-privileged documents through June 30, 2008, includes all attachments to emails, and excludes duplicative copies of documents. We are locating the excel document addressed in Mr. Andrews' letter, and will send that to you in native format.

Contrary to Mr. Andrews' letter, the Subpoenas do not request that BCI and Hollnagel state whether there are responsive documents for each individual item requested. Furthermore, Fed. R. Civ. P. 45 does not require entities who receive subpoenas *duces tecum* to state whether there are documents responsive to each specific request in the subpoena. Regardless, BCI and Hollnagel state that there are no documents responsive to request nos. 1(e) – (h), 1(j) – (k), 2(a) – (h), 2(j) – (k), 3(e), 3(g) – (h) and 3(k). The only documents relating to request no. 3(f) are news articles pertaining to this entity.

Given that this production is complete and BCI and Hollnagel have fully extinguished their duties to respond to the Subpoenas, BCI and Hollnagel request that the SEC withdraw its Motion to Compel (filed August 22, 2008) as to these Subpoenas, and advise the Court that BCI and Hollnagel have provided the requested information.

ROTHGERBER JOHNSON & LYONS LLP

Sally J. Hewitt, Esq.
August 25, 2008
Page 2

Very truly yours,

ROTHGERBER JOHNSON & LYONS LLP

Stephen E. Csajaghy

SEC/jsm
Encl.
cc:    Greg Kanan, Esq.
       Paula Junghans, Esq.



SEC v. Hyatt Johnson



Revised Document Production of BCI
to subpoena dated June 30, 2008

# EXHIBIT 13

**Andrews, Robin**

---

**From:**        Stephen Csajaghy [scsajaghy@rothgerber.com]
**Sent:**        Wednesday, August 27, 2008 10:32 AM
**To:**          Andrews, Robin; Hewitt, Sarah J.
**Cc:**          Greg Kanan; Paula Junghans
**Subject:**     SEC v. Hyatt Johnson

**Attachments:**    Excel Document for SEC (00592398).XLS



Excel Document for
  SEC (005923...

              Counsel -

Further to my letter of August 25, attached is the document referenced in the SEC's letter
of August 4 in its original excel format.  To view the document in the format it was
originally produced:

1. Click on the BANK CASH tab
2. Click on the VIEW option of the main menu.
3. Look for the option ZOOM.
4. Click on CUSTOM and enter 10%.  Then scroll up and you will see the document as
printed.

Let us know if you are having any difficulties with any other excel documents.

Regards,
Steve Csajaghy

Stephen E. Csajaghy, Esq.
Rothgerber Johnson & Lyons LLP
1200 Seventeenth Street, Suite 3000
Denver, CO 80202
303.628.9512
303.623.9222 (fax)
scsajaghy@rothgerber.com

# EXHIBIT 14

JH-BCI-005021



JH-BCI-005022



JH-BCI-005023



JH-BCI-005024

JH-BCI-005025



JH-BCI-005026



# EXHIBIT 15



Stephen E. Csajaghy
Attorney at Law
303.628.9512
scsajaghy@rothgerber.com

**ROTHGERBER**

**JOHNSON &**

**LYONS LLP**

One Labor Center, Suite 3000
1200 Seventeenth Street
Denver, Colorado 80202-5855
Telephone 303.623.9000
Fax 303.623.9222
www.rothgerber.com

August 20, 2008

*via Facsimile*

Sally J. Hewitt, Esq.
U.S. Securities and Exchange Commission
175 West Jackson Street, Suite 900
Chicago, IL 60604

> Re:  **SEC v. Hyatt, *et al.* United States District Court for the Northern District of
> Illinois, Case No. 08 C 2224**
> Subpoenas duces tecum issued to BCI Aircraft Leasing, Inc. and Brian N.
> Hollnagel

Dear Counsel:

Non-parties BCI Aircraft Leasing, Inc. ("BCI") and Brian N. Hollnagel ("Hollnagel"),
pursuant to Fed. R. Civ. P. 45(c), hereby respond to the *second* set of subpoenas duces tecum
sent to counsel for BCI and Hollnagel via email on August 6, 2008 ("Subpoenas"). BCI and
Hollnagel will provide the responsive documents within two weeks hereof in accordance with
their discussions with counsel for the SEC.

