IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION, | |
| Plaintiff | No. 1:08-cv-2224 |
| v. | Hon. George W. Lindberg |
| JASON R. HYATT, JAY JOHNSON, AND HYATT JOHNSON CAPITAL, LLC, | Magistrate Judge Michael T. Mason |
| Defendants. | |

**MOTION OF NON-PARTIES BCI AIRCRAFT LEASING, INC. AND BRIAN HOLLNAGEL TO VACATE COURT'S SEPTEMBER 3, 2008 ORDER MAKING FINDINGS OF CONTEMPT BY BCI AIRCRAFT LEASING, INC. AND BRIAN HOLLNAGEL AND OTHER RELIEF**

Non-parties BCI Aircraft Leasing, Inc. ("BCI") and Brian N. Hollnagel ("Hollnagel") (collectively, "BCI Entities"), through their undersigned counsel, hereby request that the Court vacate its Order Making Findings of Contempt by BCI Aircraft Leasing, Inc. and Brian Hollnagel and Other Relief [docket no. 123], filed on September 3, 2008. The BCI Entities state as follows:

## I. INTRODUCTION

On September 3, 2008 – fewer than three business days after the SEC filed its Motion for Rule to Show Cause ("Motion") relating to two subpoenas *duces tecum* it issued to the BCI Entities – the Court entered an Order holding the BCI Entities in contempt ("Contempt Order") for allegedly failing to comply with the subpoenas. The Contempt Order was issued after the

Court issued a Notification of Docket Entry ("Minute Order") that: (a) required the BCI Entities to file their brief in response to the Motion on or before noon on September 5, 2008; and (b) set a hearing on the SEC's Motion for Rule to Show Cause for September 10, 2008 at 9 a.m.[1] The Contempt Order also was issued without permitting the BCI Entities to respond to the SEC's Motion, and after the SEC misleadingly informed the BCI Entities and the Court that on September 3 it merely intended to appear before the Court and "seek a hearing date" on the Motion. Instead of asking for a hearing date on the Motion, the SEC evidently argued the merits of the contempt claim, which was not the motion before the Court, and then submitted a proposed order to the Court on the morning of September 3 asking that the BCI Entities be held in contempt. The SEC submitted this proposed order *on the very same day* that the BCI Entities sent the SEC the materials it had requested.[2] Thus, in a whirlwind of fewer than three business days after the Motion was filed, and less than a month after the second subpoena *duces tecum* was issued, the BCI Entities – non-parties to this action – were held in contempt without a hearing, without being given any opportunity to respond to the Motion in any way, and without having violated any previous orders of the Court.

The BCI Entities request that the Court vacate the Contempt Order for several reasons:

► The BCI Entities have not violated any orders of the Court, which is an absolute prerequisite to a finding of contempt.

---

[1] On September 4, 2008, the Court entered a docket entry striking this Minute Order.

[2] The BCI Entities' letter to the SEC dated September 3, 2008 demonstrating that they had provided the SEC with the materials it had requested is attached as Exhibit A. Despite receiving this letter, the SEC refused to withdraw its Motion and now takes the position that the BCI Entities are subject to the Contempt Order even though it never asked for such a remedy in its Motion.

► The Motion is procedurally improper. Local Rule 37.1 requires that, when a litigant attempts to hold in contempt a non-party who has not previously appeared in the action through counsel, that the litigant serve the non-party personally in accordance with Fed. R. Civ. P. 4. The SEC failed to serve the BCI Entities in this manner, thus rendering the SEC's Motion improper.

► The SEC misled both the BCI Entities and the Court when it apparently requested that these non-parties be held in contempt. In its Motion, the SEC *never requested* that the BCI Entities be held in contempt and *never informed* them that it would seek immediately that extraordinary remedy. Instead, the SEC asked the Court to "enter an order requiring [the BCI Entities] to show cause as to why they should not be held in contempt." (Motion at p. 12) Moreover, the SEC *never informed* the BCI Entities that it would ask the Court on September 3 for a finding of contempt. The SEC's "Notice of Motion" (Exhibit B) states that on September 3, 2008 at 9:30 a.m., the SEC will "then and there present, and *seek a hearing date regarding*, the SEC's" Motion. Rather than seeking a future hearing date on its request for an order to show cause, on September 3, 2008 the SEC apparently submitted a proposed order to the Court (Exhibit C) and requested that the Court hold the BCI Entities, non-parties, in contempt.

