IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION, | |
| Plaintiff | No. 1:08-cv-2224 |
| v. | Hon. George W. Lindberg |
| JASON R. HYATT, JAY JOHNSON, AND HYATT JOHNSON CAPITAL, LLC, | Magistrate Judge Michael T. Mason |
| Defendants. | |

**RESPONSE OF NON-PARTIES BCI AIRCRAFT LEASING, INC. AND BRIAN HOLLNAGEL TO SEC'S MOTION FOR RULE TO SHOW CAUSE**

Non-parties BCI Aircraft Leasing, Inc. ("BCI") and Brian N. Hollnagel ("Hollnagel") (collectively, "BCI Entities"), through their undersigned counsel and pursuant to Rule 45 of the Federal Rules of Civil Procedure, hereby respond to the SEC's Motion for Rule to Show Cause ("Motion") as follows:

## I.  INTRODUCTION

The SEC's Motion claims that the BCI Entities – non-parties to this case – have not "completely and properly" responded to subpoenas it issued on June 30 and August 6.  On September 3, 2008, the BCI Entities sent the SEC the remaining materials that the SEC had demanded in its subpoenas.  (See letter to the SEC dated September 3, 2008, attached as Exhibit A)  In response to this letter, the SEC sent an email (from Robin Andrews dated September 3, 2008, attached hereto as Exhibit B) noting that the Court had already apparently held the BCI

Entities in contempt, even though both the Motion and the Notice of Motion stated simply that the SEC would "seek a hearing date" regarding its Motion on September 3.[1]

As described below, the SEC has served multiple discovery requests and subpoenas on the BCI Entities. Rather than fight about burdensomeness and timing in Court, the BCI Entities worked diligently to provide the SEC with all requested materials and tried to give the SEC everything it demands. Despite this effort, the SEC demands immediate production, refuses to grant extensions of time, accuses the BCI Entities of failing to comply with discovery requests when it never specifically asks to receive certain documents, and then files immediate motions for show cause orders. These tactics, and the BCI Entities' extensive efforts to provide responsive materials, cannot be the basis for issuing a rule to show cause, and certainly cannot be the basis for holding the BCI Entities (non-parties) in contempt of court. The SEC's request for a rule to show cause should be denied.

## II. ARGUMENT

Under Fed. R. Civ. P. 45(e) the "[f]ailure by any person without adequate excuse to obey a subpoena ... may be deemed a contempt of the court...." A finding of civil contempt requires: "(1) that the court entered a lawful order of reasonable specificity; (2) the order was violated." In re Betts, 927 F.2d 983, 986 (7th Cir. 1991). To hold an entity in contempt, the district court "must be able to point to a decree from the court which 'set[s] forth in specific detail an unequivocal command' which the party in contempt violated." Stotler and Co. v. Able, 870 F.2d 1158, 1163 (7th Cir. 1989); Ferrell v. Pierce, 785 F.2d 1372, 1378 (7th Cir.1986). A

---

[1] Concurrently with this response brief, the BCI Entities are filing a Motion to Vacate its Order Making Findings of Contempt by BCI Aircraft Leasing, Inc. and Brian Hollnagel and Other Relief [docket no. 123] ("Contempt Order"), filed on September 3, 2008.

complaining party must prove that the order was violated by "clear and convincing" evidence. United States v. Huebner, 752 F.2d 1235, 1241 (7th Cir.); Stotler & Co., 870 F.2d at 1163. Before finding a party in contempt, a district court must allow that party "an opportunity to contest the issue." Unites States v. Berg, 20 F.3d 304, 310 (7th Cir. 1994). Under these clear standards, the Motion must be denied.

### A.    The BCI Entities Have Fully Responded to the June 30, 2008 Subpoena.

#### 1.    Format of Attachments to Email

The June 30, 2008 subpoena demanded all documents relating to eleven different persons and entities, and included a return date of July 14, 2008. The BCI Entities asked for and received a two-week extension of time from the SEC. Prior to producing the requested information, counsel for the BCI Entities spoke with counsel for the SEC on several occasions in July 2008 regarding the format for this production. When counsel for the BCI Entities explained the need to produce information with Bates numbers, the SEC agreed to permit the BCI Entities to produce the responsive information in .tif format so that they could be Bates labeled and tracked. (Exhibit A at p. 2) Thus, on July 31, 2008 the BCI Entities sent a letter to the SEC providing the responsive documents and information, along with a privilege log. (Mot. at p. 3)

