NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |  |
|---|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION, | : : : : | |
| Plaintiff, | : : | |
| v. | : : | CASE NO.  1:08-cv-2224 |
| JASON R. HYATT, JAY JOHNSON, and HYATT JOHNSON CAPITAL, LLC | : : : : | Hon. George W. Lindberg |
|  | : | Magistrate Judge Michael T. Mason |
| Defendants. | : : | |

**SEC'S MEMORANDUM IN OPPOSITION TO BCI AND HOLLNAGEL'S MOTION TO VACATE THE COURT'S SEPTEMBER 3, 2008 ORDER MAKING FINDINGS OF CONTEMPT BY BCI AND HOLLNAGEL AND OTHER RELIEF**

Plaintiff, the United States Securities and Exchange Commission ("the SEC"), responds to BCI Aircraft Leasing, Inc. ("BCI") and Brian Hollnagel's ("Hollnagel") Motion to Vacate the Court's September 3, 2008 Order Making Findings of Contempt by BCI and Hollnagel and Other Relief ("the motion to vacate").  After being served with the subpoenas for documents in this matter, after multiple written requests from the SEC to comply with the subpoenas, and after being found in contempt by this Court for failing to comply with the SEC's subpoenas, BCI and Hollnagel, as of the filing of this memorandum, still have not provided all of the documents required by the subpoenas.  For instance, they have not provided any of the numerous text messages that occurred between Hollnagel and Defendant Hyatt, nor have they produced any detailed BCI telephone records, or any of the telephone records for Hollnagel's Chicago home.

Instead, BCI and Hollnagel are attempting to vacate this Court's September 3rd Order Making Findings of Contempt by BCI and Hollnagel and Other Relief (the "Contempt Order") because they claim that this Court erroneously issued the Contempt Order.  According to their

rationale, the Court was somehow obligated to delay a ruling even though BCI and Hollnagel did not file any papers before this Court nor even bother to either contact or appear before the Court at the scheduled hearing for which they received adequate notice.

As explained in more detail below, BCI and Hollnagel refused to fully comply with the SEC's subpoenas issued under this Court's authority, ignored the SEC's letters informing them of their noncompliance with its subpoenas, and likewise ignored the SEC's August 28 Motion for a Rule to Show Cause, Docket No. 118 ("SEC's Motion"). This Court should not reward BCI and Hollnagel's inaction. The SEC thus respectfully requests that (1) the Court deny BCI and Hollnagel's motion to vacate the Court's Contempt Order and, (2) regardless of the Court's ruling on that motion, order that Brian Hollnagel be present in Court for an evidentiary hearing on this matter so that he can provide testimony about his and BCI's continued failure to fully comply with the SEC's subpoenas.

### I. BCI'S CONTINUED CONTEMPT OF THE SEC'S SUBPOENAS

In their motion to vacate, BCI and Hollnagel falsely claim that they have provided the SEC with all materials required by the subpoenas, and that the only remaining dispute concerns email attachments. However, the SEC pointed out to counsel for BCI and Hollnagel, <u>prior</u> to the filing of their motion, numerous other examples of responsive documents that have not been produced. *See* letter to counsel, attached hereto as Exhibit 1. Interestingly, although BCI and Hollnagel claimed in their motion to vacate, filed late September 4th, that they have provided all responsive documents, counsel to BCI and Hollnagel emailed numerous additional responsive documents to the SEC the morning of September 5th. BCI and Hollnagel also mailed additional documents to the SEC on September 5th, which it received on September 6th. Clearly, BCI and Hollnagel knew that they were not yet in compliance, despite their claims to the contrary in the motion to vacate.

Nevertheless, despite this last-minute production of additional documents, BCI and Hollnagel are still in contempt. The Court's Contempt Order clearly commanded that BCI and Brian Hollnagel must fully and completely comply with the Commission's subpoenas by noon Chicago time on Friday, September 5, 2008. BCI and Hollnagel failed to do so.

First, BCI and Hollnagel have still not provided any of the numerous text messages that occurred between Hollnagel and Defendant Hyatt.[1] Hollnagel's phone records show that between August 19, 2007 and October 17, 2007, Defendant Hyatt sent sixteen text messages to Hollnagel. Many of these text messages occur just after the SEC filed its suit against BCI and Hollnagel, during the SEC's emergency hearings before Judge Bucklo taking place between August 15 and August 20, 2007. Another group of these text messages occurred just before a pivotal settlement between Defendant Hyatt Johnson Capital and BCI regarding the interests of the Hyatt Johnson Capital investors. These text messages from Defendant Hyatt to Hollnagel are likely to be extremely relevant to the SEC's litigation against Defendants Hyatt, Johnson, and Hyatt Johnson Capital.