1.  BCI and Hollnagel object to the Subpoenas to the extent that they ask for
information that comes within the attorney-client privilege, the attorney work-product doctrine,
or is protected from disclosure by any other recognized privilege, immunity or protection. BCI
and Hollnagel hereby assert such privileges, immunities, and protections. Pursuant to Fed. R.
Civ. P. 45(d), inadvertent disclosure of any information which is privileged or otherwise immune
from discovery shall not constitute a waiver of any privilege or of any other ground for objecting
to the discovery with respect to such information or the subject matter thereof, or of BCI and
Hollnagel's right to object to the use of any such information or the subject matter thereof during
subsequent proceedings.

2.  BCI and Hollnagel reserve all objections to relevance and materiality. BCI and
Hollnagel's responses to the Subpoenas shall neither waive nor prejudice any objections BCI and
Hollnagel may later assert including, without limitation, objections as to the admissibility of any
document or category of documents at trial.

3.  BCI and Hollnagel object to the instructions and definitions of the Subpoenas to
the extent that they attempt to expand BCI and Hollnagel's discovery obligations beyond those
that are required under the Federal Rules of Civil Procedure.

ROTHGERBER JOHNSON & LYONS LLP

Sally J. Hewitt, Esq.
August 20, 2008
Page 2

    4.    BCI and Hollnagel object to any explicit or implicit characterization of facts, events, circumstances or issues in the Subpoenas. BCI and Hollnagel's willingness to answer the Subpoenas is not intended to constitute an agreement with any explicit or implicit characterization of facts, events, circumstances or issues set forth in the Subpoenas.

    5.    BCI and Hollnagel object to the Subpoenas to the extent that they purport to impose upon BCI or Hollnagel an obligation to become aware of or convey information to which they are not privy, or which is not in their possession, custody or control.

    6.    BCI and Hollnagel object to the Subpoenas to the extent that they request that BCI and Hollnagel produce documents or information in a different manner than such documents or information are kept in the ordinary course of business.

    7.    BCI and Hollnagel reserve the right to supplement or amend these Responses and Objections to the Subpoenas as additional information becomes available.

    Subject to and without waiver of the foregoing objections, BCI and Hollnagel respond to the Subpoenas as follows:

## Response To Subpoenas

1.    All Documents reflecting Communications with Charles Dyer.

    **Response:** BCI and Hollnagel object to this request to the extent that it seeks information protected by the attorney-client privilege and/or attorney work product doctrine. BCI and Hollnagel further object to this request on the grounds that it is overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. Specifically, Plaintiff previously has received communications of Hollnagel and all other BCI employees in discovery in the action styled *SEC v. Hollnagel, et al.*, United States District Court for the Northern District of Illinois, case no. 07-cv-4538. Without waiver of the foregoing objections, and subject to the confidentiality provisions of any protective order that the Court ultimately enters, Hollnagel has no documents responsive to this request. BCI will produce all non-privileged documents responsive to this request.

2.    All Documents relating to payments of anything of value to, or from, Charles Dyer.

    **Response:** BCI and Hollnagel object to this request to the extent that it seeks information protected by the attorney-client privilege and/or attorney work product doctrine. BCI and Hollnagel further object to this request on the grounds that it is overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. Specifically, Plaintiff previously has received communications of Hollnagel and all other BCI employees in discovery in the action styled *SEC v. Hollnagel, et al.*, United States District Court

ROTHGERBER JOHNSON & LYONS LLP

Sally J. Hewitt, Esq.
August 20, 2008
Page 3

for the Northern District of Illinois, case no. 07-cv-4538. Without waiver of the foregoing objections, and subject to the confidentiality provisions of any protective order that the Court ultimately enters, Hollnagel has no documents responsive to this request. BCI will produce all non-privileged documents responsive to this request.

3.    All other Documents relating to Charles Dyer.

     **Response**: BCI and Hollnagel object to this request to the extent that it seeks information protected by the attorney-client privilege and/or attorney work product doctrine. BCI and Hollnagel further object to this request on the grounds that it is overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. Specifically, Plaintiff previously has received communications of Hollnagel and all other BCI employees in discovery in the action styled *SEC v. Hollnagel, et al.*, United States District Court for the Northern District of Illinois, case no. 07-cv-4538. Without waiver of the foregoing objections, and subject to the confidentiality provisions of any protective order that the Court ultimately enters, Hollnagel has no documents responsive to this request. BCI will produce all non-privileged documents responsive to this request.

                         Very truly yours,

                         ROTHGERBER JOHNSON & LYONS LLP

                         Stephen E. Csajaghy

SEC/jsm
cc:    Greg Kanan, Esq.
       Paula Junghans, Esq.
       Stephen Wood, Esq.