► The SEC's approach to the remedy it stated it would seek has denied the BCI Entities any opportunity to respond to the SEC's Motion and denied the BCI Entities due process. The SEC's failure to follow appropriate procedures caused the Contempt Order to be issued less than three business days after the Motion was filed, before the BCI Entities were given an opportunity to respond.

► The BCI Entities have produced everything the SEC has requested. As noted in Exhibit A and in the BCI Entities' Response to the SEC's Motion for Rule to Show Cause (which is being filed concurrently with this Motion), the BCI Entities have provided the SEC with everything the subpoenas requested. The BCI Entities completed this production *at the same time* that the SEC is demanding that the BCI Entities produce hundreds of thousands of pages of materials in a related lawsuit, *SEC v. Hollnagel, et al.*, case no. 07-cv-4538. In that related action, the BCI Entities have already produced over one million pages of documents to the SEC.

For theses reasons, the BCI Entities request that the Court vacate the Order.

## II. ARGUMENT

**A.     Legal Standard to Hold a Non-Party in Contempt of Court.**

Under Fed. R. Civ. P. 45(e) the "[f]ailure by any person without adequate excuse to obey a subpoena ... may be deemed a contempt of the court." Civil contempt is designed to compel an action and compensate the parties for losses resulting from non-compliance. United States v. United Mine Workers of America, 330 U.S. 258, 303-304 (1947).

A finding of civil contempt requires: "(1) that the court entered a lawful order of reasonable specificity; (2) the order was violated." In re Betts, 927 F.2d 983, 986 (7th Cir.1991). Before holding an entity in contempt, a district court "must be able to point to a decree from the court which 'set[s] forth in specific detail an unequivocal command' which the party in contempt violated." Stotler and Co. v. Able, 870 F.2d 1158, 1163 (7th Cir. 1989); Ferrell v. Pierce, 785 F.2d 1372, 1378 (7th Cir.1986); TMT North America, Inc. v. The Magic Touch GmbH, 57 F.Supp.2d 586, 589 (N.D. Ill. 1999). Alleged violation of a subpoena signed by a litigant is not sufficient to issue a contempt order. Fremont Energy Corp. v. Seattle Post-Intelligencer, 688 F.2d 1285, 1286-87 (9th Cir.) (requiring an order from a court prior to holding a non-party in contempt of the subpoena); Daval Steel Prods. v. M/V Fakredine, 951 F.2d 1357, 1364 (2d Cir. 1991) (drawing distinction between subpoena *duces tecum* signed by counsel and a court order, and declining to impose sanctions against non-party that was subject to subpoena and not court order). A complaining party must prove that the order was violated by "clear and convincing" evidence. United States v. Huebner, 752 F.2d 1235, 1241 (7th Cir.); Stotler & Co., 870 F.2d at 1163.

Before finding a party in contempt, a district court must satisfy an entity's due process rights, and must give an entity "an opportunity to contest the issue." United States v. Berg, 20 F.3d 304, 310 (7th Cir. 1994). As the Supreme Court has explained:

> [D]ue process of law as explained in ...Cooke [v. United States, 267 U.S. 517, 45 S.Ct. 390, 69 L.Ed. 767 (1925)] requires that one charged with contempt of court be advised of the charges against him, have a reasonable opportunity to meet them by way of defense or explanation, have the right to be represented by counsel, and have a chance to testify and call other witnesses in his behalf, either by way of defense or explanation.

In re Oliver, 333 U.S. 257, 275, 68 S. Ct. 499, 92 L. Ed. 682 (1948).

Additionally, as made clear in the 1991 Advisory Committee Notes to Fed. R. Civ. P. 45(e) make clear, a court must be particularly sensitive about holding a non-party in contempt for supposedly failing to comply with a subpoena. As the notes state, since subpoenas are "not in fact ... uttered by a judicial officer, contempt should be very sparingly applied when the non-party witness has been overborne by a party or attorney." Jackson v. Brinker, 147 F.R.D. 189, 198 n.10 (S.D. Ind. 1993) (citing Advisory Committee Notes to Rule 45(e)); Higginbotham v. KCS Intern., Inc., 202 F.R.D. 444, 455 (D. Md. 2001) (same).

### B.    The BCI Entities Have Not Violated Any Orders of the Court.

The Contempt Order should be vacated because the BCI Entities have not violated any prior orders of the Court. Even if the BCI Entities ignored and/or refused to comply with the SEC's subpoenas (which is not what happened), this inaction would not set forth a sufficient basis to hold these non-parties in contempt because document subpoenas, issued by attorneys, are not orders of the court.