On August 4, 2008, the BCI Entities received a letter from the SEC that addressed perceived problems in this production. (Mot. at Exhibit 6) The letter claimed that there were several copies of the same document produced, that attachments to "many" of the email were Excel documents that, "if not produced in their native format, would result in the loss of usable information," that the production supposedly did not include information after December 2007 and that the production was missing "numerous attachments to emails." (Mot. at Exhibit 6)

Though the BCI Entities were working to complete several other exceedingly large discovery requests from the SEC that are described herein, the BCI Entities redid this production. On August 25, 2008, the BCI Entities sent the SEC a letter enclosing the redone production, which was designed to address the issues in the SEC's letter. This production included all non-privileged documents through June 30, 2008 and all attachments to emails, and excluded duplicative copies of documents.[2] (Mot. at Exhibit 12)[3]

Despite this production, the SEC now demands that <u>all</u> attachments to <u>all</u> email be reproduced in native format. (Exhibit B) There is no basis for this demand. When counsel for the parties discussed the form this production would take on several occasions in July 2008, the SEC agreed with BCI that the production of documents be in .tif format so that they could be Bates labeled and tracked. (Exhibit A at p. 2) Only <u>after</u> the BCI Entities went through the effort of producing responsive materials in this format did the SEC change its mind about its desired form of production. (Exhibit A at p. 2)[4] Additionally, Rule 45 is very clear that, in responding to a document subpoena, an entity is not required to produce the same information in two different formats. <u>See</u> Fed. R. Civ. P. 45(d)(1)(C) (stating that in response to a subpoena, "[t]he person responding need not produce the same electronically stored information in more than one form").

_____

[2] The initial production included numerous copies of the same email because some email were copies onto multiple computers within the BCI office, all of which were searched to produce responsive information.

[3] The letter also advised that the BCI Entities were searching for the Excel document identified by Bates number in the August 4 letter, which would be produced in native format. On August 27, 2008, the BCI Entities then produced that document to the SEC in native format via email. (Mot. at Exhibit 13)

[4] Importantly, the SEC <u>does not</u> refute this statement in its September 3 email. (Exhibit B)

Regardless, in an effort to resolve this issue, the BCI Entities have offered to provide the SEC in electronic format any additional attachments it identifies. (Exhibit A at p. 2) The SEC rejected this offer, and claims that the Court's issuance of the Contempt Order compels the BCI Entities to produce all attachments to all email in native format.[5] (Exhibit B)

### 2.        Telephone Records.

At this same time that this production was taking place, the SEC filed two discovery motions *without conferring with the BCI Entities*. Not only did the SEC fail to contact the BCI Entities' counsel before to discuss what materials it believes it would required before filing those motions, it is clear that the SEC would rather file discovery motions than ask for – and receive – what it believes it should receive. First, on August 22, 2008, without conferring with the undersigned as required by LR 37.2, the SEC filed a "Motion to Compel Production of Documents" from these non-parties and another non-party, the BCI Entities' legal counsel.[6] The Court denied that motion as procedurally improper. Second, though it had received an enormous amount of discovery material from the BCI Entities and RJL since its August 22 Motion to Compel,[7] the SEC filed the instant Motion on August 28 (again, without contacting the undersigned counsel to discuss what additional materials it wanted produced).

---

[5] Locating and producing hundreds of attachments to email in native format will take many hours or work and will be exceedingly expensive and burdensome. This particularly true given that this would be the second time the SEC has demanded this same information and the SEC already possesses these materials.

[6] On August 6, 2008, the SEC also served the BCI Entities' undersigned legal counsel (Rothgerber Johnson & Lyons LLP ("RJL")) with a subpoena *duces tecum*. This Motion to Compel addressed RJL's response to the SEC's subpoena. RJL timely responded to the subpoena, and then provided all responsive documents to the SEC on August 27, 2008. The SEC therefore did not include RJL in the instant Motion.

[7] On August 21, the BCI Entities resent all of their accounting files in Quickbooks format to the SEC in the *Hollnagel* action. On August 25, the BCI Entities sent their redone production to the SEC in response

The SEC argues in the Motion that it had not received telephone records from the BCI Entities. That statement is highly misleading. First, in the *SEC v. Hollnagel* action, the BCI Entities previously produced all telephone records through December 2007 for BCI, Mr. Hollnagel's cellular telephone and the Aspen home. Second, in the flurry of letters it sent in August and in numerous telephone calls, the SEC never mentioned that it was expecting and had not received telephone records. Indeed, the first time the SEC ever brought up issues relating to telephone records was in its Motion.