In addition, on September 5th, BCI produced March 2008 statements for Hollnagel's cell phone, which indicate that 32 text messages were sent or received, but neglected to include the detail pages which would indicate which numbers sent or received those messages. Moreover, BCI has still not provided any detailed telephone records, even though, as the SEC has recently learned, BCI can easily obtain such records from its provider. Furthermore, Hollnagel has not provided any telephone records for his home number. The SEC only recently discovered, from reviewing one of the email attachments that BCI finally produced on September 5th in native

---

[1] The existence of these text messages between Defendant Hyatt and Hollnagel was brought to the SEC's attention by the telephone records that the SEC received on September 4th, as well as other BCI telephone records. These records should exist and be available to BCI and Hollnagel. The SEC specifically notes that BCI and Hollnagel were ordered by Judge Bucklo to preserve all records as of August 22, 2007, SEC v. Hollnagel et al., 1:07-cv-4538 (J. Bucklo) at Docket No. 34, and prior to the SEC's litigation against BCI and Hollnagel, the SEC requested that all BCI records be preserved, and counsel for BCI and Hollnagel agreed.

3

format, the number for Hollnagel's home phone.  The SEC only has one month of records for Defendant Hyatt's cell phone, obtained in connection with the SEC's April 19, 2008 contempt motion against Defendant Hyatt.  In just these limited records, Defendant Hyatt called Hollnagel at this number.  Consequently, it appears that at least some of Hollnagel's home phone records are also responsive to the SEC's June 30 subpoena.  While BCI recently provided numerous Excel email attachments in their native format, there are still at least 120 emails for which BCI has not provided attachments in their native format, at least 200 attachments in total.  Finally, there are still other emails for which no attachments, in any format, were ever produced.  Thus, BCI and Hollnagel are still in contempt of the subpoenas.

If the Court desires, the SEC is prepared to conduct an evidentiary hearing that will establish the full extent of BCI and Hollnagel's noncompliance.  Through the testimony of Scott Hlavacek of the SEC and Brian Hollnagel, the SEC is prepared to address the extent of BCI and Hollnagel's continued contempt and the $1,000 daily fines that each must therefore pay pursuant to the Court's contempt order.  The SEC therefore asks that Brian Hollnagel, BCI's CEO and sole principal, be present in Court at an evidentiary hearing so that he may be questioned under oath about the missing documents and his efforts to preserve and produce all responsive documents in the possession, custody or control of both BCI and himself.

## II.    THE SEC'S MOTION, HEARING, AND CONTEMPT ORDER

Instead of providing all responsive documents in a full, complete, and timely manner, BCI and Hollnagel filed their motion to vacate the Court's Contempt Order, on the grounds that they were misled as to the purpose of the September 3rd hearing and that the Contempt Order was erroneously issued.  As the below chronology shows, BCI and Hollnagel were not misled, and the Court properly entered its Contempt Order.

On August 28, 2008, the SEC filed its motion against BCI and Hollnagel, requesting

various remedies, including (1) an Order requiring BCI and Hollnagel to fully and completely comply with the SEC's subpoenas by Friday, September 5, 2008, (2) that the Court award attorney's fees to the SEC for its nearly month-long efforts in attempting to bring about BCI and Hollnagel's compliance with its subpoenas, (3) that the Court find BCI and Hollnagel in contempt for their failure to properly respond and, in order to coerce their compliance, assess a daily fine no less than $1,000 against each BCI and Hollnagel until they fully and completely comply with the SEC's subpoenas. *See* SEC's Motion pp. 11-12.

The SEC served a copy of these papers, including the Notice of Motion for the hearing date and time, upon three counsel for BCI and Hollnagel at two different law firms. The SEC's notice stated that the SEC would appear before this Court on September 3 and "<u>shall there and then present</u>, and seek a hearing date regarding" the SEC's Motion (emphasis added).[2] BCI and Hollnagel chose to omit the first clause of this sentence when they quoted the notice in their motion to vacate. *See* page 6 ("The SEC's Notice of Motion states that on September 3, 2008 at 9 a.m., the SEC will '*seek a hearing date regarding*, the SEC's' Motion." (emphasis in original)). This quote omitted the first part of the Notice, which stated that the SEC will also <u>present</u> its motion before the Court. This is in fact what the SEC did at the September 3rd hearing. BCI and Hollnagel claim in their motion to vacate that the SEC somehow misled them as to the purpose of the hearing. The SEC never told BCI and Hollnagel that it would only seek a hearing date or that it would refrain from presenting the August 28 motion to the Court.