The SEC's approach to the relief it would seek at the September 3, 3008 hearing has caused this problem. Instead of providing the Court with a proposed order for the BCI Entities to show cause – the type of order that must have been entered before the BCI Entities could be held in contempt – the SEC instead apparently sought an order of contempt three business days after it filed its Motion. (Exhibit C) This act is directly contrary to the SEC's statements in the Motion and the Notice of Motion. As noted above, the SEC *never requested* in its Motion that the BCI Entities be held in contempt. To the contrary, the SEC asked the Court to "enter an order requiring [the BCI Entities] to show cause as to why they should not be held in contempt." (Motion at p. 12) Additionally, the SEC *never informed* the BCI Entities that it would ask the Court on September 3 that they be found in contempt. The SEC's Notice of Motion states that on September 3, 2008 at 9 a.m., the SEC will "*seek a hearing date regarding*, the SEC's" Motion. (Exhibit B, emphasis added) Given the statements regarding its intent for the September 3, 2008 appearance, counsel for the BCI Entities was awaiting receipt of a hearing date from the SEC on its Motion for Rule to Show Cause. For this reason, the Contempt Order should be vacated.

### C.    The SEC's Motion is Procedurally Improper Because the SEC Failed to Serve the Motion on the BCI Entities in Accordance with LR37.1 and Fed. R. Civ. P. 4.

In addition to the fact that the BCI Entities have not violated any orders of the Court, the SEC's Motion is improper because the SEC did not comply with LR37.1 and serve (or even attempt to serve) the Motion on the BCI Entities *personally* with a summons, in compliance with Fed. R. Civ. 4. Local Rule 37.1 states:

> LR37.1. Contempts
>
> (a) Commencing Proceedings. A proceeding to adjudicate a person in civil contempt of court…shall be commenced by the service of a

> notice of motion or order to show cause…Where the alleged
> contemnor has appeared in the action by an attorney, the notice of
> motion or order to show cause and the papers upon which it is
> based may be served upon that attorney; <u>otherwise service shall be
> made personally, in the manner provided for by Fed. R. Civ. P. 4
> for the service of a summons.</u>

<u>See</u> LR 37.1 (emphasis added).

In this case, the SEC failed to comply with this rule.  Though the BCI Entities have not

appeared in this action through counsel, instead of obtaining personal service of the Motion via a

summons under Rule 4 the SEC simply sent an email to the undersigned counsel providing a

copy of the Motion.  (<u>See</u> email from Robin Andrews dated August 28, 2008, attached hereto as

Exhibit D)  Given that the SEC failed to comply with this important jurisdictional requirement,

its Motion is invalid and the Contempt Order should be vacated.

**D.    The SEC's Misstatement that it Would Merely Seek a Future Hearing Date
Has Denied the BCI Entities the Opportunity to Respond to the Motion, and Denied Them
Their Due Process Rights.**

In addition to the fact that the SEC misled the BCI Entities regarding its stated intent to

seek a *future hearing date* on its request that the Court enter a rule to show cause, the SEC's

action has denied the BCI Entities any opportunity to respond to its Motion, and denied the BCI

Entities any semblance of due process.

The SEC filed its Motion late on the afternoon of Thursday, August 28, 2008 –

immediately before the Labor Day holiday weekend.  At the time it filed the Motion, the SEC

was well aware that the BCI Entities were working to comply with the SEC's subpoenas.  The

Motion asks that the Court enter an order requiring the BCI Entities to show cause why they

should not be held in contempt of court – not that they be held in contempt.  The Notice of

Motion states that, on September 3, 2008 (immediately after the Labor Day holiday), the SEC would ask the Court for a future hearing date on its request that the Court issue a rule to show cause why the BCI Entities should not be held in contempt. Had the SEC obtained a future hearing date, the BCI Entities could have responded to the SEC's Motion, and shown the Court that the SEC's Motion has little basis in fact or law because the BCI Entities have provided the SEC with the materials it requested.[3]

### E.    The BCI Entities Have Provided the SEC With the Materials it Requested.

As noted in its letter to the SEC dated September 3, 2008 (the same date as the hearing and the Contempt Order), and as detailed in the BCI Entities' Response to the SEC's Motion for Rule to Show Cause (filed concurrently herewith), the Contempt Order should be vacated because the BCI Entities have provided the SEC with everything that the SEC has demanded:

►    The June 30, 2008 subpoena demanded all documents relating to eleven different persons and entities, and included a return date of July 14, 2008. After receiving a two-week extension of time from the SEC because the SEC also was demanding hundreds of thousands of pages of additional information from the BCI Entities in the *SEC v. Hollnagel* action at the same time it issued these subpoenas, the BCI Entities provided this information to the SEC on July 31, 2008 and (after receiving a letter from the SEC that raised questions about this initial production) on August 25, 2008. Notably, the BCI Entities even provided the SEC with all telephone records that had not previously been produced in the *SEC v. Hollnagel* action, even though these records

---

[3] The Minute Order is precisely what the BCI Entities expected to see following the September 3 hearing. The Minute Order required the BCI Entities to file their brief in response to the Motion on or before noon on September 5, 2008, and attend a hearing on the Motion for September 10, 2008 at 9 a.m.

were not specifically requested in the subpoenas, were never requested by the SEC, and were mentioned by the SEC *for the first time* in the Motion.  (Exhibit A at p. 2)

▶    The August 6, 2008 subpoena demanded all documents relating to one individual, and included a return date of August 20, 2008.[4]  On August 13, 2008, counsel for the BCI Entities held a telephone call with counsel for the SEC.  In that call, in light of the hundreds of thousands of pages of additional discovery materials the SEC demanded in the *SEC v. Hollnagel* action, counsel for the BCI Entities said they would need additional time to provide the SEC with responsive materials.  The SEC did not object in that conversation.  Instead, when counsel for the BCI Entities contacted the SEC's counsel via telephone and email on August 19 and August 20 to confirm that a two-week extension of time was needed, the SEC's counsel waited until the end of the day on August 20, 2008 (when the responses were due) to state that it now refused to grant this extension.[5]  (See Exhibit A at p. 1; see also Mot. at Exhibit 11)

Despite this refusal to grant an extension of time, the BCI entities responded to the subpoena by letter on August 20, 2008 (Mot. at Exhibit 15), and then provided all responsive materials to the SEC on September 3, 2008.  (Exhibit A at p. 1)[6]  In response, counsel for the

_____

[4] The SEC sent this subpoena to counsel for the BCI Entities by email on August 6, and asked counsel to accept service.  As counsel was out of town, he did not even receive the subpoenas until August 8, 2008, when he returned to the office and responded to the SEC's request that the BCI Entities waive service of these subpoenas.

[5] The SEC attempts to explain this tactic by claiming that it refused to grant an extension "based on BCI's inadequate response to the previous subpoena, and the narrow scope of the August 6 subpoena."  (Mot. at p. 2)

[6] September 3 is exactly two weeks after the August 20 return date, and is precisely the date when the BCI Entities informed the SEC that they would be able to provide these materials.  (See Mot. at Exhibit 11)

SEC acknowledged receipt of the letter, but noted that the Contempt Order already had been issued.  Importantly, the SEC did not claim in this email that it had not received any materials from the BCI Entities – it merely demanded that materials that the BCI Entities had previously produced now be reproduced in native format.  (See email from Robin Andrews dated September 3, 2008, attached hereto as Exhibit E)[7]

► Nevertheless, given the erroneous issuance of the Contempt Order, the SEC believes that the BCI Entities should be required to reproduce the same materials they have *already* provided in response to the June 30, subpoena only this time in electronic format.  The form of production is the sole issue remaining with respect to the June 30 and August 6 subpoenas.  As noted in the September 3, 2008 letter, when counsel for the parties discussed this production via telephone in July 2008, the SEC agreed to accept attachments to email in .tif format so that they could be Bates labeled and tracked.  (Exhibit A at p. 2)  Only after the BCI Entities went through the effort of obtaining and producing responsive materials in this format did the SEC change its mind about its desired form of production.  (Exhibit A at p. 2)[8] Additionally, the SEC identified a single excel spreadsheet by Bates number that it asked to be produced in electronic format, and the BCI Entities provided that document to the SEC in native electronic format on August 27, 2008.  (Exhibit A at p. 2; Mot. at Ex. 13)[9]  Regardless, in an

---

[7] Counsel for the BCI Entities spoke with counsel for the SEC during the afternoon of September 4, 2008, and the SEC stated that they have some "issues" with the BCI Entities' production that they intend to put in writing.