Regardless, the BCI Entities received the Motion from the SEC via email, and immediately collected and produced telephone records from January 2008 to the present for BCI, Mr. Hollnagel's cellular telephone and the Aspen home. These materials were provided via letter on September 3, 2008. (Exhibit A)

The Motion falsely claims that "Hollnagel acted in contempt when he falsely reported to the SEC that there were no documents responsive to the June 30 subpoena in his possession or control," (Motion at p. 3) because he did not produce, individually, his cellular telephone records (until the letter of September 3). As the BCI Entities informed the SEC in their letter of September 3, Mr. Hollnagel obtained his cellular telephone through BCI, and BCI pays those bills. (Exhibit A at p.2) Thus, Mr. Hollnagel properly reported that he does not possess any documents responsive to the June 30, 2008 subpoena.

---

to the June 30 subpoena. On August 27, RJL sent the SEC all of the materials responsive to the subpoena it received.

{00594485 / 1}

CH01/LUZAM/233957.1

**B.**    **The BCI Entities Have Fully Responded to the August 6, 2008 Subpoena.**

The August 6, 2008 subpoena demanded all documents relating to one individual, and included a return date of August 20, 2008.  On August 13, 2008, counsel for the BCI Entities held a telephone call with counsel for the SEC.  In that call, in light of the hundreds of thousands of pages of additional discovery materials the SEC demanded in the *SEC v. Hollnagel* action, counsel for the BCI Entities said they would need additional time to provide the SEC with responsive materials.  The SEC <u>did not object</u> in that conversation.  (Exhibit A at p. 1) Nevertheless, when the undersigned counsel contacted the SEC via telephone and email on August 19 and August 20 to confirm that a two-week extension of time was needed, the SEC's counsel waited until the end of the day on August 20, 2008 (when the responses were due) to state that the SEC *refused* to grant this extension.[8]  (Exhibit A at p. 1; <u>see also</u> Mot. at Exhibit 11)

Despite this refusal to grant an extension of time, the BCI Entities responded to the subpoena by letter on August 20, 2008 (Mot. at Exhibit 15), and then provided all responsive materials to the SEC on September 3, 2008.  (Exhibit A at p. 1)  The BCI Entities have thus complied with this subpoena.

---

[8] The SEC attempts to explain this tactic by claiming that it refused to grant an extension "based on BCI's inadequate response to the previous subpoena, and the narrow scope of the August 6 subpoena." (Mot. at p. 2)

**C.    The SEC Issued Subpoenas and Refused to Cooperate in Discovery at the Same Time it Was Demanding Immediate Production of Hundreds of Thousands of Pages of Materials in the *BCI v. Hollnagel* Action from the BCI Entities and their Legal Counsel.**

Though the SEC's Motion addresses subpoenas it has issued in this action, it *ignores* the burdensome discovery it has demanded from the BCI Entities and their legal counsel <u>at the same time it issued these subpoenas</u>.  Both in this action and the *SEC v. Hollnagel* action, the BCI Entities have fully and willingly produced over one million pages of documents and confidential financial records to the SEC.  BCI's approach to responding to subpoenas and providing discovery in the *Hollnagel* action has always been to provide the SEC with the materials the SEC seeks.  BCI and Mr. Hollnagel have nothing to hide.

Despite this willingness to cooperate and despite past production of an enormous amount of information (including every single document and email from BCI's computer servers through mid-September 2007), the SEC has demanded near-immediate responses to its discovery demands from the BCI Entities in both cases.  Moreover, it has attempted to bury the BCI Entities in discovery demands in the *Hollnagel* action <u>at the very same time</u> it issued the subpoenas in this case.  It then refused to grant a short extension of time for the BCI Entities to respond to the August 6 subpoena, and immediately filed motions.  For example:

&#9658;    On July 21, 2008, the SEC left a voice message for counsel for the BCI Entities in the *SEC v. Hollnagel* action, and requested "a copy of the most recent Quickbooks for BCI Aircraft Leasing."  A copy of a transcription of this message is attached as Exhibit C.  Quickbooks is BCI's electronic accounting system that manages and tracks all of the voluminous financial information of the company.

&#9658;    On July 31, 2008 (a week before it issued the August 6 subpoena), the SEC sent a letter in the *SEC v. Hollnagel* action.  (Exhibit D)  This letter corrected numerous deficiencies in the SEC's own responses to discovery in the *Hollnagel* case. However, the SEC *demanded* that the BCI Entities: (a) "immediately produce" the Quickbooks files; (b) produce documents previously withheld under the

accountant-client privilege; (c) produce an updated "production index"; (d) produce *all* BCI email for every employee from September – December 2007 (even though the *SEC v. Hollnagel* action was filed in August 2007); and (e) produce all BCI email from January – March 2008 for twenty-one separate persons and entities. It will take a significant amount of time to review and produce BCI email, which will include hundreds of thousands of pages of materials.