Although counsel to BCI and Hollnagel received a copy of the SEC's Motion, and were given notice of the hearing date, BCI and Hollnagel chose not to respond to the SEC's Motion or

---

[2]　　The SEC notes that it used <u>identical</u> language in its Notice of Motion in connection with its October 10, 2007 Motion for Order to Show Cause against BCI in the <u>SEC v. Hollnagel et al.</u> matter. *See* <u>SEC v. Hollnagel et al.</u>, 1:07-cv-4538 (J. Bucklo) at Docket No. 61. Counsel for BCI and Hollnagel received this Notice of Motion, appeared at the scheduled hearing on October 17, 2007, and argued the merits of the SEC's motion. Thus, counsel for BCI and Hollnagel were fully aware of what would occur at the September 3rd hearing.

to even appear for the September 3rd hearing. At no time prior to – or during – this hearing did BCI or Hollnagel, either in papers or in person, <u>ever</u> ask the Court to deny the SEC's Motion or the relief requested.[3] It appears that they simply did not consider the SEC's Motion important enough to respond to, nor did they even consider the hearing before this Court important enough to attend. For whatever the reason, whether to cause additional delay, because they simply do not consider the matter important, or due to BCI and Hollnagel's disdain for the SEC and the subpoenas issued under the authority of this Court, they failed to appear at the September 3rd hearing at their own peril.

Although BCI and Hollnagel repeatedly protest in their motion to vacate that they were not "given any opportunity to respond to [the SEC's Motion] in any way" – even going so far as to claim that their due process rights have been violated by the Court's Contempt Order – BCI and Hollnagel in fact had every opportunity to respond, and simply chose to do nothing. Vacating the Contempt Order, the result of their inaction, would undermine the authority of this Court, further delay the SEC's prosecution of this case, and, quite simply, reward bad behavior. Now that BCI and Hollnagel realize the consequences of their inaction, they are attempting to avoid responsibility for this decision. The Court should not countenance such behavior.

Because BCI and Hollnagel failed to respond or object in any way to the SEC's Motion and failed, for whatever reason, to attend the hearing before this Court to orally respond or object, the need for any substantive hearing on this matter was obviated. The SEC rested on its motion, and asked for the relief it requested in its brief. In their motion, BCI and Hollnagel claim in numerous instances that the SEC "never requested in its [motion] that [BCI and Hollnagel] be held in contempt." However, as pointed out to counsel to BCI and Hollnagel

---

[3] Although BCI is located in, and Hollnagel resides in, Chicago, their primary counsel are Rothgerber Johnson & Lyons, in Denver, Colorado, and Zuckerman Spaeder in Washington, DC. As required by local rule 83.15, in the <u>SEC v. Hollnagel et al.</u> matter BCI and Hollnagel also have local counsel in Chicago, Kelley Drye & Warren. Neither primary nor local counsel appeared at the September 3rd hearing.

6

before they filed their motion to vacate, this was one of the explicit remedies the SEC sought in its brief.  *See* Exhibit 1; Docket No. 118, pp. 11-12.

The Court properly ruled on this matter on the papers, and orally granted the relief that the SEC requested in its brief.  The Court then asked the SEC to provide a proposed order outlining the relief ordered during the hearing, and the SEC did so.  The Court issued its order that afternoon.  Only after the Court issued the Contempt Order did counsel for BCI and Hollnagel send its September 3rd letter (Exhibit A to BCI and Hollnagel's motion to vacate) to the SEC via email.[4]  This letter represented that additional documents were being sent by overnight mail, indicated that BCI and Hollnagel were refusing to produce certain of the documents, yet incredibly asked that the SEC withdraw its motion.  Finally, it must be underscored that BCI and Hollnagel, in addition to failing to appear, respond, or contact the Court or the SEC about their expected absence, were already in contempt and continue to be in contempt.

It defies logic that a contemnor would have the audacity to, instead of fully purging its contempt, ask the issuing Court to vacate its Contempt Order.  Such actions speak volumes about how BCI and Hollnagel view the authority of the Court or their responsibilities as parties in receipt of subpoenas issued under the authority of the Court.