[8] Importantly, the SEC does not refute this statement in its September 3 email.  (Exhibit E)

[9] The SEC claims that it requested materials in electronic format in telephone conversations of August 11 and August 13.  (Mot. at p. 5)  Nevertheless, these conversations and the August 4 letter to which the SEC

effort to resolve this issue, the BCI Entities offered to provide the SEC in electronic format any additional attachments it identifies, even though producing the same information in two formats is <u>not</u> required under Rule 45(d)(1)(C) (stating that "[t]he person responding need not produce the same electronically stored information in more than one form").  (Exhibit A at p. 2)

### III.  CONCLUSION

For the foregoing reasons, non-parties BCI Aircraft Leasing, Inc. and Brian Hollnagel respectfully request that the Court vacate the Order Making Findings of Contempt by BCI Aircraft Leasing, Inc. and Brian Hollnagel and Other Relief [docket no. 123], filed on September 3, 2008, and grant the BCI Entities such other and further relief as the Court deems appropriate.

---

refers (Mot. at Exhibit 6) are *after* the SEC had already agreed to accept information in .tif format and *after* the BCI Entities had produced the information.  (Exhibit A)

Dated: September 4, 2008

/s/  Stephen A. Wood
Stephen A. Wood
Matthew C. Luzadder
KELLEY DRYE & WARREN LLP
333 West Wacker Drive, Suite 2600
Chicago, IL  60606
T: (312) 857-7070
F: (312) 857-7095

Gregory B. Kanan*
Stephen E. Csajaghy*
ROTHGERBER JOHNSON & LYONS LLP
One Tabor Center, Suite 3000
1200 17th Street
Denver, CO  80202
T: (303) 623-9000
F: (303) 623-9222

* Applications for *Pro Hac Vice* Admission
pending

## CERTIFICATE OF SERVICE

I hereby certify that on September 4, 2008, I caused the foregoing to be served upon the following counsel of record electronically before the hour of 6:00 p.m.:

Gregory von Schaumburg, Esq.
Robin Andrews, Esq.
Division of Enforcement
Securities and Exchange Commission
175 W. Jackson Boulevard
Chicago, Illinois 60604

Henry M. Baskerville
Stelter & Duffy, Ltd.
11 S. LaSalle, Suite 1200
Chicago, IL 60603
hbasker@stelterandduffy.com

Paula K. Jacobi
Barnes & Thornburg LLP
1 North Wacker Dr.
Suite 4400
Chicago, IL 60602
pjacobi@btlaw.com

Thomas More Leinenweber
Leinenweber & Baroni, LLC
321 South Plymouth Court
11th Floor
Chicago, IL 60604
thomas@landb.us

Matthew John McQuaid
53 West Jackson
Suite 1420
Chicago, IL 60604
mcquaidmat@aol.com

Mark L. Rotert
Stelter & Duffy, Ltd.
11 South LaSalle, Suite 1200
Chicago, IL 60603
mrotert@stelterandduffy.com

| Dated: September 4, 2008 | |
|---|---|
| | /s/ Stephen A. Wood |
| | Stephen A. Wood<br>Matthew C. Luzadder<br>KELLEY DRYE & WARREN LLP<br>333 West Wacker Drive, Suite 2600<br>Chicago, IL 60606<br>T: (312) 857-7070<br>F: (312) 857-7095 |

# EXHIBIT A



**Stephen E. Csajaghy**
Attorney at Law
303.628.9512
scsajaghy@rothgerber.com

ROTHGERBER
JOHNSON &
LYONS LLP

One Tabor Center, Suite 3000
1200 Seventeenth Street
Denver, Colorado 80202-5855
Telephone 303.623.9000
Fax 303.623.9222
www.rothgerber.com

September 3, 2008

***via Federal Express [TRK # 7960 7751 6628]***

Sally J. Hewitt, Esq.
Robin Andrews, Esq.
U.S. Securities and Exchange Commission
175 West Jackson Street, Suite 900
Chicago, IL 60604

> Re:   **SEC v. Hyatt, *et al.* United States District Court for the Northern District of Illinois, Case No. 08 C 2224**
> Subpoenas duces tecum issued to BCI Aircraft Leasing and Brian N. Hollnagel

Dear Counsel:

Non-parties BCI Aircraft leasing, Inc. ("BCI") and Brian N. Hollbagel ("Hollnagel"), pursuant to Fed. R. Civ. P. 45(c) and in accordance with my letter dated August 20, 2008, hereby provide the documents responsive to the subpoena *duces tecum* sent to counsel for BCI and Hollnagel via e-mail on August 6, 2008. The documents are bates labeled BCI-JH2 0001 through 1172. In light of the hundreds of thousands of pages of additional discovery materials you recently requested in the *SEC v. BCI* action, in our telephone conversation of August 13, 2008, Greg Kanan and I asked for additional time to provide the SEC with these materials. You did not object to that request in that conversation. Instead, when we contacted you via telephone and email on August 19 and August 20 to confirm that we needed a two-week extension of time to respond to the subpoenas, you waited until the end of the day on August 20, 2008 (when the responses were due) to inform us that you refused to grant this extension.