▶ On August 5, 2008 (the day before it issued the second subpoena), the SEC sent a letter in the *SEC v. Hollnagel* action and demanded "as soon as possible" replacement copies of computer disks that BCI had produced *nearly a full year ago*. (Exhibit E)  This letter was the first time the SEC ever claimed not to be able to open these disks. It is quizzical why the SEC waited for nearly a year to attempt to review the materials and then demanded replacements at the same time it demanded immediate production of other materials.

▶ A noted earlier herein, on August 6, 2008, the SEC served the BCI Entities' undersigned legal counsel (Rothgerber Johnson & Lyons LLP) with a subpoena *duces tecum* demanding all documents regarding their communications with legal counsel for other entities, including Jason Hyatt and Hyatt Johnson Capital, LLC. As it did with the BCI Entities' responses to the August 6 subpoena, on August 20 the SEC refused to grant any extension of time for RJL to respond to that subpoena.

▶ On August 7, 2008 (the day after it issued the second subpoena), the SEC sent another letter in this action and the *Hollnagel* action. The letter threatens to file a motion with Court in this action, and demands the immediate production of all materials described in the July 31 letter.[9]

Given the discussion above, it is clear that the BCI Entities have made extensive efforts to provide the SEC with everything it wants. There has been no willful failure by the BCI Entities to provide the SEC responsive materials. Even if the SEC did not receive all responsive materials on the return date for the subpoenas, it is clear that the BCI Entities have "adequate excuse" under Fed. R. Civ. P. 45(e) because they were working in good faith in both cases to

[9] The SEC does not abide by its own demands for immediate production of discovery materials. For example, in the *Hollnagel* action, in four months the SEC has not produced a single email that it agreed to pull from BCI hard drives.

{00594485 / 1}

9

CH01/LUZAM/233957.1

provide an extensive amount of discovery materials to the SEC. For these reasons, the Motion should be denied.

## III.  CONCLUSION

For the foregoing reasons, non-parties BCI Aircraft Leasing, Inc. and Brian Hollnagel respectfully request that the Court deny the SEC's Motion for Rule to Show Cause, and grant the BCI Entities such other and further relief as the Court deems appropriate.

Dated: September 5, 2008

/s/ Stephen A. Wood
Stephen A. Wood
Matthew C. Luzadder
KELLEY DRYE & WARREN LLP
333 West Wacker Drive, Suite 2600
Chicago, IL  60606
T: (312) 857-7070
F: (312) 857-7095

Gregory B. Kanan*
Stephen E. Csajaghy*
ROTHGERBER JOHNSON & LYONS LLP
One Tabor Center, Suite 3000
1200 17th Street
Denver, CO  80202
T: (303) 623-9000
F: (303) 623-9222

* Applications for *Pro Hac Vice* Admission pending

## CERTIFICATE OF SERVICE

I hereby certify that on September 5, 2008, I caused the foregoing to be served upon the

following counsel of record electronically before the hour of 12:00 p.m.:

Gregory von Schaumburg, Esq.
Robin Andrews, Esq.
Division of Enforcement
Securities and Exchange Commission
175 W. Jackson Boulevard
Chicago, Illinois 60604

Henry M. Baskerville
Stelter & Duffy, Ltd.
11 S. LaSalle, Suite 1200
Chicago, IL 60603
hbasker@stelterandduffy.com

Paula K. Jacobi
Barnes & Thornburg LLP
1 North Wacker Dr.
Suite 4400
Chicago, IL 60602
pjacobi@btlaw.com

Thomas More Leinenweber
Leinenweber & Baroni, LLC
321 South Plymouth Court
11th Floor
Chicago, IL 60604
thomas@landb.us

Matthew John McQuaid
53 West Jackson
Suite 1420
Chicago, IL 60604
mcquaidmat@aol.com

Mark L. Rotert
Stelter & Duffy, Ltd.
11 South LaSalle, Suite 1200
Chicago, IL 60603
mrotert@stelterandduffy.com

Dated: September 5, 2008

/s/ Stephen A. Wood
_____
Stephen A. Wood
Matthew C. Luzadder
KELLEY DRYE & WARREN LLP
333 West Wacker Drive, Suite 2600
Chicago, IL  60606
T: (312) 857-7070
F: (312) 857-7095