### III. NOTICE OF THE SEC'S MOTION

In their motion to vacate, BCI and Hollnagel claim that in order to provide proper notice of the SEC's Motion, the SEC was obligated to personally serve its motion upon BCI and Hollnagel; that it was improper for the SEC to instead serve it upon their counsel.  Motion to

---

[4] BCI and Hollnagel attempt to mislead the Court regarding the timing of that day's events, claiming that "The SEC submitted this proposed order *on the very same day* that [BCI and Hollnagel] sent the SEC the materials it requested." (emphasis in original)  Motion at 2.  BCI and Hollnagel imply that the SEC submitted the proposed order to the Court after it received these materials.  In fact, the SEC did not receive these materials until the next day, September 4, at approximately 2:00 p.m.  BCI's cover letter was not emailed to the SEC until after the SEC had already submitted the proposed order to the Court, and 35 minutes after the Court had already entered the executed Contempt Order.

7

vacate at 6-7. This is a red herring. First, counsel to BCI and Hollnagel previously agreed to waive service of the various subpoenas, agreeing to accept service of them by email instead. Thus, counsel to BCI and Hollnagel implicitly agreed that service of papers by email was a legitimate means of service. More importantly, nowhere in BCI and Hollnagel's nearly eleven page motion to vacate do they claim that they did not have notice of the September 3rd hearing on the SEC's Motion. Again, although BCI and Hollnagel had notice of, and were fully aware of, the scheduled September 3rd hearing, they simply chose not to attend, either personally or through local counsel. Because they were fully aware of the hearing, yet simply chose not to appear, BCI and Hollnagel cannot argue that they were not given proper notice. *Cf.* Autotech Technologies LP v. Integral Research & Development Corp., 499 F.3d 737, 747-48 (7th Cir. 2007) (in deciding a similar notice issue, the court stated that "the focus must be on notifying the alleged contemnor, rather than on the formalities of notification procedures. As a result, we have recognized that '[t]he purpose of the notice is to inform the contemnor of the nature of the charges and enable the contemnor to prepare a defense'") (emphasis added). Here, BCI and Hollnagel were fully aware of the nature of the SEC's charges and were perfectly capable of framing a defense, if any, but nevertheless simply chose not to respond in any way, attend the scheduled hearing on the SEC's motion, or contact the Court or the SEC.

## IV.   CONCLUSION

BCI and Hollnagel behave as if they believe they can flaunt the SEC's subpoenas, treating their obligations to respond to the subpoenas as a game of "hare and hounds," complying only if they are finally "cornered at the end of the chase," and even then complying incompletely and inadequately. U.S. v. Rylander, 460 U.S. 752, 762 (U.S. 1983) (citation omitted). Moreover, BCI and Hollnagel appear to believe they can simply ignore the Court's Contempt Order, instead moving to vacate it, when even a void order must be fully complied with. SEC v.

Arnold Kimmes, et al., 753 F. Supp. 695, 700 (N.D. Ill. 1990).  This Court should disabuse BCI and Hollnagel of the notion that they may produce what they want, when they want, no matter how valid the public interest, the subpoenas, or the Court's order.

For the foregoing reasons, the SEC respectfully requests that the Court (1) deny BCI and Hollnagel's motion to vacate the Court's September 3rd Contempt Order against them and, regardless of the Court's decision on that motion, (2) order that Brian Hollnagel be present in Court for an evidentiary hearing on this matter so that he can provide testimony about his and BCI's attempts to comply with the SEC's subpoenas.

        Respectfully submitted,

        s/ Robin Andrews
        Gregory von Schaumburg, IL Bar No. 3127782
        Robin Andrews, IL Bar No. 6285644
        Attorneys for Plaintiff
        U.S. SECURITIES AND
        EXCHANGE COMMISSION
        175 W. Jackson Blvd., Suite 900 Chicago, IL 60604
        Telephone: (312) 353-7390
        Facsimile: (312) 353-7398

Dated: September 9, 2008

# EXHIBIT 1

**Andrews, Robin**

| | |
|---|---|
| **From:** | Andrews, Robin |
| **Sent:** | Thursday, September 04, 2008 5:21 PM |
| **To:** | 'Greg Kanan'; 'Stephen Csajaghy' |
| **Subject:** | SEC v. Hyatt et al. - Contempt Ruling Against BCI and Hollnagel |

Greg:

I write to follow up on our conversation earlier this afternoon. You expressed your belief that on September 3 the SEC improperly asked the Court for a ruling, and that the Court improperly found BCI and Hollnagel in contempt; that instead the Court was somehow obligated to set a hearing date in the future. As I informed you in our call, the SEC filed its motion for contempt against BCI and Hollnagel, and detailed specific remedies it was seeking, including (1) an Order requiring BCI and Hollnagel to fully and completely comply with the SEC's subpoenas by Friday, September 5, 2008, (2) that the Court award attorney's fees to the SEC for its nearly month-long efforts in attempting to bring about BCI and Hollnagel's compliance with its valid subpoenas, (3) that the Court find BCI and Hollnagel in contempt for their failure to properly respond and, in order to coerce their compliance, assess a daily fine no less than $1,000 against each BCI and Hollnagel until they fully and completely comply with the SEC's subpoenas. See page 11-12 of the SEC's Motion, SEC v. Hyatt et al., 1:08-cv-2224, Docket No. 118 (filed at 4:32 p.m. CDT on August 28, 2008).