Regardless, enclosed with this letter are all documents relating in any way to Charles Dyer. Also enclosed is a privilege log. Any information or documents relating to payments to Mr. Dyer are included in the updated Quickbooks materials we sent to you in August in the *SEC v. BCI* action. There have been no additional payments to Mr. Dyer since we sent you that Quickbooks information.

We received the Motion for Rule to Show Cause Against BCI Aircraft Leasing, Inc. and Brian Hollnagel that you filed on August 28, 2008 ("Motion"). The SEC claims in that Motion that it never received any telephone records of BCI or Mr. Hollnagel in response to the subpoenas *duces tecum* dated June 30, 2008. That argument requires our comment.


EXHIBIT
A

ROTHGERBER JOHNSON & LYONS LLP

Sally J. Hewitt, Esq.
Robin Andrews, Esq.
September 3, 2008
Page 2

First, as you know, BCI previously produced in the *SEC v. BCI* action all telephone records through December 2007 for BCI, Mr. Hollnagel's cellular telephone and the Aspen home. Second, in the flurry of letters you sent in August and in the numerous telephone calls, the SEC never previously asked for any telephone records at all. Moreover, the June 30, 2008 subpoenas did not specifically request these materials, and we were completely unaware that the SEC wished to obtain these materials. Had you conferred with us and requested these materials in accordance with LR 37.2 before filing your Motion, BCI and Mr. Hollnagel would have agreed to provide them. Instead, the first time that we ever learned that the SEC wanted telephone records was in its Motion.

Regardless, enclosed with this letter are all telephone records from January 2008 – present for BCI, Mr. Hollnagel's cellular telephone and the Aspen home. They are bates labeled BCI-JH1 0001 through 0208. Consistent with my letter to you on January 3, 2008 in the *SEC v. BCI* action, BCI uses a PBX system and individual telephone calls are not referenced in these records. Also, Mr. Hollnagel obtained his cellular telephone through BCI, and BCI pays those bills. Thus, contrary to the statement on page 2 of your Motion, Mr. Hollnagel properly reported to you that he does not possess any documents responsive to the June 30, 2008 subpoena.

Your Motion also addresses the productions made in response to the June 30, 2008 subpoenas. As you know, BCI and Hollnagel redid the materials responsive to the June 30, 2008 subpoena to addresses the issues in your letter of August 4. The documents that were removed from both productions are privileged. BCI and Hollnagel provided a privilege log to the SEC with the materials they sent on July 31. That privilege log did not change with the updated production sent to the SEC on August 25, and there was no need to provide another copy of an identical privilege log.

Finally, your Motion states that BCI has not provided the SEC with all attachments to email in native format. First, when we discussed this production via telephone in July 2008, the SEC agreed that it was appropriate to have attachments converted to .tif format so that they can be bates labeled. Only after BCI and Hollnagel went through the effort of obtaining and producing responsive materials did you change your mind about the form of production. Second, you identified a single excel spreadsheet by bates number that you asked to be produced in electronic format, and we provided that document to you in native electronic format.

As you can imagine, identifying hundreds of attachments to email (that have already been produced) would be extraordinarily expensive and time-consuming. If there are specific attachments that you would like produced in native excel format, please identify those and we will obtain them for you.

In light of the foregoing, please withdraw your Motion to Show Cause and confirm to us that it has been withdrawn.

{00593522 / 1}

ROTHGERBER JOHNSON & LYONS LLP

Sally J. Hewitt, Esq.
Robin Andrews, Esq.
September 3, 2008
Page 3

Very truly yours,

ROTHGERBER JOHNSON & LYONS LLP

Stephen E. Csajaghy

SEC/jsm
Encl.
cc:     Greg Kanan, Esq.
        Paula Junghans, Esq.