# EXHIBIT A



**Stephen E. Csajaghy**
Attorney at Law
303.628.9512
scsajaghy@rothgerber.com

ROTHGERBER
JOHNSON &
LYONS LLP

One Tabor Center, Suite 3000
1200 Seventeenth Street
Denver, Colorado 80202-5855
Telephone 303.623.9000
Fax 303.623.9222
www.rothgerber.com

September 3, 2008

*via Federal Express [TRK # 7960 7751 6628]*

Sally J. Hewitt, Esq.
Robin Andrews, Esq.
U.S. Securities and Exchange Commission
175 West Jackson Street, Suite 900
Chicago, IL 60604

Re:    **SEC v. Hyatt,** *et al.* **United States District Court for the Northern District of Illinois, Case No. 08 C 2224**
       Subpoenas duces tecum issued to BCI Aircraft Leasing and Brian N. Hollnagel

Dear Counsel:

Non-parties BCI Aircraft leasing, Inc. ("BCI") and Brian N. Hollbagel ("Hollnagel"), pursuant to Fed. R. Civ. P. 45(c) and in accordance with my letter dated August 20, 2008, hereby provide the documents responsive to the subpoena *duces tecum* sent to counsel for BCI and Hollnagel via e-mail on August 6, 2008. The documents are bates labeled BCI-JH2 0001 through 1172. In light of the hundreds of thousands of pages of additional discovery materials you recently requested in the *SEC v. BCI* action, in our telephone conversation of August 13, 2008, Greg Kanan and I asked for additional time to provide the SEC with these materials. You did not object to that request in that conversation. Instead, when we contacted you via telephone and email on August 19 and August 20 to confirm that we needed a two-week extension of time to respond to the subpoenas, you waited until the end of the day on August 20, 2008 (when the responses were due) to inform us that you refused to grant this extension.

Regardless, enclosed with this letter are all documents relating in any way to Charles Dyer. Also enclosed is a privilege log. Any information or documents relating to payments to Mr. Dyer are included in the updated Quickbooks materials we sent to you in August in the *SEC v. BCI* action. There have been no additional payments to Mr. Dyer since we sent you that Quickbooks information.

We received the Motion for Rule to Show Cause Against BCI Aircraft Leasing, Inc. and Brian Hollnagel that you filed on August 28, 2008 ("Motion"). The SEC claims in that Motion that it never received any telephone records of BCI or Mr. Hollnagel in response to the subpoenas *duces tecum* dated June 30, 2008. That argument requires our comment.



EXHIBIT

A

Rothgerber Johnson & Lyons LLP

Sally J. Hewitt, Esq.
Robin Andrews, Esq.
September 3, 2008
Page 2

First, as you know, BCI previously produced in the *SEC v. BCI* action all telephone records through December 2007 for BCI, Mr. Hollnagel's cellular telephone and the Aspen home. Second, in the flurry of letters you sent in August and in the numerous telephone calls, the SEC never previously asked for any telephone records at all. Moreover, the June 30, 2008 subpoenas did not specifically request these materials, and we were completely unaware that the SEC wished to obtain these materials. Had you conferred with us and requested these materials in accordance with LR 37.2 before filing your Motion, BCI and Mr. Hollnagel would have agreed to provide them. Instead, the first time that we ever learned that the SEC wanted telephone records was in its Motion.

Regardless, enclosed with this letter are all telephone records from January 2008 – present for BCI, Mr. Hollnagel's cellular telephone and the Aspen home. They are bates labeled BCI-JH1 0001 through 0208. Consistent with my letter to you on January 3, 2008 in the *SEC v. BCI* action, BCI uses a PBX system and individual telephone calls are not referenced in these records. Also, Mr. Hollnagel obtained his cellular telephone through BCI, and BCI pays those bills. Thus, contrary to the statement on page 2 of your Motion, Mr. Hollnagel properly reported to you that he does not possess any documents responsive to the June 30, 2008 subpoena.

Your Motion also addresses the productions made in response to the June 30, 2008 subpoenas. As you know, BCI and Hollnagel redid the materials responsive to the June 30, 2008 subpoena to addresses the issues in your letter of August 4. The documents that were removed from both productions are privileged. BCI and Hollnagel provided a privilege log to the SEC with the materials they sent on July 31. That privilege log did not change with the updated production sent to the SEC on August 25, and there was no need to provide another copy of an identical privilege log.