Although you were given proper notice, you failed to respond to the SEC's motion and you failed to appear for the scheduled hearing yesterday, September 3 at 9:30 a.m. At no time did you, either in papers or in person, ever ask that the Court deny the SEC's motion or the relief requested. Thus, the Court properly ruled on the SEC's motion on the pleadings, and granted the SEC's requested relief as outlined in its brief. We do not believe it was reasonable for you to assume that, despite not filing a response to the SEC's motion prior to the scheduled hearing, not appearing at the hearing, or not even contacting either the SEC or the Court, that the Court was somehow obligated to delay its ruling.

You also stated your belief that BCI and Hollnagel had now fully responded to the SEC's subpoenas. We are in receipt of your latest production, with a cover letter of September 3, 2008. This production still does not cure all of the deficiencies outlined in the SEC's motion, and the SEC does not believe that BCI and Hollnagel have fully complied with the SEC's subpoenas. During our phone call this afternoon, we attempted to inform you of the deficiencies in BCI and Hollnagel's production so that you could attempt to cure them, but you refused to listen to us, insisting that these deficiencies be put in writing. Accordingly, please note the following issues.

First, as repeatedly explained in numerous letters, emails, conversations with you, and the SEC's brief, the SEC expects to receive, and is entitled to, all excel email attachments in their native format, so that all data is preserved. As we have pointed out, many of the excel email attachments you provided during your first two productions were completely unreadable. During a phone conversation on August 13, you agreed to provide these attachments. You appear to have changed your position and now refuse to do so.

Second, BCI and Hollnagel have still not provided all documents reflecting communications with the various individuals and entities named in the subpoenas. In your September 3 cover letter, you explained that at least some of these documents were 2007 phone records of BCI and Hollnagel provided to the SEC in the SEC v. Hollnagel et al. litigation. Upon examination of those documents and the new phone records you provided on September 3, there are numerous missing records. For BCI's phone records, the May 1, 2008 statement is missing. For the Aspen telephone records, the January 10, 2008 statement is missing. For Brian Hollnagel's cell phone records (phone number 630.235.0500), you did not provide any records for the periods July 1, 2007 through August 19, 2007, October 19, 2007 through December 31, 2007, or the statements for March 19, 2008 and April 19, 2008. Mr. Hollnagel's cell phone records show that he received numerous text messages from Jason Hyatt, but you did not provide any text messages to or from any individual. All of these telephone records, including text messages, are in your clients' custody, possession, or control, and due to the various document preservation obligations that have arisen throughout the SEC's investigation and litigation, especially Judge Bucklo's August 22, 2007 document preservation order, they must exist today.

Furthermore, with respect to BCI's telephone records, you state that "BCI uses a PBX system and individual telephone calls are not referenced" in the records you provided. It appears that BCI is therefore representing that it is unable to obtain any telephone records from its provider that reflect specific telephone numbers that called BCI or that BCI called. The SEC doubts that this is the case.

Third, BCI and Hollnagel have still not provided all documents reflecting payments to Charles Dyer. You state in your September 3, 2008 cover letter that any documents relating to these payments are included in the QuickBooks materials

you previously provided.  This is incorrect.  QuickBooks reflect six payments to Charles Dyer (three checks, three wire transfers); BCI is obligated under the SEC's subpoena to provide any cancelled checks, bank statements, and wire transfer documentation reflecting these transactions.  BCI has not done so.

In any event, the Court found BCI and Hollnagel in contempt.  The Court's September 3 Order (SEC v. Hyatt et al., 1:08-cv-2224, Docket No. 123) is in effect.  Your clients are thus obligated to produce all responsive documents to the SEC by noon Chicago time tomorrow, Friday, September 5.

Robin Andrews
Senior Attorney
U.S. Securities and Exchange Commission
Division of Enforcement
175 W. Jackson Blvd., Suite 900
Chicago, IL 60604
T: (312) 353-4304
F: (312) 353-7398
andrewsr@sec.gov