{00593522 / 1}

# EXHIBIT B

**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| UNITED STATES SECURITIES<br>AND EXCHANGE COMMISSION, | : |
| : |
| Plaintiff, | : |
| : |
| v. | :     **CASE NO.  1:08-cv-2224** |
| : |
| JASON R. HYATT, | : |
| JAY JOHNSON, and | :     **Hon. George W. Lindberg** |
| HYATT JOHNSON CAPITAL, LLC | : |
| :     **Magistrate Judge Michael T. Mason** |
| Defendants. | : |
| : |

### NOTICE OF MOTION

PLEASE TAKE NOTICE that on Wednesday, **September 3, 2008**, at the hour of 9:30 a.m., the United States Securities and Exchange Commission ("SEC") shall appear before the Honorable George W. Lindberg in Courtroom 1425 of the Everett McKinley Dirksen Building, 219 South Dearborn Street, Chicago, Illinois 60604, and shall then and there present, and seek a hearing date regarding, the SEC's **MOTION FOR RULE TO SHOW CAUSE AGAINST BCI AIRCRAFT LEASING, INC. AND BRIAN HOLLNAGEL**, filed on August 28, 2008, a copy of which was served upon you on that date.

Respectfully submitted,

s/ Robin Andrews
Gregory von Schaumburg, IL Bar No. 3127782
Robin Andrews, IL Bar No. 6285644
Attorneys for Plaintiff
U.S. SECURITIES AND
EXCHANGE COMMISSION
175 W. Jackson Blvd., Suite 900 Chicago, IL 60604
Telephone: (312) 353-7390
Facsimile: (312) 353-7398

Dated:  August 28, 2008



EXHIBIT
_B_

# EXHIBIT C

Stephen Csajaghy - SEC v. Hyatt et al. 1:08-cv-2224 Proposed Order Making Findings of Contempt by BCI and Hollna... Page 1

**From:**    "Andrews, Robin" <andrewsr@sec.gov>
**To:**       <Proposed_Order_Lindberg@ilnd.uscourts.gov>
**Date:**     9/3/2008 11:34:18 AM
**Subject:**  SEC v. Hyatt et al. 1:08-cv-2224 Proposed Order Making Findings of Contempt by BCI and Hollnagel and Other Relief

In accordance with this morning's hearing on the SEC's August 28 Motion
for Contempt, please find attached a Proposed Order.
 <<Contempt Order Against BCI and Hollnagel.wpd>>
Robin Andrews
Senior Attorney
U.S. Securities and Exchange Commission
Division of Enforcement
175 W. Jackson Blvd., Suite 900
Chicago, IL 60604
T: (312) 353-4304
F: (312) 353-7398
andrewsr@sec.gov

**CC:**       <thomas@landb.us>, <rhandler@com-rec.com>, "Mark L. Rotert"
<mrotert@stetleranddduffy.com>, "Stephen Csajaghy" <scsajaghy@rothgerber.com>, "Greg Kanan"
<gkanan@rothgerber.com>, "Paula Junghans" <pjunghans@zuckerman.com>



EXHIBIT

C

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION, | : : : | |
| Plaintiff, | : : | |
| v. | : : | CASE NO. 1:08-cv-2224 |
| JASON R. HYATT, JAY JOHNSON, and HYATT JOHNSON CAPITAL, LLC | : : : | Honorable George W. Lindberg |
| | : : | Magistrate Judge Michael T. Mason |
| Defendants. | : : | |

## ORDER MAKING FINDINGS OF CONTEMPT BY BCI AIRCRAFT LEASING, INC. AND BRIAN HOLLNAGEL AND OTHER RELIEF

This cause coming to be heard upon the U.S. Securities and Exchange Commission's ("SEC") August 28, 2008 Motion for Rule to Show Cause Against BCI Aircraft Leasing, Inc. ("BCI") and Brian N. Hollnagel ("Hollnagel"), which was properly noticed for hearing before this Court on September 3, 2008, but for which neither BCI nor Hollnagel nor their counsel appeared:

I.

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED** that BCI and Hollnagel are expressly found to have acted in contempt of the June 30, 2008 and August 6, 2008 subpoenas issued by the SEC in this Court ("the subpoenas") by failing to fully, properly, and completely provide all responsive documents in a timely manner.

## II.

**IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that BCI and Hollnagel make full, proper, and complete responses to the subpoenas by noon Chicago time on Friday, September 5, 2008.

## III.

**IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that in the event BCI and Hollnagel fail to make full, proper, and complete responses to the subpoenas by noon Chicago time on Friday, September 5, 2008, they shall each be fined $1,000 for each day afterwards, including weekends and holidays, that BCI and Hollnagel have not made such full, proper, and complete responses.