Finally, your Motion states that BCI has not provided the SEC with all attachments to email in native format. First, when we discussed this production via telephone in July 2008, the SEC agreed that it was appropriate to have attachments converted to .tif format so that they can be bates labeled. Only after BCI and Hollnagel went through the effort of obtaining and producing responsive materials did you change your mind about the form of production. Second, you identified a single excel spreadsheet by bates number that you asked to be produced in electronic format, and we provided that document to you in native electronic format.

As you can imagine, identifying hundreds of attachments to email (that have already been produced) would be extraordinarily expensive and time-consuming. If there are specific attachments that you would like produced in native excel format, please identify those and we will obtain them for you.

In light of the foregoing, please withdraw your Motion to Show Cause and confirm to us that it has been withdrawn.

{00593522 / 1}

ROTHGERBER JOHNSON & LYONS LLP

Sally J. Hewitt, Esq.
Robin Andrews, Esq.
September 3, 2008
Page 3

Very truly yours,

ROTHGERBER JOHNSON & LYONS LLP

Stephen E. Csajaghy

SEC/jsm
Encl.
cc:     Greg Kanan, Esq.
        Paula Junghans, Esq.

{00593522 / 1}

# EXHIBIT B

**From:**      "Andrews, Robin" <andrewsr@sec.gov>
**To:**        "Stephen Csajaghy" <scsajaghy@rothgerber.com>, "Greg Kanan"
<gkanan@rothgerber.com>, "Paula Junghans" <pjunghans@zuckerman.com>
**Date:**      9/3/2008 3:25:38 PM
**Subject:**   SEC v. Hyatt et al. - Contempt Order

Steve:
This morning at 9:30 a.m. Chicago time, the SEC appeared on its August
28 contempt motion against BCI and Hollnagel in Judge Lindberg's
courtroom. No one appeared for this hearing on behalf of your clients,
BCI or Hollnagel, nor did anyone file a response to the SEC's motion.
Furthermore, no one even notified the Court or the SEC that no one would
be appearing at the scheduled hearing. At the hearing the Court granted
the SEC's motion and found both BCI and Hollnagel in contempt. At 1:49
p.m. Chicago time today, the Court entered an Order Making Findings of
Contempt by BCI Aircraft Leasing, Inc. and Brian Hollnagel and Other
Relief ("the Contempt Order"). I forwarded this docket entry for this
Contempt Order to you and your co-counsels, Greg Kanan and Paula
Junghans at 1:52 p.m.
Among other things, the order found BCI and Hollnagel in contempt and
requires them to make full, proper, and complete responses to the SEC's
subpoenas by noon Chicago time on Friday, September 5, 2008. The
Contempt Order also provides that, "in the event BCI and Hollnagel fail
to make full, proper, and complete responses to the subpoenas by noon
Chicago time on Friday, September 5, 2008, they shall each be fined
$1,000 for each day afterwards, including weekends and holidays, that
BCI and Hollnagel have not made such full, proper, and complete
responses." Finally, the Contempt Order requires that BCI and Hollnagel
pay costs and reasonable attorney fees incurred by the SEC in its
repeated attempts to obtain documents responsive to the subpoenas.
Despite receiving the Contempt Order earlier, at 2:26 p.m. Chicago time
today you inexplicably sent a letter via email to Sally Hewitt and me at
the SEC asking, among other things, that our motion to show cause be
withdrawn. Further, you indicate in the letter that BCI still refuses to
produce all excel email attachments in their native format, instead
asking the SEC to identify specific attachments that we would like to
have produced. In light of the Court's Contempt Order, your clients
must produce all of these attachments, (and all other documents
responsive to the SEC's subpoenas that are in the possession, custody,
or control of BCI or Hollnagel), by noon Chicago time on Friday,
September 5, 2008.

Robin Andrews
Senior Attorney
U.S. Securities and Exchange Commission
Division of Enforcement
175 W. Jackson Blvd., Suite 900
Chicago, IL 60604
T: (312) 353-4304
F: (312) 353-7398
andrewsr@sec.gov

**CC:**        <swood@kelleydrye.com>



EXHIBIT

B

# EXHIBIT C

MEMORANDUM
Voicemail Transcription

TO:         File
            BCI/SEC Investigation, File No. 21442-272

RE:         Voicemail from Robin Andrews

DATE:       July 17, 2008

---

     Steve, it's Robin Andrews with the SEC in Chicago returning your voicemail and e-mail about the joint discovery plan issue. I had talked to Greg Kanan about that and he had a few suggestions on basically shortening everything and making everything faster. At the time I told him I didn't think we could make the changes and we'd have to discuss with the team. We can't agree to change any of those numbers, dates or number of interrogatories, depositions, etc. Basically, yeah, that's it ... we're not willing to change any of those things; we think there's going to be a lot of witnesses, a lot of depositions, a lot of things going out there and we don't want to constrain ourselves and have to go back to the court with extensions when we expect there to be a lot. So let me know whether that's going to be a problem. If you have any specific counter-proposals on that, feel free to send it back with markups, otherwise we're going to have to agree to disagree on that. So please give me a call and let me know where you guys stand on that. 312.353.4304. Thanks.