## IV.

**IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that BCI and Hollnagel pay costs and reasonable attorney fees incurred by the SEC in its repeated attempts to obtain documents responsive to the subpoenas.  The SEC shall file a fee petition for the Court's consideration.

## V.

**IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that the Court shall retain jurisdiction of this matter for all purposes.

**SO ORDERED:**

_____
**UNITED STATES DISTRICT JUDGE**
**Honorable George W. Lindberg**

**Dated: _____, 2008**

# EXHIBIT D

**From:**        "Andrews, Robin" <andrewsr@sec.gov>
**To:**          "Greg Kanan" <gkanan@rothgerber.com>, "Stephen Csajaghy"
<scsajaghy@rothgerber.com>, "Paula Junghans" <pjunghans@zuckerman.com>
**Date:**        8/28/2008 3:45:33 PM
**Subject:**     SEC v. Hyatt et al. - Motion

Filed today.
  <<motion for rule to show cause against BCI - ALL.pdf>>
Robin Andrews
Senior Attorney
U.S. Securities and Exchange Commission
Division of Enforcement
175 W. Jackson Blvd., Suite 900
Chicago, IL 60604
T: (312) 353-4304
F: (312) 353-7398
andrewsr@sec.gov



**CC:**          <thomas@landb.us>, <rhandler@com-rec.com>, "Mark L. Rotert"
<mrotert@stetleranduffy.com>



# EXHIBIT E

Stephen Csajaghy - SEC v. Hyatt et al. - Contempt Order                                    Page 1

| | |
|---|---|
| **From:** | "Andrews, Robin" <andrewsr@sec.gov> |
| **To:** | "Stephen Csajaghy" <scsajaghy@rothgerber.com>, "Greg Kanan" <gkanan@rothgerber.com>, "Paula Junghans" <pjunghans@zuckerman.com> |
| **Date:** | 9/3/2008 3:25:38 PM |
| **Subject:** | SEC v. Hyatt et al. - Contempt Order |

Steve:

This morning at 9:30 a.m. Chicago time, the SEC appeared on its August 28 contempt motion against BCI and Hollnagel in Judge Lindberg's courtroom.  No one appeared for this hearing on behalf of your clients, BCI or Hollnagel, nor did anyone file a response to the SEC's motion. Furthermore, no one even notified the Court or the SEC that no one would be appearing at the scheduled hearing.  At the hearing the Court granted the SEC's motion and found both BCI and Hollnagel in contempt.  At 1:49 p.m. Chicago time today, the Court entered an Order Making Findings of Contempt by BCI Aircraft Leasing, Inc. and Brian Hollnagel and Other Relief ("the Contempt Order").  I forwarded this docket entry for this Contempt Order to you and your co-counsels, Greg Kanan and Paula Junghans at 1:52 p.m.

Among other things, the order found BCI and Hollnagel in contempt and requires them to make full, proper, and complete responses to the SEC's subpoenas by noon Chicago time on Friday, September 5, 2008.  The Contempt Order also provides that, "in the event BCI and Hollnagel fail to make full, proper, and complete responses to the subpoenas by noon Chicago time on Friday, September 5, 2008, they shall each be fined $1,000 for each day afterwards, including weekends and holidays, that BCI and Hollnagel have not made such full, proper, and complete responses."  Finally, the Contempt Order requires that BCI and Hollnagel pay costs and reasonable attorney fees incurred by the SEC in its repeated attempts to obtain documents responsive to the subpoenas. Despite receiving the Contempt Order earlier, at 2:26 p.m. Chicago time today you inexplicably sent a letter via email to Sally Hewitt and me at the SEC asking, among other things, that our motion to show cause be withdrawn. Further, you indicate in the letter that BCI still refuses to produce all excel email attachments in their native format, instead asking the SEC to identify specific attachments that we would like to have produced.  In light of the Court's Contempt Order, your clients must produce all of these attachments, (and all other documents responsive to the SEC's subpoenas that are in the possession, custody, or control of BCI or Hollnagel), by noon Chicago time on Friday, September 5, 2008.

Robin Andrews
Senior Attorney
U.S. Securities and Exchange Commission
Division of Enforcement
175 W. Jackson Blvd., Suite 900
Chicago, IL 60604
T: (312) 353-4304
F: (312) 353-7398
andrewsr@sec.gov

**CC:**            <swood@kelleydrye.com>



EXHIBIT

E