1:59 p.m., July 17, 2008



EXHIBIT
C

# EXHIBIT D



**UNITED STATES**
**SECURITIES AND EXCHANGE COMMISSION**
CHICAGO REGIONAL OFFICE
NINTH FLOOR
175 WEST JACKSON STREET
CHICAGO, ILLINOIS 60604

ROBIN ANDREWS                                                TELEPHONE: (312) 353-4304
STAFF ATTORNEY, DIVISION OF ENFORCEMENT                      FAX: (312) 353-7398

July 31, 2008

**Via Email**

Steven Csajaghy, Esq.
Rothgerber Johnson & Lyons LLP
One Tabor Center, Suite 3000
1200 Seventeenth Street
Denver, CO 80202-5855

      Re:    **SEC v. Hollnagel et al. (1:07-cv-4538)**

Dear Mr. Csajaghy:

      I write to respond to Greg Kanan's June 19, 2008 letter requesting that the SEC update and supplement its Responses to BCI's Third Discovery Request with respect to BCI's Interrogatories numbered 2, 6, 8, 12, and 16-18. An Amended Response is attached, including amended responses to BCI's Interrogatories numbered 2, 6, and 8.

      With respect to your question regarding BCI's Interrogatory numbered 12, as you are aware, investigations by the Enforcement Division of the SEC are confidential and non-public in nature. Statutory provisions and SEC rules generally prohibit the disclosure of non-public information relating to examinations, investigations, or enforcement actions. Consequently, the SEC staff is substantially limited in disclosing any information related to its investigations, including information about any communications with other federal law enforcement agencies. Furthermore, any such communications, should they exist, fall under the law enforcement privilege. This privilege serves to prevent "the harm to law enforcement efforts which may arise from public disclosure of ... investigative files." Black v. Sheraton Corp., 564 F.2d 531, 541 (D.C.Cir.1977). "The purpose of this privilege is to prevent disclosure of law enforcement techniques and procedures, to preserve the confidentiality of sources, to protect witness and law enforcement personnel, to safeguard the privacy of individuals involved in an investigation, and otherwise to prevent interference with an investigation." In re Dept. of Investigation of City of New York, 856 F.2d 481, 485 (2d Cir.1988). Accordingly, the SEC restates its assertion of the law enforcement privilege in response to BCI Interrogatory numbered 12. The Defendants are free, given their subpoena power, to attempt to obtain information from the FDIC.



EXHIBIT
D

With respect to BCI's Interrogatories numbered 16-18, the SEC stands by and reiterates its objections to those interrogatories as outlined in the SEC's January 10, 2008 response. The SEC notes that it notified BCI before answering its interrogatories that the SEC would treat the interrogatories as totaling more than 25 including subparts if it was expected to answer them.

In addition, we have discussed with Greg Kanan on numerous occasions that the SEC expects BCI and Hollnagel to continue to update their discovery responses pursuant to the several requests for documents beginning August 31, 2007 through March 1, 2008. The SEC staff has made multiple requests to produce documents and records responsive to these requests, in particular, to produce emails and other financial records covered by the document requests.[1] Greg Kanan has represented to me that he believes that the Defendants have a legitimate relevance objection to the continued production of emails if their scope was not narrowed in any way from the SEC's discovery requests.

It is the position of the SEC that Hollnagel and BCI have not completely complied with their discovery obligations in this matter. While the SEC believes that the requested document categories were, and continue to be, relevant, the SEC is willing, for the time being, to limit the scope of documents required to be produced. Consequently, without waiving its right to later request a more complete production of documents responsive to the SEC's various discovery requests, the SEC asks for the following categories of documents for all documents created after March 1, 2008:

All documents relating to, or reflecting communications with, any of the following individuals, entities, or topics:

1.    Jason R. Hyatt
2.    Jay D. Johnson
3.    Hyatt Johnson Capital
4.    Craig Papayanis
5.    Jeff Meyer
6.    Michael Demnicki
7.    Any individual (or anyone on their behalf) who previously invested, directly or indirectly, in any BCI entity or other investment vehicle
8.    Any bank, auditor, accountant, or tax preparer
9.    BCI 2004-5, LLC
10.   BCI 2004-6, LLC
11.   BCI 2004-7, LLC
12.   JetGlobal, LLC (or any of the 26 aircraft previously on lease to Delta Airlines which were formerly related to this entity)
13.   Global Aircraft Solutions
14.   BCI TUI, LLC
15.   BCI 2001-6, LLC
16.   BCI 2003-1, LLC
17.   BCI 2003-2, LLC
18.   BCI 2004-A-K, LLC

---

[1]    For example, document category #6 in the SEC's August 31, 2007 discovery requests to the Defendants requires the production of "All emails within BCI or between BCI and others regarding any BCI business matters."

19.     BCI 2005-2-14, LLC
20.     BCI Aircraft Leasing 1999, LLC
21.     All sources of income for BCI or Hollnagel, including all money-raising
        activities, whether loans, investments, or other mechanisms.

In addition, as the SEC requested early last week, please immediately produce an updated
version of BCI's accounting records (including for all related entities), including but not limited
to QuickBooks. Also, as the SEC has previously pointed out, BCI's production index does not
specify in particularity the categories of documents located on each CD-ROM produced by BCI,
and in some cases the index is inaccurate (for example, stating that audited financial statements
existed on a specific CD-ROM when in fact no such financial statements have ever existed).
Please produce an updated production index with specific bates ranges for each category of
documents located on each CD-ROM produced by BCI, and correct any inaccuracies.

Finally, the SEC notes that it has still not received any of the documents that BCI
previously withheld due to a purported "accountant-client privilege," including but not limited to
communications with its former auditor and tax preparer, Blackman Kallick. As the SEC has
repeatedly pointed out, such a privilege does not exist in this Court. US. v. Arthur Young & Co.,
465 U.S. 805, 817 (U.S. 1984) (quoting Couch v. U.S., 409 U.S. 322, 335 (1973)) ("no
confidential accountant-client privilege exists under federal law, and no state-created privilege
has been recognized in federal cases."). Please produce these improperly withheld documents
immediately.

If the above unfulfilled discovery requests are not addressed in a timely manner, the SEC
will be forced to seek remedy from the Court.

If you have any questions or comments, please call me at (312) 353-4304.


                                        Sincerely,

                                        s/ Robin Andrews

                                        Robin Andrews
                                        Staff Attorney


cc: Greg Kanan, Esq.

# EXHIBIT E



**UNITED STATES**
**SECURITIES AND EXCHANGE COMMISSION**
CHICAGO REGIONAL OFFICE
NINTH FLOOR
175 WEST JACKSON STREET
CHICAGO, ILLINOIS 60604

ROBIN ANDREWS                                                    TELEPHONE: (312) 353-4304
STAFF ATTORNEY, DIVISION OF ENFORCEMENT                          FAX: (312) 353-7398

August 5, 2008

**Via Email**
Stephen E. Csajaghy, Esq.
Rothgerber Johnson & Lyons LLP
One Tabor Center, Suite 3000
1200 Seventeenth Street
Denver, CO 80202-5855

> Re:   **SEC v. Hollnagel et al. (1:07-cv-4538)**

Dear Mr. Csajaghy:

Please provide us with replacement disks as soon as possible for the following productions by BCI which are corrupt, blank or otherwise unable to be opened:

| PRODUCTION DATE | BATES RANGE |
|---|---|
| 10/22/07 | BCI 0823-003050 to BCI 0823-084792 |
| 11/19/2007 | BCI 0823-49188 to BCI 0823-84792 |
| 11/20/07 | BCI 0823-136924 to BCI 0823-199424 |
| 11/26/2007 | BCI CAN 000001 to BCI CAN 80837 |
| 12/18/07 | BCI 0823-300635 to BCI 0823-396259 |
| 1/2/08 | BCI 0823-470030 to BCI 0823-486542 |
| 1/8/08 | (Vol. BCI 34): BCI 00221042-221358 |



EXHIBIT

E

On April 10, 2008, I previously requested replacement discs for production dates 12/18/07, 1/2/08, and 1/8/08, but did not receive any response.  Please produce these replacement discs promptly.  Please call me if you have any questions.  Thank you.

Sincerely,

s/ Robin Andrews

Robin Andrews
Staff Attorney

cc: Greg Kanan, Esq.